# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

       Plaintiff,                         CASE NO:

v.

PRINCE ANDREW, DUKE OF YORK,
a/k/a ANDREW ALBERT CHRISTIAN
EDWARD, in his personal capacity,

       Defendant.

_____ /

## **<u>COMPLAINT</u>**

BOIES SCHILLER FLEXNER LLP

Plaintiff Virginia L. Giuffre, by her attorneys Boies Schiller Flexner LLP, for her Complaint against Defendant Prince Andrew, Duke of York, a/k/a Andrew Albert Christian Edward ("Prince Andrew"), avers upon personal knowledge as to her own acts and status and upon information and belief and to all other matters as follows:

## NATURE OF THE ACTION

1.      This suit arises out of Defendant's sexual abuse of Plaintiff when she was under the age of 18 years old.

2.      During 2000–2002, beginning when Plaintiff was 16, Plaintiff was the victim of sex trafficking and abuse by convicted sex offender Jeffrey Epstein.

3.      Epstein's trafficking scheme involved recruiting young girls, often by claiming they would be paid $200 for simply providing a massage to a wealthy billionaire. This same pattern was repeated numerous times with countless children and young women.

4.      As United States District Judge Kenneth Marra found, "From between about 1999 and 2007, Jeffrey Epstein sexually abused more than 30 minor girls . . . at his mansion in Palm Beach, Florida, and elsewhere in the United States and overseas . . . . In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually.  Epstein used paid employees to find and bring minor girls to him.  Epstein worked in concert with others to obtain minors not only for his own sexual gratification, but also for the sexual gratification of others." Opinion and Order, Doc. No. 435 at 1–2, *Jane Doe 1 and Jane Doe 2 v. United States*, Case No. 9:08-cv-80736 (S.D. Fla. Feb. 21, 2019).

5.      Like other minor children who came before and after her, Plaintiff was initially recruited to provide massages, and thereafter to engage in a variety of sexual acts, for Epstein. Plaintiff was required to be on call for Epstein for sexual purposes and frequently traveled with

him both nationally and internationally.  Plaintiff was regularly abused by Epstein and was lent out by Epstein to other powerful men for sexual purposes.

6.      One such powerful man to whom Plaintiff was lent out for sexual purposes was the Defendant, Prince Andrew, the Duke of York.

7.      Prince Andrew was a close friend of Ghislaine Maxwell, a British socialite who spent years overseeing and managing Epstein's sex trafficking network, and actively recruited underage girls, including Plaintiff.

8.      According to Prince Andrew, he met Epstein through Maxwell in 1999.  Prince Andrew thereafter became a frequent guest in Epstein's various homes around the world, including New York City where he sexually abused Plaintiff at Epstein and Maxwell's invitation when she was a minor.

9.      After publicly feigning ignorance about the scope of Epstein's sex-trafficking operation and sympathy for Epstein's victims, Prince Andrew has refused to cooperate with U.S. authorities in their investigation and prosecution of Epstein and his co-conspirators.

10.     Prince Andrew committed sexual assault and battery upon Plaintiff when she was 17 years old.  As such, Prince Andrew is responsible for battery and intentional infliction of emotional distress pursuant to New York common law.  The damage to Plaintiff has been severe and lasting.

11.      This action has been timely filed pursuant to the Child Victims Act, N.Y. C.P.L.R. § 214-g.  The actions described herein constitute sexual offenses by Defendant under New York Penal Law Article 130, and were committed against Plaintiff when she was a child less than eighteen years of age, for which she suffered physical, psychological, and other injuries as a result.

3

## PARTIES

12.     Plaintiff Virginia L. Giuffre is an individual who is a citizen of the State of Colorado.

13.     Defendant Prince Andrew is a citizen of the United Kingdom, and is currently residing at the Royal Lodge at Windsor Great Park, Berkshire, United Kingdom, where he is domiciled.

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(2).  Plaintiff is a citizen of a State and Defendant is a citizen of a foreign state, and the amount in controversy exceeds the sum or value of $75,000.00 excluding interests and costs.

