

September 10, 2021

**VIA ECF**

Honorable Lewis A. Kaplan
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Giuffre v. Prince Andrew, Duke of York*, Case No. 21-cv-06702-LAK

Dear Judge Kaplan:

In advance of the telephone conference scheduled for Monday, September 13, in the above-captioned matter, Plaintiff writes to update the Court on the status of service of process and Plaintiff's compliance with this Court's order dated August 12, 2021.

**I. Plaintiff's Compliance With this Court's Order Dated August 12, 2021.**

Prior to this Court's order, on August 12, 2021, four days after filing Plaintiff's complaint, counsel sent a copy of the Summons and Complaint to the lawyers who we had reason to believe represented Prince Andrew: Clare Montgomery of Matrix Chambers, Gary Bloxsome and Daniel Cundy of Blackfords LLP, and Stephen Ferguson of the Chambers of Brian Altman QC and Jim Sturman QC. Plaintiff's counsel sent the Summons and Complaint to these attorneys by both email and FedEx. Exs. A & B.

Plaintiff's counsel had reason to believe that the above-referenced attorneys either currently represent or have recently represented Prince Andrew based on a June 8, 2020, statement Blackfords LLP issued in response to former-U.S. Attorney Geoffrey Berman's statement that Prince Andrew had refused to cooperate with the Department of Justice's investigation into Jeffrey Epstein. Blackfords' statement stated: "In January 2020, Blackfords LLP and instructed counsel, Clare Montgomery QC and Stephen Ferguson, were commissioned to support HRH The Duke of York in his desire to provide cooperation to the US authorities regarding the victims of the late Jeffrey Epstein, should those authorities request his assistance." Ex. C at 1.

Plaintiff's counsel also copied doy.office@royal.uk on the August 12, 2021, email attaching the Summons and Complaint. *See* Ex. A. Upon information and belief, this email address is the official email address of the Duke of York's office. Immediately after sending the August 12, 2021 email, Plaintiff's counsel received an automatic reply from doy.office@royal.uk stating, "Thank you for emailing The Duke of York's office. This is an automatic acknowledgement to tell you that we have received your email safely. Please do not reply to this email." Ex. D.

Following this Court's August 12, 2021, Order setting a teleconference, on August 13, 2021, counsel sent the Court's Order to the above-referenced attorneys by email and FedEx. Exs. E & F. Pursuant to the Court's order, counsel also sent the Order to doy.office@royal.uk and the



Order, Summons, and Complaint to Prince Andrew at his home, the Royal Lodge in Windsor Great Park by FedEx. Exs. E, G.

On August 18, 2021, counsel for Plaintiff also sent Blair Berk the Order, Summons, and Complaint by email and FedEx. Exs. H & I. According to several news outlets, Prince Andrew has recently sought advice from Ms. Berk in connection with Plaintiff's claims. On August 18, 2021, Ms. Berk responded to counsel's email and stated that she was not authorized to accept service on behalf of Prince Andrew. Ex. J.

On August 19, 2021, Ms. Montgomery responded to counsel's August 13, 2021, email, stating that she was also not authorized to accept service on behalf of Prince Andrew. Ex. K. Neither Blackfords nor Stephen Ferguson has responded to Plaintiff's counsel's email.

### II. Prince Andrew was Properly Served the Summons and Complaint Pursuant to the Hague Convention.

Pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure, a foreign individual may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Both the United States and the United Kingdom are parties to the Hague Convention. *See* https://www.hcch.net/en/states/hcch-members.

#### A. Service Pursuant to the Laws of England and Wales.

Article 10(c) of the Hague Convention provides that the "Convention shall not interfere with the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." In adopting Article 10, the member states of the Hague Convention essentially "determined that states should be free to consent to additional methods of service within their own borders, consistent with their own laws." *Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998); *see also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) (the Hague Convention authorizes "service pursuant to the internal laws of the state").[1]

Plaintiff has effected service on Prince Andrew in three ways that comply with Part Six of England's Civil Procedure Rules ("CPR"), which governs service in England and Wales and is attached hereto as Exhibit L. First, on August 27, 2021, a process server served Prince Andrew in

