# EXHIBIT I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 08-80736-Civ-Marra/Johnson**

**JANE DOE #1 and JANE DOE #2**

**v.**

**UNITED STATES**
**______________________________/**

**JANE DOE #3 AND JANE DOE #4'S MOTION PURSUANT TO RULE 21 FOR JOINDER IN ACTION**

COME NOW Jane Doe #3 and Jane Doe #4 (also referred to as "the new victims"), by and through undersigned counsel, to file this motion pursuant to Federal Rule of Civil Procedure 21 to join this action, on the condition that they not re-litigate any issues already litigated by Jane Doe #1 and Jane Doe #2 (also referred to as "the current victims"). The new victims have suffered the same violations of their rights under the Crime Victims' Rights Act (CVRA) as the current victims. Accordingly, they desire to join in this action to vindicate their rights as well. Because the new victims will not re-litigate any issues previously litigated by the current victims (and because they are represented by the same legal counsel as the current victims), the Government will not be prejudiced if the Court grants the motion. The Court may "at any time" add new parties to the action, Fed. R. Civ. P. 21. Accordingly, the Court should grant the motion.[1]

[1] As minor victims of sexual offenses, Jane Doe #3 and Jane Doe #4 desire to proceed by way of pseudonym for the same reasons that Jane Doe #1 and Jane Doe #2 proceeded in this



AD-000222

**FACTUAL BACKGROUND**

As the Court is aware, more than six years ago, Jane Doe #1 filed the present action against the Government, alleging a violation of her rights under the CVRA, 18 U.S.C. § 3771. DE1. She alleged that Jeffrey Epstein had sexually abused her and that the United States had entered into a secret non-prosecution agreement (NPA) regarding those crimes in violation of her rights. At the first court hearing on the case, the Court allowed Jane Doe #2 to also join the action. Both Jane Doe #1 and Jane Doe #2 specifically argued that the government had failed to protect their CVRA rights (inter alia) to confer, to reasonable notice, and to be treated with fairness. In response, the Government argued that the CVRA rights did not apply to Jane Doe #1 and Jane Doe #2 because no federal charges had ever been filed against Jeffrey Epstein.

The Court has firmly rejected the United States' position. In a detailed ruling, the Court concluded that the CVRA extended rights to Jane Doe #1 and Jane Doe #2 even though federal charges were never filed. DE 189. The Court explained that because the NPA barred prosecution of crimes committed against them by Epstein, they had "standing" to assert violations of the CVRA rights. *Id.* The Court deferred ruling on whether the two victims would be entitled to relief, pending development of a fuller evidentiary record. *Id.*

Two other victims, who are in many respects similarly situated to the current victims, now wish to join this action. The new victims joining at this stage will not cause any delay and their joinder in this case is the most expeditious manner in which to pursue their rights. Because the background regarding their abuse is relevant to the Court's assessment of whether to allow them to join, their circumstances are recounted here briefly.

---

fashion. Counsel for the new victims have made their true identities known to the Government.

Case 1:19-cv-03377-LAP Document 335-8 Filed 09/29/21 Page 4 of 14

Jane Doe #3's Circumstances

As with Jane Doe #1 and Jane Doe #2, Jane Doe #3 was repeatedly sexually abused by Epstein. The Government then concealed from Jane Doe #3 the existence of its NPA from Jane Doe #3, in violation of her rights under the CVRA. If allowed to join this action, Jane Doe #3 would prove the following:

In 1999, Jane Doe #3 was approached by Ghislaine Maxwell, one of the main women whom Epstein used to procure under-aged girls for sexual activities and a primary co-conspirator in his sexual abuse and sex trafficking scheme. In fact, it became known to the government that Maxwell herself regularly participated in Epstein's sexual exploitation of minors, including Jane Doe #3. Maxwell persuaded Jane Doe #3 (who was then fifteen years old) to come to Epstein's mansion in a fashion very similar to the manner in which Epstein and his other co-conspirators coerced dozens of other children (including Jane Doe #1 and Jane Doe #2). When Jane Doe #3 began giving Epstein a "massage," Epstein and Maxwell turned it into a sexual encounter, as they had done with many other victims. Epstein then became enamored with Jane Doe #3, and with the assistance of Maxwell converted her into what is commonly referred to as a "sex slave." Epstein kept Jane Doe #3 as his sex slave from about 1999 through 2002, when she managed to escape to a foreign country and hide out from Epstein and his co-conspirators for years. From 1999 through 2002, Epstein frequently sexually abused Jane Doe #3, not only in West Palm Beach, but also in New York, New Mexico, the U.S. Virgin Islands, in international airspace on his Epstein's private planes, and elsewhere.