15.     Venue is proper in this Court as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.  28 U.S.C. § 1391(b)(2).

16.     This Court has personal jurisdiction over Defendant as Defendant sexually abused Plaintiff in this state, and has thus committed a tortious action within this State pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(2).  Defendant also visited Jeffrey Epstein in this State on numerous occasions.  Defendant could reasonably anticipate that a suit based upon his acts and omissions with respect to Plaintiff could result in him being subject to suit in this State, and this suit arises directly out of the Defendant's acts or omissions with respect to Plaintiff in this state.

## FACTUAL ALLEGATIONS

A.     **Epstein's Sex Trafficking Enterprise**

17.     Jeffrey Epstein was widely renowned as a billionaire who used his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of

transcontinental sex trafficking that served himself, his coconspirators, and some of the most powerful people in the world.

18.     Ghislaine Maxwell is a British socialite and the daughter of disgraced publishing tycoon Robert Maxwell.  Maxwell was the highest-ranking recruiter in Epstein's sex-trafficking enterprise.  Maxwell is currently facing criminal charges in the Southern District of New York stemming from her role in Epstein's sex-trafficking enterprise, and is set to face trial in the fall.

19.     Epstein had perfected a scheme for manipulation and abuse of young females.  As part of the scheme, Maxwell or another female recruiter would approach a young girl and strike up a conversation in an effort to quickly learn about the girl's background and any vulnerabilities they could expose.  Epstein's recruiters found their targets everywhere and anywhere, including schools, spas, trailer parks, and the street.

20.     The recruiter would then manipulate the young female into coming back to one of Epstein's residences by offering the young girl something she needed, depending on her situation. In many cases, the recruiter sought out girls who wanted to be professional masseuses and invited them to one of Epstein's homes by offering them what appeared to be legitimate masseuse positions.

21.     Once in the residence, Epstein and his co-conspirators would work in concert to impress and intimidate the young female with displays of vast wealth and power.  They would brag about their connections to very powerful political and social figures, and display photographs of themselves with those figures around Epstein's homes.  They would normalize the sexual abuse by displaying photographs and art displaying nude females, and a massage table and spa related products in an effort to legitimize the area where the abuse was set to occur.

22.     Once abused, Epstein and Maxwell continued to manipulate their victims, using their financial power, promises, and threats to ensure that the victim returned as directed and remained compliant with their demands.  Epstein and his lawyers would even gather information about the victims to use against them if they ever disobeyed him, and his homes were under constant surveillance.

23.     Message pads recovered during trash pulls at Epstein's Palm Beach mansion reflect messages that his staff took to relay to Epstein.  They show the constant flow of girls to Epstein, sometimes three per day.  Epstein's employees have also described young girls constantly being present at Epstein's different homes.  Epstein's constant access to young girls is also evidenced in his "Black Book," a book of phone numbers and contact information listing girls to call for "massages" in various cities, flight logs documenting his frequent travel with young girls and powerful individuals on his private plane, and troves of lewd photographs of young girls recovered from his homes. In his Black Book, Epstein had at least 12 different contact numbers listed for Prince Andrew.

24.     Plaintiff became a victim of sex trafficking and repeated sexual abuse after Maxwell recruited her into Epstein's sex-trafficking operation when Plaintiff was working at the Mar-A-Lago Club in Palm Beach, Florida.

25.     Between 2000 and 2002, Epstein sexually abused Plaintiff at numerous locations including his mansion in this District, at 9 East 71st Street, New York, New York 10021.

26.     Epstein also flew Plaintiff on his plane nationally and internationally numerous times when she was under the age of 18. Only portions of the flight logs of Epstein's private planes have yet been recovered, and Epstein also flew Plaintiff frequently on commercial airlines to meet him and others.  However, the chart below, which shows Plaintiff's flights on Epstein's private

plane from the limited logs that are available, illustrates the international scope of Epstein's sex trafficking.