---

[1] In reference to Article 10(c), the United Kingdom has declared that "documents for service through official channels will be accepted in the United Kingdom only by the central or additional authorities and only from judicial, consular or diplomatic officers of other Contracting States." Declaration of the United Kingdom ¶ D, *available at* https://www.hcch.net/en/instruments/conventions/status-table/. This declaration, however, is inapplicable here because forwarding the summons and complaint to a process server is not "service through official channels." *See Koehler*, 152 F.3d at 307. "In a footnote responding to a letter requesting interpretation of the reservation to Article 10(c), the United Kingdom further explains this reservation, confirming that the declaration does not preclude service '"directly" through a competent person other than a judicial officer or official.'" *In re Am. Int'l Grp., Inc. Sec. Litig.*, 240 F.R.D. 608, 609 (S.D.N.Y. 2007).



accordance with CPR 6.3(1)(C) and 6.9.² ECF No. 10 ¶ 5. The process server made two attempts to serve Prince Andrew at the Royal Lodge. On his first attempt on August 26, 2021, a police officer met the process server at the main gates of the property, and the officer informed the process server that he had been instructed not to allow anyone on the property for the purpose of serving court papers or to accept service of any court papers. *Id*. ¶ 2. The process server again attempted to serve Prince Andrew at the Royal Lodge on August 27, 2021. *Id.* ¶ 3. This time, the police officer allowed the process server to leave the Summons and Complaint with him at the main gates of the property, and stated that he would forward the Summons and Complaint to Prince Andrew's legal team. *Id.* This method of service complied with CPR 6.3(1)(C), which provides that a claim form may be served by leaving it at a place specified in CPR 6.9. CPR 6.9(2) provides that when a defendant does not provide an address at which he may be served, he may be served at his "usual or last known residence." The Royal Lodge is Prince Andrew's last known residence. *See* ECF No. 1 ¶ 13. On September 10, 2021, Plaintiff filed an affidavit of service stating that this method of service had been effected. ECF No. 10.

Second, on August 26, 2021, Plaintiff served Prince Andrew with a copy of the Summons and Complaint at the Royal Lodge by means of City Sprint, a same-day courier service in London. Ex. M. Third, Plaintiff served Prince Andrew with a copy of the Summons and Complaint via first class post, mailed from Plaintiff's counsel's London office to the Royal Lodge on September 9, 2021. Ex. N. Both methods are effective service under CPR 6.3(1)(b), which allows for service of a claim by "first class post, document exchange or other service which provides for delivery on the next business day." Accordingly, both methods constitute effective service under Article 10(c).

Plaintiff's mailing of the Summons and Complaint by first class post is also effective service under Article 10(a), which "empowers litigants to effectuate service of process through postal channels, provided that the State of destination does not object. . . . [T]he United Kingdom, the State of destination in the instant case, did not object to Article 10(a), thereby rendering it applicable here." *See EOI Corp. v. Med. Mktg. Ltd*., 172 F.R.D. 133, 142 (D.N.J. 1997).

B. <u>Service Through the United Kingdom's Central Authority.</u>

In addition to serving Prince Andrew by multiple methods that comply with the laws of the England and thus Article 10(c) of the Hague Convention, Plaintiff is also in the process of serving Prince Andrew through the United Kingdom's Central Authority—the Foreign Process Section of the Royal Courts of Justice. Article 3 of the Hague Convention states that an "authority or a judicial officer competent under the law of the State" must forward the documents to be served to the Central Authority. "[C]ourts uniformly have held that a party's attorney so qualifies." *Micula v. Gov't of Romania*, No. 17-CV-02332 (APM), 2018 WL 10196624, at *4 (D.D.C. May 22, 2018). "If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request." Hague Convention Art. 4.

---

²     Process servers are considered "competent persons" that may render service upon individuals within the United Kingdom. *Koehler*, 152 F.3d at 307–08; *In re Am. Int'l Grp.*, 240 F.R.D. at 609.



Plaintiff's counsel submitted a Request for Service Abroad of Judicial Documents, along with the Complaint, Civil Cover Sheet, Summons, and Order setting the telephone conference to the Foreign Process Section by FedEx on August 16, 2021. Exs. O, P. On August 20, 2021, the Foreign Process Section confirmed receipt of the documents for service, and indicated that it was in the process of arranging service. Ex. Q. The Foreign Process Section did not indicate that Plaintiff's request that it serve Prince Andrew does not comply with the Hague Convention or that it objected to the request.