Epstein also sexually trafficked the then-minor Jane Doe, making her available for sex to politically-connected and financially-powerful people. Epstein's purposes in "lending" Jane Doe

(along with other young girls) to such powerful people were to ingratiate himself with them for business, personal, political, and financial gain, as well as to obtain potential blackmail information.

One such powerful individual that Epstein forced then-minor Jane Doe #3 to have sexual relations with was former Harvard Law Professor Alan Dershowitz, a close friend of Epstein's and well-known criminal defense attorney. Epstein required Jane Doe #3 to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico, and the U.S. Virgin Islands. In addition to being a participant in the abuse of Jane Doe #3 and other minors, Deshowitz was an eye-witness to the sexual abuse of many other minors by Epstein and several of Epstein's co-conspirators. Dershowitz would later play a significant role in negotiating the NPA on Epstein's behalf. Indeed, Dershowitz helped negotiate an agreement that provided immunity from federal prosecution in the Southern District of Florida not only to Epstein, but also to "any potential co-conspirators of Epstein." NPA at 5. Thus, Dershowitz helped negotiate an agreement with a provision that provided protection for himself against criminal prosecution in Florida for sexually abusing Jane Doe #3. Because this broad immunity would have been controversial if disclosed, Dershowitz (along with other members of Epstein's defense team) and the Government tried to keep the immunity provision secret from all of Epstein's victims and the general public, even though such secrecy violated the Crime Victims' Rights Act.

Ghislaine Maxwell was another person in Epstein's inner circle and a co-conspirator in Epstein's sexual abuse. She was someone who consequently also appreciated the immunity granted by the NPA for the crimes she committed in Florida. In addition to participating in the

sexual abuse of Jane Doe #3 and others, Maxwell also took numerous sexually explicit pictures of underage girls involved in sexual activities, including Jane Doe #3. She shared these photographs (which constituted child pornography under applicable federal laws) with Epstein. The Government is apparently aware of, and in certain instances possesses some of these photographs.

Perhaps even more important to her role in Epstein's sexual abuse ring, Maxwell had direct connections to other powerful individuals with whom she could connect Epstein. For instance, one such powerful individual Epstein forced Jane Doe #3 to have sexual relations with was a member of the British Royal Family, Prince Andrew (a/k/a Duke of York). Jane Doe #3 was forced to have sexual relations with this Prince when she was a minor in three separate geographical locations: in London (at Ghislaine Maxwell's apartment), in New York, and on Epstein's private island in the U.S. Virgin Islands (in an orgy with numerous other under-aged girls). Epstein instructed Jane Doe #3 that she was to give the Prince whatever he demanded and required Jane Doe #3 to report back to him on the details of the sexual abuse. Maxwell facilitated Prince Andrew's acts of sexual abuse by acting as a "madame" for Epstein, thereby assisting in internationally trafficking Jane Doe #3 (and numerous other young girls) for sexual purposes.

Another person in Epstein's inner circle of friends (who becomes apparent with almost no investigative effort) is Jean Luc Brunel. Epstein sexually trafficked Jane Doe #3 to Jean Luc Brunel many times. Brunel was another of Epstein's closest friends and a regular traveling companion, who had many contacts with young girls throughout the world. Brunel has been a model scout for various modeling agencies for many years and apparently was able to get U.S.

passports for young girls to "work" as models. He would bring young girls (ranging to ages as young as twelve) to the United States for sexual purposes and farm them out to his friends, especially Epstein. Brunel would offer the girls "modeling" jobs. Many of the girls came from poor countries or impoverished backgrounds, and he lured them in with a promise of making good money. Epstein forced Jane Doe #3 to observe him, Brunel and Maxwell engage in illegal sexual acts with dozens of underage girls. Epstein also forced Jane Doe #3 to have sex with Brunel on numerous occasions, at places including Epstein's mansion in West Palm Beach, Little St. James Island in the U.S. Virgin Islands (many including orgies that were comprised of other underage girls), New York City, New Mexico, Paris, the south of France, and California.

Epstein also trafficked Jane Doe #3 for sexual purposes to many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders. Epstein required Jane Doe #3 to describe the events that she had with these men so that he could potentially blackmail them.