27.     In addition to being abused by Epstein himself, Plaintiff was also forced to have sex with Defendant, Prince Andrew, the Duke of York, at Epstein and Maxwell's direction.

28.     As part of their sex trafficking efforts, Epstein and Maxwell intimidated Plaintiff into remaining silent about what had happened to her.

29.     After years of abuse, Epstein sent Plaintiff to Thailand in September 2002. One of Plaintiff's assignments from Epstein was to bring a young girl back to Epstein in the United States. Fearing for her life, and not wanting to subject another young girl to the abuse she was forced to endure, Plaintiff fled from Thailand to Australia to escape from Epstein.

**B.     Defendant's Relationship with Epstein and Maxwell**

30.     According to Prince Andrew, he first met Epstein in 1999 through Maxwell, Prince Andrew's close friend.  Prince Andrew and Maxwell have been photographed at numerous social events together.

31.     According to available flight logs, Prince Andrew began flying with Epstein on his private plane as early as 1999, when he flew with Epstein and Maxwell to Epstein's private island, Little St. James.  Prince Andrew's name also appears in other available flight log entries from

around the same time, showing travel with Epstein and Maxwell to and from other locations, including West Palm Beach, Florida, and Teterboro, New Jersey.

32.     In 2000, Epstein and Maxwell attended Prince Andrew's 40th birthday party.  That same year, Prince Andrew threw Maxwell a birthday party in Sandringham, United Kingdom, and Epstein was among the guests.

33.     In 2006, Prince Andrew invited Epstein to his daughter's 18th birthday party, despite Epstein being charged with procuring a minor for prostitution only one month prior.

34.     Prince Andrew has himself confirmed that he has been on Epstein's private plane, stayed at Epstein's private island, and stayed at Epstein's homes in Palm Beach, Florida, and New York, New York.  *See Prince Andrew's links to Jeffrey Epstein*, BBC News (Nov. 16, 2019), *available at* https://www.bbc.com/news/uk-49411215.

35.     Members of Epstein's house staff have confirmed witnessing Prince Andrew visit Epstein's numerous homes, both to the media and in sworn testimony.

**C.     Defendant's Sexual Abuse of Plaintiff**

36.     Prince Andrew abused Plaintiff on separate occasions when she was under the age of 18 years old.

37.     On one occasion, Prince Andrew sexually abused Plaintiff in London at Maxwell's home.  During this encounter, Epstein, Maxwell, and Prince Andrew forced Plaintiff, a child, to have sexual intercourse with Prince Andrew against her will.

38.     The below photograph depicts Prince Andrew, Plaintiff, and Maxwell at Maxwell's home prior to Prince Andrew sexually abusing Plaintiff.



39.     On another occasion, Prince Andrew sexually abused Plaintiff in Epstein's New York mansion in this District.  During this encounter, Maxwell forced Plaintiff, a child, and another victim to sit on Prince Andrew's lap as Prince Andrew touched her.  During his visit to New York, Prince Andrew forced Plaintiff to engage in sex acts against her will.

40.     On another occasion, Prince Andrew sexually abused Plaintiff on Epstein's private island in the U.S. Virgin Islands, Little St. James.

41.     During each of the aforementioned incidents, Plaintiff was compelled by express or implied threats by Epstein, Maxwell, and/or Prince Andrew to engage in sexual acts with Prince Andrew, and feared death or physical injury to herself or another and other repercussions for disobeying Epstein, Maxwell, and Prince Andrew due to their powerful connections, wealth, and authority.

9

42.     During each of the aforementioned incidents, Prince Andrew acted with intent to compel Plaintiff's submission.

43.     Prince Andrew engaged in each of the aforementioned sexual acts with Plaintiff at Epstein and Maxwell's invitation, knowing that she was a sex-trafficking victim being forced to engage in sexual acts with him.

44.     During each of the aforementioned incidents, Plaintiff did not consent to engaging in sexual acts with Prince Andrew.