### III. Blackfords' Letter Dated September 6, 2021.

We also bring to the Court's attention a copy of a letter that Plaintiff's counsel received from one of Prince Andrew's lawyers. On September 6, 2021, despite not responding to counsel's emails regarding accepting service on behalf of Prince Andrew, Gary Bloxsome of Blackfords sent a letter to Senior Master Fontaine of the Central Authority, copying Plaintiff's counsel. Ex. R. In the letter, Mr. Bloxsome acknowledged that Prince Andrew is on notice of Plaintiff's complaint and that the Court has scheduled a conference for September 13, 2021. *Id.* at 1, 2; *see also* Ex. S (Plaintiff's response to Bloxsome reiterating the date of the upcoming conference). He also stated that he was "not instructed to appear in the claim brought by Ms. Giuffre" or to accept service, and that he was "still considering [Prince Andrew's] legal position." Ex. R at 1.

Mr. Bloxsome criticizes Plaintiff's attempts to serve Prince Andrew pursuant to the Hague Convention. Although Mr. Bloxsome has not raised any issue with this Court, or indeed with Plaintiff's counsel directly, we thought it was appropriate to bring Mr. Bloxsome's views to the attention of the Court. We note that Mr. Bloxsome's assertions are inconsistent with the Hague Convention itself, as well as applicable authority interpreting the Convention.

For example, Mr. Bloxsome states that Articles 10(b) and 10(c) govern service through the Central Authority. But this is incorrect—Articles 3 through 6 govern service via the Central Authority, and "Articles 8 and 10 provide for alternative methods of service and allow ratifying states to decide whether they will object to the methods described." *See Koehler*, 152 F.3d at 307. Mr. Bloxsome also states that Plaintiff's attorneys are not "judicial officers" who can forward documents for service to the Central Authority, but as explained *supra*, "courts uniformly have held that a party's attorney so qualifies." *Micula*, 2018 WL 10196624, at *4. Mr. Bloxsome further states that the United Kingdom's declaration to Article 10 means that requests for service to the Central Authority must come only "from judicial, consular or diplomatic officers of other Contracting States" rather directly from Plaintiff's counsel. This is wrong because the United Kingdom's declaration to Article 10 only applies to Article 10, not to Articles 3 through 6 governing service via the Central Authority.

We will address Mr. Bloxsome's erroneous suggestion that a 2009 release in a case to which Prince Andrew was not, and could not have been, a party somehow releases Prince Andrew from the claims asserted in the Complaint if and when Prince Andrew actually asserts such an affirmative defense.

### IV. Possible Service Under Rule 4(f)(3).

Even if, contrary to fact, Plaintiff had not properly served Prince Andrew under the Hague Convention, Rule 4(f)(3) provides that foreign individuals may also be served "by other means not



prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "As an initial matter, it is not necessary to exhaust or demonstrate the impossibility of service under Rule 4(f)(1)–(2) before resorting to service under Rule 4(f)(3)." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, No. 12-CV-5754 LAK, 2015 WL 998455, at *3 (S.D.N.Y. Mar. 5, 2015) (Kaplan, J.); *see also In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("[N]othing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)."). Alternative service pursuant to Rule 4(f)(3) by service on counsel has been approved in countless cases in this District where service on counsel is virtually guaranteed to provide notice of the lawsuit to the defendant, or where the defendant is already on notice of the lawsuit.[3]

Alternative service on Prince Andrew's counsel is not merely likely to provide notice of this lawsuit to Prince Andrew; it is absolutely clear it would provide such notice. Prince Andrew's attorneys at Blackfords, who he has apparently instructed to evade and contest service, have confirmed that Prince Andrew himself *already* has notice of this lawsuit and is evaluating his chances of success. And even if Blackfords had not confirmed as much, any other conclusion would be implausible—reputable media outlets around the world reported on the filing of Plaintiff's complaint, and hundreds, if not thousands, of articles about this lawsuit have been published. *See, e.g.*, Ex. T (sample of media coverage).

Respectfully yours,

*David Boies*

David Boies

cc:   Gary Bloxsome, Blackfords LLP (via email)
      Prince Andrew, Duke of York (via FedEx)

---

[3]   *See, e.g.*, *NYKCool*, 2015 WL 998455, at *4 (Kaplan, J.) (ordering service on counsel under Rule 4(f)(3) where it was clear that defendant's "lawyers are in touch with him" and it was "difficult to imagine evidence more clearly demonstrating" defendant's "interaction with his lawyers"); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) ("[S]ervice on Baidu's counsel would satisfy the requirements of due process, as Baidu has actual notice of this lawsuit and there is evidence of 'adequate communication' between Baidu and counsel in any event."); *GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 267 (ordering service on counsel under Rule 4(f)(3) where service on counsel was "virtually guaranteed to provide notice to" the defendant).