The Government was well aware of Jane Doe #3 when it was negotiating the NPA, as it listed her as a victim in the attachment to the NPA. Moreover, even a rudimentary investigation of Jane Doe #3's relationship to Epstein would have revealed the fact that she had been trafficked throughout the United States and internationally for sexual purposes. Nonetheless, the Government secretly negotiated a non-prosecution agreement with Epstein precluding any Federal prosecution in the Southern District of Florida of Epstein and his co-conspirators. As with Jane Doe #1, and Jane Doe #2, the Government concealed the non-prosecution agreement from Jane Doe #3 – all in violation of her rights under the CVRA – to avoid Jane Doe #3 from raising powerful objections to the NPA that would have shed tremendous public light on Epstein

Case 1:21-cv-03672-LAK Document 35-9 Filed 10/28/21 Page 8 of 14

and other powerful individuals and that would likely have been prevented it from being concluded in the secretive manner in which it was.

Jane Doe #4's Circumstances

If permitted to join this action, Jane Doe #4 would allege, and could prove at trial, that she has CVRA claims similar to those advanced by Jane Doe #1 and Jane Doe #2, based on the following:

As with the other Jane Does, Jane Doe #4 was repeatedly sexually abused by Epstein. In or around the summer of 2002, Jane Doe #4, an economically poor and vulnerable sixteen-year-old child, was told by another one of Epstein's underage minor sex abuse victims, that she could make $300 cash by giving an old man a massage on Palm Beach. An acquaintance of Jane Doe #4 (also a minor sexual abuse victim of Epstein) telephoned Epstein and scheduled Jane Doe #4 to go to Epstein's house to give him a massage. During that call, Epstein himself got on the phone (a means of interstate communication) with Jane Doe #4, asking her personally to come to his mansion in Palm Beach.

Jane Doe #4 then went to Epstein's mansion and was escorted upstairs to Epstein's large bathroom by one of Epstein's assistants. Shortly thereafter Jeffrey Epstein emerged and lay face down on the table and told Jane Doe #4 to start massaging him. Epstein asked Jane Doe #3 her age and she told him she had recently turned sixteen. Epstein subsequently committed illegal sexual acts against Jane Doe #4 on many occasions.

Epstein used a means of interstate communication (i.e., a cell phone) to arrange for these sexual encounters. Epstein also frequently travelled in interstate commerce (i.e., on his personal jet) for purposes of illegally sexually abusing Jane Doe #4.

The acts Epstein committed against Jane Doe #4, constituted numerous federal sex offenses, some of which do not carry a statute of limitations and thus are not time-barred. *See* 18 U.S.C. § 3283. And these offenses were the kinds of offenses that the Federal Bureau of Investigation (FBI) and U.S. Attorney's Office for the Southern District of Florida were pursuing in 2007. So far as Jane Doe #4 is aware, the U.S. Attorney's Office made no serious effort to locate her. Instead, after identifying approximately forty separate underage sexually abused victims, and apparently preparing a 53-page federal indictment and with full awareness of the existence of many victims like Jane Doe #4 – unidentified and not interviewed – it entered into a non-prosecution agreement barring prosecution of Epstein's federal crimes against these victims. This is contrary to the Government's normal approach in prosecuting federal sex offenses. It also violated Jane Doe #4's rights under the CVRA, including the fact that she had a "reasonable" right to confer with the U.S. Attorney's Office before they entered into an agreement with a sex offender barring prosecution of him for the crimes he committed against her. 18 U.S.C. § 3771(a)(5).

**MOTION FOR JOINDER**

Jane Doe #3 and Jane Doe #4 now both move to join this action filed by Jane Doe #1 and Jane Doe #2, pursuant to Rule 21 of the Federal Rules of Civil Procedure. Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add . . . a party." Rule 21 "grants the court broad discretion to permit a change in the parties at any stage of a litigation." *Ford v. Air Line Pilots Ass'n Int'l*, 268 F. Supp. 2d 271, 295 (E.D.N.Y. 2003) (internal quotation omitted). The new victims should be allowed to join the current victims in this action under Rule 21.

The new victims will establish at trial that the Government violated their CVRA rights in the same way as it violated the rights of the other victims. The new victims' participation in this case is important because it appears that the Government intends to raise a factual defense that somehow it did keep Jane Doe #1 and Jane Doe #2 properly informed of what was happening in the criminal prosecution. Of course, if four victims all testify consistently that they were not properly informed by the Government (as we believe they will), that provides a stronger case for a CVRA violation.

In addition, Jane Doe #3 and Jane Doe #4's participation is relevant to a defense the Court has allowed the Government to raise. The Court has previously ruled that the victims' request for rescission of the NPA "implicates a fact-sensitive equitable defense which must be considered in the historical factual context of the entire interface between Epstein, the relevant prosecutorial authorities and the federal offense victims – including an assessment of the allegation of a deliberate conspiracy between Epstein and federal prosecutors to keep the victims in the dark on the pendency of negotiations between Epstein and federal authorities until well after the fact and presentation of the non-prosecution agreement to them as *a fait accompli*." DE 189 at 12 n.6 (emphasis added). Jane Doe #3's and Jane Doe #4's participation in this case will help to show what the "entire interface" was between the Government and the victims and thus to respond to the Government's estoppel arguments as well as other defenses that it appears to be preparing to raise. *See, e.g.*, DE 62 (52-page response from the Government to the victim's summary judgment motion, raising numerous factually-based and other arguments against the victim's position).