45.     During each of the aforementioned incidents, Prince Andrew knew Plaintiff's age based on communications from Epstein and Maxwell.

46.     During each of the aforementioned incidents, Prince Andrew sexually abused Plaintiff for the purpose of gratifying his sexual desires.

47.     During each of the aforementioned incidents, Prince Andrew was acting in his individual, personal capacity, and was not performing any duty relating to his former role as a trade envoy, any duty relating to his role as a member of the Royal Family of the United Kingdom, or any other official or diplomatic duty or function.

48.     Defendant's sexual assault and battery of Plaintiff have caused her, and continue to cause her, significant emotional and psychological distress and harm.

**D.     The Arrest, Prosecution, and Death of Epstein, and Prince Andrew's Refusal to Cooperate with the Authorities**

49.     In 2008, Epstein pled guilty in Florida to the charge of procuring a minor for prostitution.

50.     In 2010, after Epstein had served his sentence and registered as a sex offender, Prince Andrew was photographed with Epstein in Central Park and stayed at Epstein's New York City mansion.

51.     Epstein flippantly referred to his sexual abuse of multiple minors, and the slap on the wrist he had received for it, in a 2011 interview with the New York Post: "Billionaire pervert Jeffrey Epstein is back in New York City—and making wisecracks about his just-ended jail stint for having sex with an underage girl. 'I am not a sexual predator, I'm an "offender,"' the financier told The Post yesterday. 'It's the difference between a murderer and a person who steals a bagel,' said Epstein." *See* Amber Sutherland, *Billionaire Jeffrey Epstein: I'm a Sex Offender, Not A Predator*, New York Post (Feb. 25, 2011), *available at* https://bit.ly/2s3ebwk.

52.     Around the same time, Prince Andrew began to face criticism over his well-publicized friendship with Epstein.

53.     In early 2015, after Plaintiff had publicly accused Prince Andrew of sexually abusing her, Prince Andrew emailed Maxwell stating, "Let me know when we can talk. Got some specific questions to ask you about Virginia Roberts."

54.     On July 2, 2019, the U.S. Attorney's Office for the Southern District of New York ("SDNY") charged Epstein with sex trafficking conspiracy and sex trafficking in violation of 18 U.S.C. § 1591.

55.     Epstein was arrested on July 8, 2019, pursuant to a Sealed Two Count Indictment.

56.     Epstein was found dead in his cell at the Metropolitan Correctional Center on August 10, 2019.

57.     Just one year before his death, Epstein told a New York Times reporter "that criminalizing sex with teenage girls was a cultural aberration and that at times in history it was perfectly acceptable."  James B. Stewart, *The Day Jeffrey Epstein Told Me He Had Dirt on Powerful People*, N.Y. Times (Aug. 12, 2019), *available at* https://www.nytimes.com/2019/08/12/business/jeffrey-epstein-interview.html.

58.     After Epstein's second arrest and death, numerous of his co-conspirators and the wealthy individuals to whom he trafficked girls—including Prince Andrew—began to face increased public scrutiny for having close ties to a convicted sex offender.

59.     In November 2019, in response to this renewed scrutiny, Prince Andrew sat for an interview with *BBC Newsnight*.  Prince Andrew stated that he did not regret his friendship with Epstein and that he had no recollection of meeting Plaintiff, despite photographic evidence to the contrary.

60.     Prince Andrew publicly pledged, including in a statement stepping down from his public duties and in his *Newsnight* interview, to assist the U.S. authorities with their criminal investigation of Epstein and his co-conspirators.  *A statement by His Royal Highness The Duke of York* (Nov. 20 2019), *available at* https://www.royal.uk/statement-his-royal-highness-duke-york ("Of course, I am willing to help any appropriate law enforcement agency with their investigations, if required.").

61.     Despite this public pledge, Prince Andrew has refused to cooperate with U.S. authorities. Former SDNY U.S. Attorney Geoffrey Berman stated that Prince Andrew had provided "zero co-operation" despite U.S. prosecutors and the FBI contacting Prince Andrew's counsel. *Prince Andrew gives 'zero co-operation' over Epstein inquiry, US prosecutor says*, BBC News (Jan. 27, 2020), *available at* https://www.bbc.com/news/uk-51271871.