Jane Doe #3's and Jane Doe #4's participation is also directly relevant to the discovery disputes currently pending in this case. The Government has raised various relevancy objections to the documents that Jane Doe #1 and Jane Doe #2 are attempting to obtain. The current victims have responded by explaining how these documents are relevant, including explaining how these documents might bear on the way in which Epstein used his powerful political and social connections to secure a favorable plea deal, as well as provide proof of the Government's motive to deliberately fail to investigate certain aspects of the victims' claims in an effort to maintain the secrecy of the facts and resolve the case without the victims' knowledge. *See, e.g.*, DE 266 at 6-10. Jane Doe #3 and Jane Doe #4's participation will help prove the relevancy of these requests, as well as the need for those requests.

One clear example is Request for Production No. 8, which seeks documents regarding Epstein's lobbying efforts to persuade the Government to give him a more favorable plea arrangement and/or non-prosecution agreement, including efforts on his behalf by Prince Andrew and former Harvard Law Professor Alan Dershowitz. Jane Doe #1 and Jane Doe #2 have alleged these materials are needed to prove their allegations that, after Epstein signed the non-prosecution agreement, his performance was delayed while he used his significant social and political connections to lobby the Justice Department to obtain a more favorable plea deal. *See, e.g.*, DE 225 at 7-8 (discussing DE 48 at 16-18). Jane Doe #3 has directly person knowledge of Epstein's connection with some of these powerful people and thus how Epstein might have used them to secure favorable treatment.

Adding two new victims to this case will not delay any of the proceedings. They will simply join in motions that the current victims were going to file in any event. For example, the

new victims will simply join in a single summary judgment motion that the current victims anticipate filing after discovery has been completed.

Nor will adding the new victims prejudice the United States. As the court is aware, this Court is still in its initial discovery stage. The Court is currently considering whether to reject the Government's assertion of privilege over documents regarding the case. *See* DE 265 (victims' reassertion of objections to the Government privilege claims). The new victims do not seek any additional discovery beyond that previously sought by the current victims.[2] Accordingly, the United States will not be prejudiced or burdened by adding them to this case.

The CVRA does not contain any statute of limitations for filing an action to enforce rights under the statute. Accordingly, were the Court to deny this motion, the result might be that the new victims would then be forced to file a separate suit raising their claims, which would then possibly proceed on a separate litigation track. Rather than require duplicative litigation, the Court should simply grant their motion to join.

Jane Doe #1 and Jane Doe #2 support the joinder motion. Counsel for the victims have discussed this motion with the Government at length in an effort to avoid any need to file a substantive pleading on the issue. Counsel for the victims asked the Government during the summer for its position on joinder. The Government, however, took the matter under advisement for months. Ultimately, after several inquiries from victims counsel, the Government indicated without explanation that it opposes this motion. Counsel for the victims has requested a meeting with the Government on this issue, which will hopefully occur in

[2] Jane Doe #3 and Jane Doe #4 have asked the Government to provide them with the record of their statements that they provided to the FBI. These FBI 302's should be only a few pages long.



AD-000232

January. In the meantime, however, counsel for the victims believe that it is no longer appropriate to delay filing this motion and accordingly file it at this time. Because the Government is apparently opposing this motion, Jane Doe #3 and Jane Doe #4 have described the circumstances surrounding their claims so that the Court has appropriate information to rule on the motion.

**CONCLUSION**

Jane Doe #3 and Jane Doe #4 should be allowed to join this action, pursuant to Rule 21 of the Federal Rules of Civil Procedure. Their joinder should be conditioned on the requirement that they not re-litigate any issues previously litigated by Jane Doe #1 and Jane Doe #2. A proposed order to that effect is attached to this pleading.

DATED: December 30, 2014

Respectfully Submitted,

/s/ Bradley J. Edwards
Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
E-mail: brad@pathtojustice.com

*And*

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone: 801-585-5202



AD-000233

Facsimile: 801-585-6833
E-Mail: cassellp@law.utah.edu

*Attorneys for Jane Doe #1 and Jane Doe #2*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was served on December 30, 2014, on the following using the Court's CM/ECF system:

Dexter Lee
A. Marie Villafaña
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov

*Attorneys for the Government*

/s/ Bradley J. Edwards



AD-000234