62.     Prince Andrew and his counsel have also refused to cooperate with counsel for the victims of Epstein's sex trafficking. Counsel for the victims of Epstein's sex trafficking, including counsel for Plaintiff, have repeatedly asked for a meeting or telephone call with Prince Andrew and/or his representatives to enable Prince Andrew to provide whatever facts, context, or explanation he might have, and to explore alternative dispute resolution approaches. Prince

Andrew and his representatives have rejected all such requests, and responded by escalating their vile and baseless attacks on Plaintiff and others.

63.     On July 19, 2021, counsel for Plaintiff proposed a tolling agreement that would have enabled Plaintiff not to sue Prince Andrew at this time, while avoiding any argument that her failure to do so caused her claims to be time-barred. Again Prince Andrew stonewalled—ignoring Plaintiff's letter and emails without any reply or response, thereby making this action necessary now.  A copy of the July 19, 2021, letter proposing a tolling agreement is attached as Exhibit A to this Complaint.

64.     In this country no person, whether President or Prince, is above the law, and no person, no matter how powerless or vulnerable, can be deprived of the law's protection. Twenty years ago Prince Andrew's wealth, power, position, and connections enabled him to abuse a frightened, vulnerable child with no one there to protect her. It is long past the time for him to be held to account.

## FIRST CAUSE OF ACTION

### (Battery)

65.     Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

66.     Prince Andrew intentionally committed battery by sexually assaulting Plaintiff when she was a minor.  As described above, on multiple occasions Prince Andrew intentionally touched Plaintiff in an offensive and sexual manner without her consent.

67.     Prince Andrew's actions constitute sexual offenses as defined in New York Penal Law Article 130, including but not limited to sexual misconduct as defined in Article 130.20, rape in the third degree as defined in Article 130.25, rape in the first degree as defined in Article 130.35,

forcible touching as defined in Article 130.52, sexual abuse in the third degree as defined in Article 130.55, and sexual abuse in the first degree as defined in Article 130.65. *See* N.Y. C.P.L.R. § 214-g.

68.     As a direct and proximate result of Prince Andrew's criminal acts, Plaintiff has in the past and will in the future continue to suffer substantial damages, including extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

69.     Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

70.     As a direct result of these allegations as stated, Prince Andrew committed intentional infliction of emotional distress against Plaintiff.

71.     Prince Andrew's actions, described above, constitute extreme and outrageous conduct that shocks the conscience. Prince Andrew's sexual abuse of a child who he knew was a sex-trafficking victim, and when he was approximately 40 years old, goes beyond all possible bounds of decency and is intolerable in a civilized community.

72.     Prince Andrew knew or disregarded the substantial likelihood that these actions would cause Plaintiff severe emotional distress.

73.     As a direct and proximate result of Prince Andrew's criminal acts, Plaintiff has in the past and will in the future continue to suffer substantial damages, including extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

14

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action asserted within this pleading.


Dated:  August 9, 2021                               BOIES SCHILLER FLEXNER LLP

                                                     /s/ David Boies
                                                     David Boies
                                                     Alexander Boies
                                                     333 Main Street
                                                     Armonk, NY 10504
                                                     (914) 749-8200
                                                     dboies@bsfllp.com
                                                     aboies@bsfllp.com

                                                     Sigrid McCawley (*pro hac vice* pending)
                                                     401 E. Las Olas Blvd., Suite 1200
                                                     Ft. Lauderdale, FL 33301
                                                     (954) 356-0011
                                                     smccawley@bsfllp.com

                                                     Andrew Villacastin
                                                     Sabina Mariella
                                                     55 Hudson Yards
                                                     New York, NY 10001
                                                     (212) 446-2300
                                                     avillacastin@bsfllp.com
                                                     smariella@bsfllp.com