# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

        Plaintiff,

v.

PRINCE ANDREW, DUKE OF YORK,
a/k/a ANDREW ALBERT CHRISTIAN
EDWARD, in his personal capacity,

        Defendant.

Case No. 21-cv-6702-LAK

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## PRINCE ANDREW'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A
## <u>MORE DEFINITE STATEMENT, AND REQUEST FOR JUDICIAL NOTICE</u>

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 2

     A.    Plaintiff's Allegations in the Complaint Concerning Prince Andrew ................... 2

     B.    Prince Andrew's Attacks on Ms. Giuffre's Character and Credibility .................. 4

     C.    Plaintiff's 2009 and 2020 Settlements with Epstein ................................. 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.  ARGUMENT ................................................................................................... 7

     A.    The 2009 Release Does Not Warrant Dismissal. .................................... 7

          1.    Even if the Court Could Take Notice of the 2009 Release, the Court Could Not Take Judicial Notice of Its Validity and Applicability Where, as Here, They Are Disputed. ................................................ 7

          2.    The Court Cannot Take Judicial Notice of the 2009 Release Because It Was Not Publicly Filed. ........................................................... 8

          3.    Even if the Court Could Consider the 2009 Release, Prince Andrew Is Not a Released Party Under the Terms of the Release. .................................. 9

               a.    Prince Andrew Could Not Be a Released Party Because He Was Not Subject to Jurisdiction in Florida. ........................................ 10

               b.    Prince Andrew Could Not Be a Released Party Because He Could Not Have Been Included in the Florida Complaint's Claims. ...... 11

               c.    Neither Party Intended to Release Prince Andrew. ..................... 13

               d.    The 2020 Settlement Constitutes Modification and/or Abandonment of the 2009 Release. ............................................ 15

     B.    Plaintiff Has Sufficiently Alleged Battery and Intentional Infliction of Emotional Distress Claims Against Prince Andrew. ........................................... 17

          1.    Prince Andrew Misstates the Applicable Pleading Standard and Ignores the Allegations of the Complaint. ........................................... 17

          2.    Plaintiff Has Sufficiently Stated Claims for Battery and Intentional Infliction of Emotional Distress. .................................................. 20

          3.    Prince Andrew's Actions Constitute One or More Sex Offenses Under the New York Penal Code. ........................................................... 23

C.    Plaintiff's Intentional Infliction of Emotional Distress Claim is Not Duplicative of Her Battery Claim. .................................................................. 27

D.    The Child Victims Act is Constitutional.................................................. 29

E.    Prince Andrew is Not Entitled to a More Definite Statement. ............................ 32

V.    CONCLUSION............................................................................................ 34

## **TABLE OF AUTHORITIES**

**Case**                                                                                                          **Page(s)**

*Agilent Techs., Inc. v. Micromuse, Inc.*,
    No. 04 CIV. 3090 (RWS), 2004 WL 2346152 (S.D.N.Y. Oct. 19, 2004) ............................ 34

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 301 (S.D.N.Y. 2010) .......................................................................... 6

*ARK3 Doe v. Diocese of Rockville Ctr.*,
    No. 900010/2019, 2020 N.Y. Misc. LEXIS 1964 (N.Y. Sup. Ct. May 11, 2020) ................ 31

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................... 6, 7, 22, 25

*B.K. v. Kelley*,
    No. 15–P–892, 2016 WL 3201116 (Mass. App. Ct. 2016) .................................. 28

*Bais Yaakov of Spring Valley v. Alloy, Inc.*,
    936 F. Supp. 2d 272 (S.D.N.Y. 2013) .......................................................................... 4

*Bastein v. Sotto*,
    299 A.D.2d 432 (N.Y. App. Div. 2002) ...................................................... 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) .......................................................... 1, 7, 18

*Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*,
    903 So. 2d 251 (Fla. Dist. Ct. App. 2005) ................................................ 9

*Bower v. Weisman*,
    639 F. Supp. 532 (S.D.N.Y. 1986) ...................................................... 34

*Calcutti v. SBU, Inc.*,
    273 F. Supp. 2d 488 (S.D.N.Y. 2003) ............................................. 7, 16

*Canosa v. Ziff*,
    No. 18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ........................ 22, 27

*Caraveo v. Nielsen Media Rsch., Inc.*,
    No. 01 Civ. 9609 (LBS), 2002 WL 530993 (S.D.N.Y. Apr. 8, 2002) .................................... 34

*Casella v. Hugh O'Kane Elec. Co.*,
    No. 00 Civ. 2481 (LAK), 2000 WL 1530021 (S.D.N.Y. Oct. 17, 2000) ........................... 33

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...................................................... 8

*Childers v. New York & Presbyterian Hosp.*,
    36 F. Supp. 3d 292 (S.D.N.Y. 2014)...................................................................... 19

*City of Tampa v. Thornton-Tomasetti, P.C.*,
    646 So. 2d 279 (Fla. Dist. Ct. App. 1994) .............................................................. 9

*Comfort Inn Oceanside v. Hertz Corp.*,
    No. 11-CV-1534 JG JMA, 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011) ............................ 18

*Day v. Ryan*,
    No. CV-19-01091-PHX-JAT (JFM), 2020 WL 3414699 (D. Ariz. June 19, 2020)................ 9

*Dean v. Bennett M. Lifter, Inc.*,
    336 So. 2d 393 (Fla. Dist. Ct. App. 1976) ...................................................... 12, 15

*Deborah S. v. Diorio*,
    583 N.Y.S.2d 872 (N.Y. Civ. Ct. 1992)................................................................ 28

*Desner v. Educators Mut. Life Ins. Co.*,
    No. CV 13-6154, 2014 WL 4907603 (E.D.N.Y. Sept. 29, 2014).............................. 14

*Deylii v. Novartis Pharms. Corp.*,
    No. 13-CV-06669 NSR, 2014 WL 2757470 (S.D.N.Y. June 16, 2014)................................. 8

*Doe v. Alsaud*,
    224 F. Supp. 3d 286 (S.D.N.Y. 2016).............................................................. 21, 27

*Doe v. Baram*,
    No. 20 CIV. 9522 (ER), 2021 WL 4847076 (S.D.N.Y. Oct. 15, 2021) ................................ 20

*Doe v. Indyke*,
    465 F. Supp. 3d 452 (S.D.N.Y. 2020)............................................................... 1, 18

*Doe v. NYS Off. of Child. & Fam. Servs.*,
    No. 1:20-cv-01195 (BKS/CFH), 2021 WL 2826457 (N.D.N.Y. July 7, 2021)................ 1, 18

*Doyle v. U.S. Dep't of Homeland Sec.*,
    331 F. Supp. 3d 27 (S.D.N.Y. 2018)..................................................................... 7

*Encore Lake Grove Homeowners Ass'n v. Cashin Assocs.*,
    111 A.D.3d 881 (N.Y. App. Div. 2013) .............................................................. 15

*Erickson v. Pardus*,
    551 U.S. 89, 127 S. Ct. 2197 (2007)................................................................ 1, 18

*Farrell v. United States Olympic & Paralympic Comm.*,
    No. 120CV1178FJSCFH, 2021 WL 4820251 (N.D.N.Y. Oct. 15, 2021) ...................... 21, 31

*Fla. Mun. Power Agency v. Fla. Power & Light Co.*,
    81 F. Supp. 2d 1313 (M.D. Fla. 1999) .................................................................................. 14

*Freedman v. Weatherford Int'l Ltd.*,
    No. 12 CIV. 2121 LAK, 2013 WL 5299137 (S.D.N.Y. Sept. 20, 2013) .................................. 6

*Giuffre v. Dershowitz*,
    No. 19 CIV. 3377 (LAP), 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020) ........................ *passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915, 131 S. Ct. 2846 (2011) .................................................................................. 10

*Harris v. City of New York*,
    186 F.3d 243 (2d Cir. 1999) .................................................................................................. 20

*Hester v. Gatlin*,
    332 So. 2d 660 (Fla. Dist. Ct. App. 1976) ............................................................................ 12

*Holloway v. Holy See*,
    No. 19 CIV. 2195 (NRB), 2021 WL 1791456 (S.D.N.Y. May 5, 2021) .............................. 26

*In re Corp. Res. Servs., Inc.*,
    849 F. App'x 320 (2d Cir. 2021) .......................................................................................... 13

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) ...................................................................................................... 7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. L*iab. Litig.,
    233 F.R.D. 133 (S.D.N.Y. 2005) .......................................................................................... 33

*In re Skat Tax Refund Scheme Litig.*,
    356 F. Supp. 3d 300 (S.D.N.Y. 2019) .................................................................................. 27

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    66 F. Supp. 3d 466 (S.D.N.Y. 2014) .................................................................................... 30

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    89 N.E.3d 1227 (N.Y. 2017) .......................................................................................... 29, 30

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    846 F.3d 58 (2d Cir. 2017) .................................................................................................... 29

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
    146 F.3d 66 (2d Cir. 1998) ...................................................................................................... 7

*Jovel v. i-Health, Inc.*,
    No. 12-CV-5614, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) .......................................... 18

*Kashef v. BNP Paribas S.A.*,
   925 F.3d 53 (2d Cir. 2019) .................................................................................. 7

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) ..................................................................... 33, 34

*Kok v. First Unum Life Ins. Co.*,
   154 F. Supp. 2d 777 (S.D.N.Y. 2001) .............................................................. 33

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991) .................................................................................. 8

*Laurie Marie M. v. Jeffrey T.M.*,
   159 A.D.2d 52 (N.Y. App. Div. 1990) ............................................................... 27

*Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.*,
   94 A.D.3d 1466 (N.Y. App. Div. 2012) ............................................................ 15

*Love v. West*,
   No. 19 CIV. 10799 (ER), 2021 WL 431210 (S.D.N.Y. Feb. 8, 2021) .................. 10

*McGrath v. Dominican Coll. of Blauvelt, New York*,
   672 F. Supp. 2d 477 (S.D.N.Y. 2009) .......................................................... 20, 28

*M-I LLC v. Util. Directional Drilling, Inc.*,
   872 So. 2d 403 (Fla. Dist. Ct. App. 2004) ........................................................ 15

*MLR Inv. Group, LLC v. Pate Ins. Agency, Inc.*,
   2012 U.S. Dist. LEXIS 179035 (M.D. Ga. Dec. 19, 2012) .................................. 9

*Morgan Stanley DW Inc. v. Halliday*,
   873 So. 2d 400 (Fla. Dist. Ct. App. 2004) .......................................................... 9

*Neumann v. Brigman*,
   475 So. 2d 1247 (Fla. Dist. Ct. App. 1985) ...................................................... 14

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ......................................................................... 11

*Olsen v. O'Connell*,
   466 So. 2d 352 (Fla. Dist. Ct. App. 1985) ................................................... 12, 15

*Oneida Indian Nation of New York v. New York*,
   691 F.2d 1070 (2d Cir. 1982) ............................................................................... 7

*Ortiz v. Cornetta*,
   867 F.2d 146 (2d Cir. 1989) ............................................................................... 19

*Painter v. Painter*,
　823 So. 2d 268 (Fla. Dist. Ct. App. 2002) ............................................................. 16

*PB-36 Doe v. Niagara Falls City Sch. Dist.*,
　152 N.Y.S.3d 242 (N.Y. Sup. Ct. 2021) ........................................................... 31, 32

*PC-41 Doe v. Poly Prep Country Day Sch.*,
　No. 20CV03628 (DG) (SJB), 2021 WL 4310891 (E.D.N.Y. Sept. 22, 2021) ........... 30, 31, 32

*People v. D'Alessio*,
　802 N.Y.S.2d 828 (N.Y. App. Div. 2005) .............................................................. 26

*People v. Guaman*,
　8 N.E.3d 324 (N.Y. 2014) ....................................................................................... 24

*People v. Hartle*,
　159 A.D.3d 1149 (N.Y. App. Div. 2018) .................................................................. 26

*People v. Johnson*,
　477 N.Y.S.2d 67 (N.Y. App. Div. 1984) .................................................................. 24

*People v. Lewis*,
　156 A.D.3d 1431 (N.Y. 2017) ................................................................................... 26

*People v. Orda*,
　690 N.Y.S.2d 822 (N.Y. Sup. Ct. 1999) ............................................................. 24, 27

*People v. Sehn*,
　295 A.D.2d 749 (N.Y. App. Div. 2002) .................................................................... 26

*People v. Sene*,
　887 N.Y.S.2d 8 (N.Y. App. Div. 2009) .................................................................... 24

*Quarterman v. City of Jacksonville*,
　347 So. 2d 1036 (Fla. Dist. Ct. App. 1977) ............................................................. 15

*Rentas v. Ruffin*,
　816 F.3d 214 (2d Cir. 2016) ..................................................................................... 27

*Roelcke v. Zip Aviation, LCC*,
　No. 15 CIV. 6284 (DAB), 2018 WL 1792374 (S.D.N.Y. Mar. 26, 2018) .............. 28

*Schoolcraft v. City of New York*,
　103 F. Supp. 3d 465 (S.D.N.Y. 2015) ...................................................................... 28

*Sculptchair, Inc. v. Century Arts, Ltd.*,
　94 F.3d 623 (11th Cir. 1996) .................................................................................... 10

*St. Joe Corp. v. McIver*,
875 So. 2d 375 (Fla. 2004)...................................................................................... 16

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008)..................................................................................... 4

*Sweener v. Saint-Gobain Performance Plastics Corp.*,
No. 17-CV-00532 (LEK/DJS), 2018 WL 748742 (N.D.N.Y. Feb. 7, 2018)......................... 32

*Technicable Video Sys., Inc. v. Americable of Greater Mia., Ltd.*,
479 So. 2d 810 (Fla. Dist. Ct. App. 1985) ................................................................ 15

*Torrey v. Portville Cent. Sch.*,
No. 88476, 2020 WL 856432 (N.Y. Sup. Ct. Feb. 21, 2020)......................................... 31

*Traore v. Police Off. Andrew Ali Shield*,
No. 14 CIV. 8463 (ER), 2016 WL 316856 (S.D.N.Y. Jan. 26, 2016) ................................ 8

*United Nat'l. Ins. Co. v. Waterfront New York Realty Corp.*,
994 F.2d 105 (2d Cir. 1993)..................................................................................... 21

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*,
412 U.S. 669, 93 S. Ct. 2405 (1973)......................................................................... 33

*United States v. Space Hunters, Inc.*,
429 F.3d 416 (2d Cir. 2005) .................................................................................... 14

*Van Vleet v. Rhulen Agency Inc.*,
180 A.D.2d 846 (N.Y. App. Div. 1992) ...................................................................... 15

*Vermeulen v.  Renault, U.S.A., Inc.*,
985 F.2d 1534 (11th Cir. 1993) ................................................................................ 11

*Wait v. Beck's N. Am., Inc.*,
241 F. Supp. 2d 172 (N.D.N.Y. 2003) ....................................................................... 21

*Wales v. Wales*,
422 So. 2d 1066 (Fla. Dist. Ct. App. 1982) ............................................................... 16

*Zumpano v. Quinn*,
849 N.E.2d 926 (N.Y. 2006)..................................................................................... 31

## **Statutes**

Fla. Stat. Ann. § 48.193 ..................................................................................... 10, 11

N.Y. Penal Law § 130................................................................................... *passim*

N.Y. Penal Law § 130.00 ................................................................................. 23, 24

N.Y. Penal Law § 130.05 ............................................................................... 23, 24, 25

N.Y. Penal Law § 130.52 ..................................................................................... 24, 26

N.Y. Penal Law § 130.55 ..................................................................................... 24, 26

**Rules**

Fed. R. Civ. P. 8 ................................................................................................... *passim*

Fed. R. Civ. P. 9 ........................................................................................................ 18

Fed. R. Civ. P. 12 ................................................................................................ *passim*

N.Y. C.P.L.R. 214-g ................................................................................................. 23

N.Y. C.P.L.R. 3211 ................................................................................................... 15

**Other Authorities**

N.Y. Comm. Rep., 2019 S.B. 2440 ......................................................................... 30

*After Disastrous Epstein Interview, Prince Andrew Steps Down From Public Duties*,
   N.Y. Times (Nov. 20, 2019) ................................................................................ 5

*Prince Andrew & the Epstein Scandal: The Newsnight Interview*, BBC News (Nov. 17,
   2019) .............................................................................................................. 5, 34

*Prince Andrew didn't 'act royally,' says 'sex slave' ex*, Page Six (Jan. 6, 2015) ......... 5

*Prince Andrew's friend, Ghislaine Maxwell, some underage girls and a very disturbing
   story*, Daily Mail (Sept. 23, 2007) ........................................................................ 5

*Prince Andrew's links to Jeffrey Epstein*, BBC News (Nov. 16, 2019) ........................ 5

Plaintiff Virginia Giuffre respectfully submits this memorandum of law in opposition to (1) Prince Andrew's motion to dismiss pursuant to Rule 12(b)(6) or, in the alternative, for a more definite statement pursuant to Rule 12(e), and (2) Prince Andrew's request for judicial notice.

## I.       PRELIMINARY STATEMENT

Defendant's burden on a motion to dismiss is to demonstrate that, as a matter of law, taking all of the allegations in Plaintiff's Complaint as true, and giving Plaintiff every reasonable inference, Plaintiff has not asserted a claim upon which relief may be granted.  Defendant's motion is part jury argument, and part press release.  It is not a serious motion to dismiss.

Defendant argues that New York's Child Victims Act ("CVA") revival statute violates the New York State Constitution—an argument rejected by each of the several New York State and federal courts to consider the issue.

Defendant also argues that Ms. Giuffre's complaint is somehow not sufficiently clear about the sexual abuse she suffered—an argument at odds with both the actual allegations of the Complaint and the applicable pleading standards.  All that is required under Rule 8(a)(2) (a rule Defendant studiously avoids discussing or citing in his papers) is a "short and plain statement of the claim."  "Specific facts are not necessary" and the Complaint "need only give the defendant fair notice of what the . . . claim is and the grounds on which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)).  Defendant cites no case requiring a tort victim to allege the details he says are missing.  The law is to the contrary.  *See, e.g.*, *Doe v. Indyke*, 465 F. Supp. 3d 452, 465 (S.D.N.Y. 2020); *Doe v. NYS Off. of Child. & Fam. Servs.*, No. 1:20-cv-01195 (BKS/CFH), 2021 WL 2826457, at *10 (N.D.N.Y. July 7, 2021).

Plaintiff is confident that Defendant's attempted reliance on a release to which he is not a party, which was executed in a case to which he was not a party, which by its terms excludes him,

upon which he never relied (and indeed of which he was never aware until this year), and which the actual parties to the release have made clear did not release Defendant, will be rejected at trial and/or summary judgment.  For present purposes, however, all that is necessary to note is that the release is an affirmative defense outside the Complaint, for which Defendant bears the burden, and whose validity and applicability to Defendant is disputed.

The remainder of Defendant's motion is an attack on Plaintiff's credibility, character, and motives that lacks foundation in fact and continues Defendant's efforts to avoid confronting his own misconduct by attempting to blame and shame his victim.  Defendant's motion was intended to be, and was extensively used as, a press release to attack Ms. Giuffre in the media.  Defendant dared to make his baseless, defamatory attacks on Ms. Giuffre in his motion only because doing so in a court filing insulated him from the libel lawsuit that would otherwise result.  What remedy exists for Defendant's abuse of the legal system can be left for another day.  For the present, it is sufficient to again note that, to the extent Defendant's allegations are relevant at all, they will be decided by a jury or at summary judgment, not on a motion to dismiss.

## II.     STATEMENT OF FACTS

Beginning when she was a minor, Plaintiff Virginia Giuffre was the victim of sex trafficking and abuse by Jeffrey Epstein. Complaint, ECF No. 1 ("Compl.") ¶¶ 2, 24.  In addition to abusing Ms. Giuffre himself, Epstein also lent her out to other rich and powerful men for sex. *Id.* ¶¶ 25–27.  One such man was the Defendant, Prince Andrew, the Duke of York.  *Id.* ¶ 27.

### A.     Plaintiff's Allegations in the Complaint Concerning Prince Andrew

Prince Andrew sexually abused Ms. Giuffre on a number of occasions when she was under the age of 18 (*id.* ¶¶ 37, 39, 40) including at Epstein's New York mansion, where Prince Andrew touched Ms. Giuffre while Ghislaine Maxwell forced Ms. Giuffre and another victim to sit on his lap, and then forced Ms. Giuffre to engage in sex acts with him.  *Id.* ¶ 39.  During each incident,

Ms. Giuffre did not consent to engaging in any sexual activity with Prince Andrew (*id.* ¶ 44), but she feared she would be harmed, and even killed, if she disobeyed Epstein, Maxwell, and Prince Andrew.  *Id.* ¶ 41.  During each incident, Prince Andrew knew that Plaintiff was a victim of sex trafficking, and intended to compel her into submission to gratify his own sexual desires.  *Id.* ¶¶ 42, 45–46, 71.

Prince Andrew had been friends with Epstein and Maxwell since at least 1999, when Prince Andrew flew with Epstein and Maxwell on Epstein's private plane, also widely known as the "Lolita Express."  *Id.* ¶ 31.  Epstein, Maxwell, and Prince Andrew were so close that Epstein and Maxwell attended Prince Andrew's 40th birthday party and Prince Andrew threw Maxwell a birthday party that Epstein also attended.  *Id.* ¶ 32.  Epstein kept at least 12 contact numbers for Prince Andrew in his "Black Book"—his rolodex of rich and powerful friends.  *Id.* ¶ 23.

In 2006, only one month after Epstein was charged with procuring a minor for prostitution in Florida, Prince Andrew invited Epstein to his daughter's 18th birthday party, unconcerned by the public revelation of Epstein's sex trafficking and abuse of underage girls.  *Id.* ¶ 33.  Prince Andrew also continued to visit and stay with Epstein at his New York mansion as late as 2010.  *Id.* ¶ 50.

Ms. Giuffre, formerly known as Virginia Roberts, publicly revealed that Prince Andrew had abused her in a motion to join Florida litigation pursuant to the Crime Victims' Rights Act in late December 2014.  ECF No. 35-9 at 5, 10.  A few days later, Prince Andrew sent Maxwell an email.  Compl. ¶ 53.  Prince Andrew did not express surprise, and he did not ask Maxwell who the woman accusing him of sexual abuse was.  Rather, Prince Andrew said to Maxwell: "Let me know when we can talk.  Got some specific questions to ask you about Virginia Roberts."  *Id.*

In November 2019, after Epstein's second arrest and death in federal custody, Prince Andrew voluntarily sat for an interview with the BBC. *Id.* ¶ 59.  During that interview, Prince Andrew said that he could not recall ever meeting Ms. Giuffre (*id.*), a denial so at odds with photographs and other evidence that it is itself indicative of guilt.  Similarly, Prince Andrew later pledged that he was "willing to help any appropriate law enforcement agency with their investigations, if required" (*id.* ¶ 60), but then stonewalled the U.S. authorities investigating Epstein and his co-conspirators.  *Id.* ¶ 61.  Prince Andrew and his counsel have also refused to cooperate with counsel for the victims of Epstein's sex trafficking. Counsel for these victims, including Plaintiff's counsel, repeatedly asked for a meeting or call with Prince Andrew and/or his representatives to enable Prince Andrew to provide whatever facts, context, or explanation he might have, and to explore alternative dispute resolution approaches. Prince Andrew and his representatives rejected all such requests, and responded by escalating their vile and baseless attacks on Plaintiff and others.  *Id.* ¶ 62.

  B. <u>Prince Andrew's Attacks on Ms. Giuffre's Character and Credibility</u>

As part of his attacks on Plaintiff's credibility, Prince Andrew requests that the Court take judicial notice of a series of news articles and a draft manuscript, although even he recognizes they cannot be considered for the truth of the matters asserted therein.  ECF No. 35 at 5–7.  In support of his request, Prince Andrew cites securities fraud cases where the issue of notice was critical, making the fact of publication relevant.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  Prince Andrew fails to explain how the mere fact that the articles he asks this Court to recognize were published has any relevance to his motion to dismiss Plaintiff's claims.  *See Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 278 (S.D.N.Y. 2013) (declining to take judicial notice of news article that was not "relevant apart from its truth").

Indeed, Prince Andrew does not cite to any of these articles in his legal argument, and cites them only in his eleven-page introductory attempt to smear Plaintiff's credibility and motives.

If hearsay materials concerning disputed facts were somehow relevant to a motion to dismiss, there would be much available to disprove Prince Andrew's current narrative.[1]   However, the point, as Defendant's counsel well knows, is that none of this is relevant to a motion to dismiss.

C.      Plaintiff's 2009 and 2020 Settlements with Epstein

Although Prince Andrew's allegations about a 2009 "release" are irrelevant at this stage of the proceedings, we note briefly the kind of context and facts Prince Andrew has omitted.[2]   In 2009, Ms. Giuffre filed a lawsuit in the Southern District of Florida against Epstein under the Child Abuse Victims' Rights Act, the federal statute allowing minor victims to bring civil claims for predicate federal, sex-trafficking crimes.   *See* ECF No. 35-2 (the "Florida Complaint").   In that case, Ms. Giuffre alleged Epstein and his co-conspirators committed nine predicate federal offenses while engaged in operating a sex-trafficking enterprise out of his Palm Beach estate.   *Id.* ¶¶ 33–69.   That same year, Epstein and Ms. Giuffre settled the claims in the Florida Complaint. The settlement agreement ████████████████████████████████████████████████

---

[1] *See, e.g.*, *Prince Andrew's links to Jeffrey Epstein*, BBC News (Nov. 16, 2019), *available at* https://www.bbc.com/news/uk-49411215; ECF No. 35-9; *Prince Andrew & the Epstein Scandal: The Newsnight Interview*, BBC News (Nov. 17, 2019), *available at* https://www.youtube.com/watch?v=QtBS8COhhhM; Wendy Leigh, *Prince Andrew's friend, Ghislaine Maxwell, some underage girls and a very disturbing story*, Daily Mail (Sept. 23, 2007), *available at* https://www.dailymail.co.uk/femail/article-483401/Prince-Andrews-friend-Ghislaine-Maxwell-underage-girls-disturbing-story.html; Yaron Steinbuch, *Prince Andrew didn't 'act royally,' says 'sex slave' ex*, Page Six (Jan. 6, 2015), *available at* https://pagesix.com/2015/01/06/prince-andrew-didnt-act-royally-says-sex-slave-ex/;      Mark Landler, *After Disastrous Epstein Interview, Prince Andrew Steps Down From Public Duties*, N.Y. Times (Nov. 20, 2019), *available at* https://www.nytimes.com/2019/11/20/world/europe/prince-andrew-quits-epstein.html.

[2] We do so not because the actual facts about the release are relevant to Defendant's motion, but to illustrate the reason why the law precludes a defendant's reliance on a release, particularly one whose validity and applicability is disputed, at this stage in the proceedings.

[REDACTED]

[REDACTED] Settlement Agreement & General Release, ECF No. 32-1 (the "2009 Release") ¶ 2.  Prince Andrew's name does not appear in the Florida Complaint [REDACTED] there is no allegation that he committed the predicate federal crimes, and the Florida Complaint made claims against those who trafficked, not those to whom girls were trafficked. [REDACTED] [REDACTED] because he was not subject to personal jurisdiction in Florida.

In addition to not being a party [REDACTED] to the Florida action, Prince Andrew was not a party to the 2009 Release—and the actual parties to that Release made clear at the time and thereafter that he was not intended to be included in that Release.  In fact, in 2020 Ms. Giuffre, despite the 2009 Release, made claims against Epstein and his Estate for Epstein's sex trafficking of her.  Epstein's Estate, recognizing the questionable validity of the 2009 Release even as to Epstein, entered into a further settlement with a modified release (the "2020 Release," attached hereto as Exhibit A) with Plaintiff.  That Release, approved by Epstein's Estate, made clear that Prince Andrew was not a released party.  Ex. A at 4, 8.

### III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1954 (2009).  "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Freedman v. Weatherford Int'l Ltd.*, No. 12 CIV. 2121 LAK, 2013 WL 5299137, at *4 (S.D.N.Y. Sept. 20, 2013) (Kaplan, J.) (quoting *Iqbal*, 556 U.S. at 678).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Amusement Indus., Inc. v. Stern*, 693 F. Supp.

2d 301, 305 (S.D.N.Y. 2010) (Kaplan, J.) (quoting *Iqbal*, 556 U.S. at 678).   This "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007), and a complaint "does not need detailed factual allegations" to survive a motion to dismiss.   *Twombly*, 550 U.S. at 555.   Further, in deciding a motion to dismiss, the Court must make its decision "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor."   *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 58 (2d Cir. 2019).

## IV.    ARGUMENT

A.    <u>The 2009 Release Does Not Warrant Dismissal.</u>

The 2009 Release between Plaintiff and Epstein does not bar Plaintiff's claims against Prince Andrew for several, independent reasons.

> 1.    *Even if the Court Could Take Notice of the 2009 Release, the Court Could Not Take Judicial Notice of Its Validity and Applicability Where, as Here, They Are Disputed.*

"Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."   *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998); *see also Oneida Indian Nation of New York v. New York*, 691 F.2d 1070, 1086 (2d Cir. 1982) ("Judicial notice of a disputed fact should not ordinarily be taken as the basis for dismissal of a complaint on its face."). Settlement agreements may not be noticed when the parties dispute the effect of their provisions and they are being introduced for the truth of those provisions.   *See Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 499 (S.D.N.Y. 2003) (denying request to take judicial notice of release where it was submitted for its asserted truth—that the plaintiff released claims against a third-party defendant); *see also Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 42–43 (S.D.N.Y.

2018), *aff'd*, 959 F.3d 72 (2d Cir. 2020) (judicial notice of a settlement agreement was improper when the parties "vehemently disagree as to which facts the Court should glean from the Settlement Agreement").

Here, Prince Andrew asks the Court to take judicial notice of much more than the mere existence of the 2009 Release—he also asks the Court to take judicial notice of what he claims to be the truth of the 2009 Release's contents.[3]

> 2.    *The Court Cannot Take Judicial Notice of the 2009 Release Because It Was Not Publicly Filed.*

In analyzing requests to take judicial notice of settlement agreements, courts distinguish between agreements that are filed on a public docket and those that are not.  *Compare Traore v. Police Off. Andrew Ali Shield*, No. 14 CIV. 8463 (ER), 2016 WL 316856, at *4 (S.D.N.Y. Jan. 26, 2016) (declining to take judicial notice of release where it "was not filed on the public electronic docket" in prior action), *with Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (court may take judicial notice of public documents filed in other courts), *and Deylii v. Novartis Pharms. Corp.*, No. 13-CV-06669 NSR, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (court could take judicial notice of settlement agreement filed on public docket).  Because the 2009 Release was not filed on a public docket, the Court may not take judicial notice of it.

In contending that the 2009 Release is the appropriate subject of judicial notice, Prince Andrew points only to the fact that the 2009 Release was filed a decade later in a separate case, *Giuffre v. Dershowitz*.  ECF No. 35 at 3.  Even if that later filing were potentially relevant, the

---

[3] If the Court were to consider the 2009 Release (or any matters outside the pleadings), it would have to "treat the motion as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), giving "the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56."  *Chambers v. Time Warner, Inc*., 282 F.3d 147, 154 (2d Cir. 2002).

Release was filed *under seal* pursuant to a confidentiality agreement, as explained in Prince Andrew's motion to file the 2009 Release under seal.[4]  ECF No. 28.  Because the 2009 Release has been maintained under seal and has never been filed publicly, it is not a "matter of public record" of which the Court can take judicial notice.  *See, e.g.*, *Day v. Ryan*, No. CV-19-01091-PHX-JAT (JFM), 2020 WL 3414699, at *5 (D. Ariz. June 19, 2020) (settlement agreement filed under seal "is neither a Court filing nor a matter of public record of which the Court may take judicial notice"); *MLR Inv. Group, LLC v. Pate Ins. Agency, Inc.*, 2012 U.S. Dist. LEXIS 179035, at *4–5 (M.D. Ga. Dec. 19, 2012) (attached hereto as Exhibit B) (declining to take judicial notice because "agreement is not a matter of public record, as is reflected by the fact Defendant moved to file it under seal").

3.    *Even if the Court Could Consider the 2009 Release, Prince Andrew Is Not a Released Party Under the Terms of the Release.*

"Unless a contract is entered into for the direct and substantial benefit of a third party, it binds and benefits only the parties themselves."  *City of Tampa v. Thornton-Tomasetti, P.C.*, 646 So. 2d 279, 282 (Fla. Dist. Ct. App. 1994).[5]  "A non-party is the specifically intended beneficiary only if the contract clearly express[es] an intent to primarily and directly benefit the third party or a class of persons to which that party belongs."  *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. Dist. Ct. App. 2004).  "To find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third

---

[4] Prince Andrew misrepresents that a "redacted" version of the 2009 Release was filed in *Dershowitz*.  ECF No. 35 at 3 (citing Letter from Howard M. Cooper to the Honorable Loretta A. Preska (Sept. 8, 2021), Ex. A, *Giuffre v. Dershowitz*, No. 19-cv-03377-LAP (ECF No. 335-1)). The docket entry he cites is not a "redacted" version of the 2009 Release—it is a "filed under seal" slip sheet.

[5] ███████████████████████████████████████████████████████.  2009 Release ¶ 7.

9

party." *Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. Dist. Ct. App. 2005). The terms of the 2009 Release and the Florida Complaint demonstrate that the parties did not intend for the release to benefit Prince Andrew, and, in any event, any dispute as to the parties' intent cannot be resolved on a motion to dismiss.

        a.      **Prince Andrew Could Not Be a Released Party Because He Was Not Subject to Jurisdiction in Florida.**

The 2009 Release, by its terms, encompassed only claims against Epstein ███████

████████████████████████████████████████████████████████████████

███████████  *See* 2009 Release ¶ 2. ████████████████████████████████████

███████████████, the Florida court would have needed personal jurisdiction over him under both the Florida long-arm statute and the minimum contacts requirement of the Due Process Clause. *See, e.g.*, *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (applying Florida long-arm statute and minimum contacts test); *Love v. West*, No. 19 CIV. 10799 (ER), 2021 WL 431210, at *3 (S.D.N.Y. Feb. 8, 2021) (applying law of forum state and minimum contacts test to assess jurisdiction over claims arising under the same statute as the Florida Complaint).

Under the operative Florida long-arm statute in 2009, a court had personal jurisdiction over a nonresident defendant only if the defendant "engaged in substantial and not isolated activity within this state," Fla. Stat. Ann. § 48.193(2) (2007), or if the cause of action against the defendant arose from "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" or "[c]ommitting a tortious act within this state." *Id.* § 48.193(1)(a)-(b). These provisions would have been "strictly construed." *Sculptchair, Inc.*, 94 F.3d at 627. The due process constraints are at least as strict. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924–25, 131 S. Ct. 2846, 2853 (2011) ("[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile.");

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220–22 (11th Cir. 2009) (identifying constitutional minimum contacts analysis for specific jurisdiction); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (same).

None of the facts in the Florida Complaint, the Complaint here, or the exhibits attached to Prince Andrew's Request for Judicial Notice show that he was engaged in such substantial activity in Florida to establish general jurisdiction under § 48.193(2), and it was certainly not his domicile. Moreover, Plaintiff's claims against Prince Andrew do not arise from conduct that would have conferred specific jurisdiction under § 48.193(1). And because Plaintiff's claims against Prince Andrew do not arise out of or relate to his contacts with Florida, Ms. Giuffre would have been unable to show that exercising jurisdiction over Prince Andrew in Florida comported with due process. Unlike New York or the U.S. Virgin Islands, there is no claim that Prince Andrew abused Ms. Giuffre in Florida.

███████████████████████████████████████████

████████ he cannot be an intended third-party beneficiary under the terms of the 2009 Release.

        b.    Prince Andrew Could Not Be a Released Party Because He Could Not Have Been Included in the Florida Complaint's Claims.

The federal claims that the 2009 Release resolved are markedly different from Plaintiff's New York tort claims against Prince Andrew. Again, ████████████████████

███████████████████████████████████████████

██████████████████ *See* 2009 Release ¶ 2.

In the Florida Complaint, Ms. Giuffre brought claims against Epstein pursuant to the federal Child Abuse Victims' Rights Act based on violations of predicate federal crimes. ECF No. 35-2 ¶¶ 33–69. Although the Florida Complaint referenced non-party co-conspirators alleged to have participated in Epstein's federal crimes, there is no allegation that Prince Andrew was a

co-conspirator in those crimes.  *See id.* ¶ 16.[6]

Prince Andrew attempts to rely on one sentence in the 24-page Florida Complaint that alleges Epstein and his co-conspirators required their victims to sexually service "adult male peers, including royalty, politicians, academicians, businessmen, and/or other professional and personal acquaintances."  Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 31 ("Mem.") at 13. But there is, and could be, no allegation that each of these "male peers" themselves violated the federal criminal statutes at issue; indeed, the "male peers" are persons to whom the girls were trafficked, not the traffickers against whom claims were made.

None of the cases Prince Andrew cites supports his argument that a general release bars subsequent claims against a third party that are not directly related to the released claims.  In each of those cases, the claims against the third-party beneficiaries were directly tied to the subject matter of the agreement and were clearly contemplated by the release terms.  *See Olsen v. O'Connell*, 466 So. 2d 352, 355 (Fla. Dist. Ct. App. 1985) (purchasers of real property were third-party beneficiaries to release where their attorneys negotiated with the parties' attorneys prior to execution of contract, and testimony established intent to benefit them); *Hester v. Gatlin*, 332 So. 2d 660, 662–63 (Fla. Dist. Ct. App. 1976) (owner of car ahead of plaintiff driver in car accident was third-party beneficiary to settlement agreement where agreement released those who may be liable for injuries or damages as a result of "the subject accident"); *Dean v. Bennett M. Lifter, Inc.*, 336 So. 2d 393, 394–95 (Fla. Dist. Ct. App. 1976) (employer of driver who caused fatal car

---

[6] ███████████████████████████████████████████████████████████
              which specifically identifies "potential conspirators" to the sex-trafficking
operation.  2009 Release ¶ 2 ███
███████████████████████████████████████████████████████████
                              rince Andrew is not named as one of them.

accident was third-party beneficiary to settlement agreement where release covered others responsible for accident caused on a specific day at a specific location).

           c.       Neither Party Intended to Release Prince Andrew.

Ms. Giuffre never intended to release Prince Andrew in the 2009 Release.  Other than his rank speculation as to Epstein's mindset when he signed the agreement, Prince Andrew offers no evidence whatsoever to suggest that Mr. Epstein did either.

If Epstein had intended, as Price Andrew speculates, for the 2009 Release to broadly cover "any potential claims Giuffre may have had involving [Epstein's] sex trafficking enterprise" (Mem. at 18), the parties could have said so (as the parties in cases cited by Prince Andrew did in fact do).  But they did not.  Moreover, just last year, Epstein's Estate again settled Ms. Giuffre's claims against Epstein for sexual abuse and agreed that her claims against Prince Andrew were specifically preserved, demonstrating that Prince Andrew is simply wrong in his speculation.[7]  Ex. A at 4, 8.  At the very least, the 2020 Release raises a factual issue as to the parties' intent that cannot be resolved on the present record.

But even if (contrary to fact) Prince Andrew's interpretation of the 2009 Release were plausible, Prince Andrew's argument at most raises factual questions about the parties' intent that cannot be resolved at the motion-to-dismiss stage.  Indeed, *none* of the cases Prince Andrew cites dismissed claims against a third-party beneficiary to a release at the motion to dismiss stage.  This is because the Court cannot resolve any factual disputes as to the parties' intent on a motion to dismiss.  *See, e.g.*, *In re Corp. Res. Servs., Inc.*, 849 F. App'x 320, 321 (2d Cir. 2021) ("Whether the signatories to a contract intended the scope of a release of liability to extend to other parties or

---

[7] We note there is, and could be, no claim that Prince Andrew relied on his interpretation of the Release such that he would be prejudiced by the revelation of a contrary interpretation; he did not even know about it.

claims is a question of fact."). Nor can the Court resolve any ambiguity in the terms of an agreement against the non-moving party at the motion to dismiss stage. *See Desner v. Educators Mut. Life Ins. Co.*, No. CV 13-6154, 2014 WL 4907603, at *3 (E.D.N.Y. Sept. 29, 2014) ("Where the language of a contract is ambiguous, . . . its construction presents a question of fact, which of course precludes summary dismissal." (internal quotation marks omitted)); *Neumann v. Brigman*, 475 So. 2d 1247, 1249 (Fla. Dist. Ct. App. 1985) ("where provisions of a contract are ambiguous, the ambiguity must be resolved by the trier of fact").

Further, because the invocation of the 2009 Release is an affirmative defense (Fed. R. Civ. P. 12(c)(1)), the Court may only grant a motion to dismiss based thereon if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *United States v. Space Hunters, Inc.,* 429 F.3d 416, 426 (2d Cir. 2005) (internal quotation marks omitted).

Here, without citing *any evidence*, Prince Andrew spends nearly a page speculating about what Epstein was thinking when entering into the 2009 Release, and what incentivized him to include ██████████████████ in its terms. Mem. at 18. But Prince Andrew's speculation about the 2009 Release is both irrelevant and misleading. Epstein's intent is plainly a factual issue that the Court cannot resolve based on Prince Andrew's ideations.

The cases Prince Andrew cites illustrate why this Court cannot resolve a dispute over the parties' intent here. Prince Andrew's primary Florida authority, a contract dispute between a power agency and an electric utility, was decided at summary judgment, and in that case the parties did not dispute that the intended third-party beneficiary fell within the definition of a "neighboring entity," the class of persons the settlement agreement benefited. *Fla. Mun. Power Agency v. Fla. Power & Light Co.*, 81 F. Supp. 2d 1313, 1325 (M.D. Fla. 1999). In fact, in the majority of Prince

14

Andrew's cited cases, the lower courts examined evidence of the original parties' intent outside the four corners of the agreement.  *See Olsen*, 466 So. 2d at 355 (considering "ample evidence through testimony, letters and memoranda" where plaintiff invoked release); *Dean*, 336 So. 2d at 394–95 (discussing affidavits submitted by both parties); *see also Quarterman v. City of Jacksonville*, 347 So. 2d 1036, 1039 (Fla. Dist. Ct. App. 1977) ("parol evidence should be permitted to enable a plaintiff to demonstrate that a stranger to the release, expressed in general terms, was not intended by the parties to the release to be affected thereby").  And the remainder of Prince Andrew's Florida authorities were cases in which a *plaintiff* sought to bring a breach of contract claim based on a contract to which it was an intended third-party beneficiary.  *M-I LLC v. Util. Directional Drilling, Inc.*, 872 So. 2d 403, 404–05 (Fla. Dist. Ct. App. 2004); *Technicable Video Sys., Inc. v. Americable of Greater Mia., Ltd.*, 479 So. 2d 810, 811 (Fla. Dist. Ct. App. 1985).[8]  Accordingly, those cases are inapposite in determining whether Prince Andrew is entitled to enforce the terms of the 2009 Release to dismiss Plaintiff's claims at this stage of the litigation. The parties have not yet developed the factual record here, and a finding that the parties intended for the 2009 Release to cover Plaintiff's claims against Prince Andrew would be premature and, as discovery will show, incorrect.

        d.      The 2020 Settlement Constitutes Modification and/or Abandonment of the 2009 Release.

Even if the 2009 Release might otherwise have released claims against Prince Andrew and

---

[8] Prince Andrew's New York authorities are irrelevant because ███████████ ███████████ Mem. at 16–17.  But those cases are also inapposite because they too (1) were decided at the summary judgment stage or a motion to dismiss based upon documentary evidence pursuant to N.Y. C.P.L.R. 3211(a)(1); and (2) involved a plaintiff attempting to enforce an agreement to which it was not a party, not a defendant contending that a plaintiff's claims should be dismissed based on a settlement agreement to which the defendant was not a party.  *Encore Lake Grove Homeowners Ass'n v. Cashin Assocs.*, 111 A.D.3d 881, 882 (N.Y. App. Div. 2013); *Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.*, 94 A.D.3d 1466, 1468 (N.Y. App. Div. 2012); *Van Vleet v. Rhulen Agency Inc.*, 180 A.D.2d 846, 848–49 (N.Y. App. Div. 1992).

given him standing to enforce its terms, Ms. Giuffre's 2020 settlement with Epstein's Estate establishes that the parties acknowledged the invalidity of the 2009 Release and/or intended to modify or abandon its terms.  The "parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement" or through "subsequent conduct." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381–82 (Fla. 2004).  Abandonment of a contract "may be proved by showing that the acts of one party are inconsistent with the existence of the contract and that the other party acquiesced in those acts."  *Painter v. Painter*, 823 So. 2d 268, 270 (Fla. Dist. Ct. App. 2002).  Whether a contract has been modified or abandoned are questions of fact.  *St. Joe Corp.*, 875 So. 2d at 382 (modification); *Wales v. Wales*, 422 So. 2d 1066, 1067 (Fla. Dist. Ct. App. 1982) (abandonment).

Despite Plaintiff's 2009 settlement with Epstein, in 2020 Epstein's Estate again settled Plaintiff's claims against Epstein, incorporated by reference her 2009 payment, and approved a new release expressly preserving her claims against Prince Andrew.  Although the relevance and legal import of the 2020 Release are not issues to be resolved on this motion to dismiss, this subsequent Release underscores that factual issues remain to be litigated and the Court cannot dismiss Plaintiff's claims based on the 2009 Release at this juncture.

Finally, as to the filings in the *Dershowitz* matter of which Prince Andrew asks the Court to take judicial notice, Plaintiff does not object to the Court taking judicial notice of the existence of those filings.  ECF No. 35 at 4–5.  But, again, Prince Andrew asks the Court to go several steps further and somehow infer that Plaintiff stipulated to dismissal of one of her claims because she was unable "to avoid the legal effect of" the 2009 Release, and "conced[ed]" that the 2009 Release barred that claim.  Mem. at 4, 10.  Prince Andrew's contention is contrary to law.  *See Calcutti*, 273 F. Supp. 2d at 499 (courts cannot take judicial notice of documents for the truth of the contents

therein).  It also is contrary to the express language of the parties' dismissal.[9]

> B.  Plaintiff Has Sufficiently Alleged Battery and Intentional Infliction of Emotional Distress Claims Against Prince Andrew.

Prince Andrew's motion to dismiss based on failure to state a claim is meritless.  Plaintiff's factual allegations that Prince Andrew touched her and engaged in sex acts with her without her consent easily satisfy Rule 8 as to her claims for battery and intentional infliction of emotional distress ("IIED").  Further, although it is Prince Andrew's burden to establish that Plaintiff's claims are untimely because they do not fall within the CVA, his actions as alleged in the Complaint constitute one or more sex offense under the New York Penal Law, meaning that the CVA has revived Plaintiff's claims against him.

> 1.  *Prince Andrew Misstates the Applicable Pleading Standard and Ignores the Allegations of the Complaint.*

Prince Andrew erroneously contends that, in order to benefit from the CVA's revival window, Plaintiff must plead with specificity which provision of Article 130 of the New York Penal Code Prince Andrew violated and how she intends to prove each element of the code's sex offenses, including with details such as which parts of Plaintiff's body Prince Andrew touched, which of his body parts he used to do so, in which room of Epstein's mansion the sex acts occurred, and whether there were any witnesses.  Mem. at 22.  Prince Andrew does not cite a single authority for this made-up pleading standard, and the Court should reject this assertion for two reasons.

*First*, Prince Andrew's pleading demands are wholly inconsistent with Rule 8, a Rule he fails to cite.  Prince Andrew essentially asks this court to adopt a heightened pleading standard whereby sexual battery claims must be dismissed unless the plaintiff recounts every detail

---

[9] The text of the stipulated voluntary dismissal itself provided: "This stipulation is the result of a compromise and shall not at any time, or for any purpose, be construed as an admission by either party of the validity or invalidity of Plaintiff's battery claim or Defendant's release defense, or the truth or falsity of the factual predicates thereto."  ECF No. 35-8 ¶ 4.

surrounding the abuse—in this case, which of her body parts he touched, which of his body parts he used to touch her, who watched him do it, and in what rooms of Epstein's mansion he perpetrated this abuse. *See id.* Prince Andrew does not cite a single case requiring such specificity in pleading tort claims.

Nor does the law support his position. Under Rule 8(a)(2), all that is required at the pleading stage is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary" and the complainant "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). For this reason, courts have denied motions to dismiss that demand a detailed account of the sexual abuse alleged. *See, e.g.*, *NYS Off. of Child. & Fam. Servs.*, 2021 WL 2826457, at *10; *Indyke*, 465 F. Supp. 3d at 465.

The pleading standard for which Prince Andrew advocates is more akin to the heightened pleading standard of Rule 9(b), which requires a plaintiff to allege "the who, what, where, when and why" of the claim. *Jovel v. i-Health, Inc.*, No. 12-CV-5614, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013). But Rule 9(b) does not apply, and Rule 8(a) "does not require 'detailed factual allegations' or 'heightened fact pleading of specifics.'" *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 JG JMA, 2011 WL 5238658, at *6 (E.D.N.Y. Nov. 1, 2011) (quoting *Twombly*, 550 U.S. at 555, 570). Prince Andrew also demands specific allegations about Plaintiff's mental state, calling her allegations that she did not consent to forced sex acts with a 40-year old prince when she was a 17-year-old victim of a sex-trafficking operation "conclusory." Mem. at 21–23. But even Rule 9(b) permits "[m]alice, intent, knowledge, and other conditions of a person's mind" to be "alleged generally." Fed. R. Civ. P. 9(b). And again, Prince Andrew does not cite a

single authority for his argument that Plaintiff's allegation that she "did not consent to engaging in sexual acts with Prince Andrew" is "conclusory" and insufficient under Rule 8. Compl. ¶ 44.

*Second*, Prince Andrew's argument is based on a mischaracterization of what Plaintiff's claims are and what she accordingly must allege to meet the pleading standard. Plaintiff's claims are for battery and IIED. Contrary to Prince Andrew's argument that Plaintiff "fails to state a claim" because "she has not adequately alleged a violation of the New York Penal Code," whether Prince Andrew's conduct violated the Penal Code is not an element of either of Plaintiff's claims. Mem. at 19. Rather, whether Prince Andrew's conduct violated Article 130 pertains to whether the CVA—a claims revival statute that creates no independent cause of action—revives her claims, and thus whether they are *timely*. *See Giuffre v. Dershowitz*, No. 19 CIV. 3377 (LAP), 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020) (the CVA "creates no cause of action, and the CVA itself does not provide for 'proof' of anything because it in no way regulates conduct. . . . Instead, the CVA's incorporation of the language from the Penal Code is merely a guidepost for determining which claims may be revived"). Accordingly, Plaintiff need not "plead and prove" any violation of Article 130 to survive a motion to dismiss. Mem. at 22.

Statute of limitations defenses are affirmative defenses, and Prince Andrew thus bears the burden of proving that Plaintiff's claims are untimely. *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 301 (S.D.N.Y. 2014). "[A] complaint does not need to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Id.* at 315 (internal quotation marks omitted). Accordingly, a motion to dismiss based on timeliness "should not be granted unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (internal quotation marks omitted) (emphasis in

original); *see also Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("dismissal is appropriate only if a complaint clearly shows the claim is out of time").

Thus, Plaintiff was only required to allege facts to support her claims for battery and IIED. She need not plead precisely which provision of Article 130 Prince Andrew's conduct violated and how in order to survive a motion to dismiss.  In *Doe v. Baram*, for example, the plaintiff did not cite any specific provisions of Article 130 in the complaint.  No. 20 CIV. 9522 (ER), 2021 WL 4847076, at *4 (S.D.N.Y. Oct. 15, 2021).  The court denied the defendant's motion to dismiss based on timeliness because the plaintiff "alleged conduct that, if proven, *could* constitute a sexual offense under N.Y. Penal Law § 130." *Id.* (emphasis added).[10]

### 2.   *Plaintiff Has Sufficiently Stated Claims for Battery and Intentional Infliction of Emotional Distress.*

Although Prince Andrew never directly contends that Plaintiff has failed to state claims for battery and IIED, she has clearly sufficiently done so.  To establish a battery claim, a plaintiff must demonstrate "that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent."  *Bastein v. Sotto*, 299 A.D.2d 432, 433 (N.Y. App. Div. 2002).  IIED has four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *McGrath v. Dominican Coll. of Blauvelt, New York*, 672 F. Supp. 2d 477, 492 (S.D.N.Y. 2009) (internal quotation marks omitted).

Plaintiff has stated a claim for battery.  She has alleged, among other things, that she was forced to sit on Prince Andrew's lap while he touched her and that he forced her to engage in sex

---

[10] Even if the CVA were not applicable, issues relating to equitable tolling would make a timeliness defense inappropriate for resolution at the motion to dismiss stage.

acts with him (Compl. ¶ 39), supporting at the very least a plausible inference of offensive bodily contact. *See, e.g.*, *Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016) (allegations of forcible assault, rape, and sodomy established elements of battery). Any nonconsensual, offensive bodily touching, regardless of the body part touched, amounts to battery. *See United Nat'l. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) ("the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching"). Further, Plaintiff alleged that she did not consent to any bodily contact, which is sufficient to state a claim for battery. *See* Compl. ¶ 44; *Wait v. Beck's N. Am., Inc.*, 241 F. Supp. 2d 172, 186 (N.D.N.Y. 2003) (battery claim stated where complaint alleged "that plaintiff did not consent to this contact").

Plaintiff has also stated a claim of IIED. She alleges that Prince Andrew forced her to engage in sex acts without her consent and abused another victim in front of her, all while knowing she was underage and that she was a sex-trafficking victim. Compl. ¶¶ 39, 42–46, 71. Especially considering the power and influence that Prince Andrew holds, he cannot contend that such conduct is not extreme and outrageous. *See, e.g.*, *Farrell v. United States Olympic & Paralympic Comm.*, No. 120CV1178FJSCFH, 2021 WL 4820251, at *9 (N.D.N.Y. Oct. 15, 2021) (allegations that "an internationally known and ranked speedskater and Olympian, targeted her to be a victim for his sexual depravities" and used his position of power to abuse her stated IIED claim); *Wait*, 241 F. Supp. 2d at 181 (allegations of "a continuing course of sexual harassment, unwanted touching, . . . and other conduct" stated claim for IIED). Plaintiff also alleges that Prince Andrew's conduct caused her significant emotional harm. Compl. ¶ 48. Plaintiff's allegations are thus more than sufficient to state an IIED claim. Accordingly, Plaintiff has stated claims for battery and IIED.

Prince Andrew's arguments to the contrary rely on a series of misplaced citations to *Iqbal*—the only authority Prince Andrew cites in contending that Plaintiff's allegations are not sufficiently detailed.   In *Iqbal*, the plaintiff brought a civil rights action alleging that, after September 11, 2001, the FBI "arrested and detained thousands of Arab and Muslim men" on the basis of their race, religion, or national origin, and as a result, the plaintiff was unlawfully confined and subjected to harsh treatment.   556 U.S. at 680–81.   The Court held that, for the plaintiff to prevail on his *Bivens* claim, he had to allege "sufficient factual matter to show that petitioners adopted and implemented" the policies at issue "for the purpose of discrimination" based on protected characteristics.   *Id.* at 677.   The complaint contained no factual allegations that would have "nudged [these] claims" of invidious discrimination "across the line from conceivable to plausible."   *Id.* at 680.

Ignoring the actual dictates of *Iqbal*, Prince Andrew nowhere identifies the elements of a claim of battery or IIED before contending that Plaintiff's allegations are mere "legal conclusions." Prince Andrew asserts that the Court must discount Plaintiff's allegations that Prince Andrew forced her to engage in sex acts against her will, and—with Epstein and Maxwell—caused her to fear for her safety because *Iqbal* held that the Court need not accept legal conclusions as true. Mem. at 21, 23; Compl. ¶¶ 39, 40, 41, 44.   But he does not explain how Plaintiff's allegations are legal conclusions rather than *factual* allegations, or how the Complaint is in any way comparable to the factually deficient complaint in *Iqbal*.   At this stage, Plaintiff's *factual* allegations that Prince Andrew forced her to engage in sex acts against her will support a more than plausible inference that Prince Andrew committed battery and IIED.   *See Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *2, *7–8, *27 (S.D.N.Y. Jan. 28, 2019) (denying motion to dismiss plaintiff's

claims of battery, assault, and IIED where plaintiff alleged defendant "sexually assaulted her at the Four Seasons Hotel").

       3.     *Prince Andrew's Actions Constitute One or More Sex Offenses Under the New York Penal Code.*

Although it is not Plaintiff's burden to allege facts supporting the elements of any sex offense under Article 130 of the New York Penal Law, Plaintiff has alleged facts demonstrating that Prince Andrew's conduct would constitute such sex offenses. For Plaintiff's claim to be timely under the CVA, Prince Andrew's conduct need only amount to one such sex offense. *See* N.Y. C.P.L.R. 214-g. Plaintiff has sufficiently alleged acts that would constitute, at a *minimum*, forcible touching and third degree sexual abuse. The elements of third degree sexual abuse are sexual contact without consent, where sexual contact is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party." N.Y. Penal Law §§ 130.00, 130.55. A defendant commits forcible touching when, without consent, he intentionally touches the sexual or other intimate parts of the victim for the purpose of abusing or gratifying sexual desire. *Id*. §§ 130.05, 130.52.

Here, Plaintiff alleged that Prince Andrew "sexually abused Plaintiff in Epstein's New York mansion" and that "[d]uring his visit to New York, Prince Andrew forced Plaintiff to engage in sex acts against her will." Compl. ¶ 39. She also alleged that "Maxwell forced Plaintiff, a child, and another victim to sit on Prince Andrew's lap as Prince Andrew touched her." *Id*. She stated that Prince Andrew had forced himself upon Plaintiff once before, and that he did so again after this incident (*id.* ¶¶ 36–38, 40), and "[d]uring each of the aforementioned incidents, Plaintiff did not consent to engaging in sexual acts with Prince Andrew." *Id.* ¶ 44. These allegations are plainly sufficient to raise a plausible inference that Prince Andrew engaged in acts that would constitute, at the very least, sexual abuse in the third degree and/or forcible touching.

Prince Andrew cites only one case in arguing what does and does not qualify as an offense under Article 130, but that case does not address either of these offenses. Mem. at 23 (citing *People v. Orda*, 690 N.Y.S.2d 822, 825 (N.Y. Sup. Ct. 1999)). His citations to the statute are equally unavailing. Prince Andrew argues that Plaintiff has not alleged that Prince Andrew's conduct amounted to sexual abuse or forcible touching because Plaintiff did not describe "where he allegedly touched her or how." *See* Mem. at 21 (citing N.Y. Penal Law §§ 130.52 (forcible touching); 130.55 (sexual abuse third)). But Plaintiff's allegation that Prince Andrew forced her to engage in sex acts is plainly sufficient. Compl. ¶ 30. Non-consensual touching under Article 130 is not limited to a specific body part. *See People v. Sene*, 887 N.Y.S.2d 8, 9 (N.Y. App. Div. 2009) ("since intimacy is a function of behavior and not merely anatomy, the manner and circumstances of the touching should also be considered" and finding touching of neck to be sexual contact of "intimate parts" (internal quotation marks omitted)). Nor does either provision require a particular kind of touching. *See People v. Guaman*, 8 N.E.3d 324, 328 (N.Y. 2014) ("any bodily contact involving the application of some level of pressure to the victim's sexual or intimate parts qualifies as a forcible touch"); *People v. Johnson*, 477 N.Y.S.2d 67, 68 (N.Y. App. Div. 1984) ("sexual contact does not require touching with hands").

Plaintiff has also sufficiently alleged that she did not *consent* to the acts of sexual abuse to which Prince Andrew subjected her. Lack of consent may result from (a) forcible compulsion, (b) incapacity to consent, or (c) for the offenses of sexual abuse or forcible touching, "any [other] circumstances . . . in which the victim does not expressly or impliedly acquiesce in the actor's conduct." N.Y. Penal Law § 130.05(2). Prince Andrew concedes, as he must, that forcible compulsion may be established through implied or express threats that place a person in fear of immediate death or physical injury. Mem. at 22–23 (citing N.Y. Penal Law § 130.00(8)). But he

misunderstands that Plaintiff need not "**plead and prove** forcible compulsion"—or any other circumstances vitiating consent—on a motion to dismiss. *Id.* at 22 (emphasis in original). Instead, the language he cites from *Iqbal* refers to the ultimate burden of proof when a plaintiff sues a public official for unconstitutional conduct. *See Iqbal*, 556 U.S. at 676 ("Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose.").

On this motion to dismiss, the allegations in the Complaint need only "allow the court to draw the reasonable inference that the defendant is liable," including because Plaintiff did not consent to the sex acts Prince Andrew forced upon her. *Id.* at 678 (citation omitted). Plaintiff alleged that Epstein, Maxwell, and Prince Andrew's "powerful connections, wealth, and authority" caused Plaintiff to fear "death or physical injury" for disobeying their express or implied threats. Compl. ¶ 41. Prince Andrew cites no authority holding that such allegations do not plausibly allege forcible compulsion by threats. Mem. at 23 (citing Compl. ¶ 41). Whether Plaintiff did in fact fear immediate injury is a question to be resolved by the trier of fact.

Further, as Prince Andrew again concedes, lack of consent for the crimes of sexual abuse or forcible touching may be established by "any circumstances in which the victim does not expressly or impliedly acquiesce." N.Y. Penal Law § 130.05(2)(c). In a footnote, Prince Andrew states only that Plaintiff "does not rely on" this or § 130.05(2)(d)'s "alternative methods for establishing the element of lack of consent." Mem. at 22 n.10. But the facts as pled contradict his statement. Plaintiff alleged that she was the victim of sex trafficking at the hands of Epstein and Maxwell (Compl. ¶¶ 24–29), and that Prince Andrew knew that Plaintiff "was a sex-trafficking victim being forced to engage in sexual acts with him" (*id.* ¶ 43), but nonetheless forced sex acts

upon her against her will.  *Id.* ¶¶ 44–45.  Under these circumstances, Plaintiff has pled facts demonstrating that she did not acquiesce to having sexual contact with Prince Andrew.  *See People v. D'Alessio*, 802 N.Y.S.2d 828, 829 (N.Y. App. Div. 2005) (evidence sufficient to establish lack of consent under § 130.55 when "stunned" and "frightened" victim, although making no outcry and remaining on massage table while defendant touched her, eventually moved away).[11]

Prince Andrew also argues that Plaintiff's claims fail because she did not describe how she was forced to engage in sex acts with him.  Mem. at 21.  But forcible touching and sexual abuse in the third degree do not require forcible compulsion at all.  *See* N.Y. Penal Law § 130.52 (no force element), § 130.55 (no force element); *People v. Lewis*, 156 A.D.3d 1431, 1432 (N.Y. 2017) (noting that forcible compulsion is not an element of forcible touching).

And even for those sex offenses that do require forcible compulsion, Prince Andrew's definition of forcible compulsion finds no support in the case law.  "[F]orcible compulsion is not synonymous with violence" and does not require physical injury.  *People v. Hartle*, 159 A.D.3d 1149, 1152 (N.Y. App. Div. 2018).  Instead, forcible compulsion can occur when the defendant manipulates age and power imbalances.  *See id.* (forcible compulsion element met considering "the young age of the victim, her relative size and strength compared to the adult defendant, defendant's close relationship to the victim and position of trust and authority" and "the victim's state of mind"); *see also People v. Sehn*, 295 A.D.2d 749, 751 (N.Y. App. Div. 2002) (forcible compulsion supported by defendant's "extreme advantage in maturity, size and strength, the fact that the victims were isolated—in fact, locked—in an apartment with defendant and considered

---

[11] Prince Andrew's citation to *Holloway v. Holy See*, No. 19 CIV. 2195 (NRB), 2021 WL 1791456, at *2 (S.D.N.Y. May 5, 2021) is misplaced, as the plaintiff in that case did not allege that *any* conduct occurred in New York. That is clearly not the case here, where Plaintiff has alleged that Prince Andrew abused her in New York.  Compl. ¶ 39.

him to be an authority figure whom they obeyed, trusted and viewed as an uncle"). Prince Andrew's sole New York authority recognizes this basis for finding forcible compulsion, noting that this element "'can be established by evidence that the defendant used his superior age, size and strength to prevent the victim from escaping, and to compel [the victim] to have sex[] . . . with him.'" *Orda*, 690 N.Y.S.2d at 825 (alterations in original).

In addressing the sufficiency of Plaintiff's claims, the Court need not determine whether the facts in the Complaint would satisfy the burden of proving these sex offenses at a criminal trial. It is sufficient that, in the Complaint, Plaintiff has alleged facts to support her claims of battery and IIED. Prince Andrew has failed to establish that his conduct as alleged in the Complaint cannot constitute sexual offenses under Article 130, and thus that Plaintiff's claims are not timely under the CVA.

C.    Plaintiff's Intentional Infliction of Emotional Distress Claim is Not Duplicative of Her Battery Claim.

Plaintiff's two claims are not duplicative of each other. A plaintiff "may plead claims that provide alternative bases for relief," and "a claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other." *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019); *see also* Fed. R. Civ. P. 8(d)(2). Further, where there is underlying conduct supporting an IIED claim that does not completely overlap with the conduct underlying other tort claims, the claims are not duplicative. *See Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016). In New York cases involving sexual abuse, battery claims are routinely brought alongside IIED claims.[12]

---

[12] *See, e.g.*, *Canosa*, 2019 WL 498865, at *27 (sustaining claims for battery, assault, IIED, and sexual assault on motion to dismiss); *Alsaud*, 224 F. Supp. 3d at 295 (summary judgment for plaintiff on assault, battery, and IIED claims in rape case); *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 53 (N.Y. App. Div. 1990), *aff'd*, 575 N.E.2d 393 (N.Y. 1991) (granting judgment as a

Plaintiff's claims are not duplicative because they do not entirely arise from the same facts. Plaintiff's IIED claim involves some allegations that are the same and some allegations that are different from the battery allegations.  In some cases, the emotional distress claim requires more, in some cases less, than the nonconsensual bodily contact that would amount to battery.  After her abuse, Prince Andrew was one of the many powerful connections Epstein used to intimidate Plaintiff and keep her compliant, and he then publicly undermined the years of abuse she experienced.  Compl. ¶¶ 17, 21, 41, 59, 71.  *See Roelcke v. Zip Aviation, LCC*, No. 15 CIV. 6284 (DAB), 2018 WL 1792374, at *13 (S.D.N.Y. Mar. 26, 2018) (refusing to dismiss IIED claim as duplicative of battery claim where "Plaintiff has set forward additional allegations . . . that were part of the same campaign of harassment and intimidation"); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) (IIED claims not duplicative if "substantiating conduct differs from those of other causes of action").  Further, Prince Andrew abused other victims in front of Plaintiff, such as when he touched another victim in front of her while they were both forced to sit on Prince Andrew's lap, independently causing Plaintiff distress.  Compl. ¶ 39; *see B.K. v. Kelley*, No. 15–P–892, 2016 WL 3201116, at *3 n.7 (Mass. App. Ct. 2016) (damages for battery and IIED not duplicative when, in addition to sexually abusing daughters, defendant committed distinct acts, such as exposing himself to them).

Plaintiff's claims also do not seek identical damages.  Each claim seeks damages in an amount to be determined at trial, but the damages awards for each claim will not overlap.  *See McGrath*, 672 F. Supp. 2d at 492 (declining to dismiss IIED claim as duplicative because it was

---

matter of law on battery claim and allowing IIED claim to proceed to trial in childhood sexual abuse case); *Deborah S. v. Diorio*, 583 N.Y.S.2d 872, 874 (N.Y. Civ. Ct. 1992), *aff'd as modified*, 612 N.Y.S.2d 542 (N.Y. App. Term 1994) (summary judgment for plaintiff on claims of assault, battery, and IIED in rape case).

"uncertain" whether damages for IIED would overlap with damages for other claims). Plaintiff's injuries for both claims are not identical—her injuries from battery relate to trauma caused by nonconsensual sex acts with Prince Andrew, while her injuries from IIED more broadly relate to trauma caused by Prince Andrew knowingly benefiting from the sex-trafficking scheme in which she was trapped. Thus, Plaintiff's claims are not duplicative and are distinguishable from those in the cases Prince Andrew cites, where the facts underlying both claims were identical and the plaintiff sought identical remedies. Mem. at 24.

      D.    <u>The Child Victims Act is Constitutional.</u>

Prince Andrew's challenge to the CVA's constitutionality is meritless. Prince Andrew contends that the CVA violates his due process rights under the New York Constitution because claim-revival statutes are an "exceptional remedy" valid only when a "plaintiff could not have brought an action in a timely manner." Mem. at 25. This argument relies on outdated law. In the past, "New York courts have looked upon claim-revival provisions skeptically, only upholding them in circumstances where a given plaintiff could not have brought an action in a timely manner." *Dershowitz*, 2020 WL 2123214, at *2. "Unfortunately for [Defendant], the New York Courts' historical skepticism of claim-revival provisions appears to be just that: historical." *Id.*

In response to a question certified by the Second Circuit, the New York Court of Appeals recently held that a claim-revival statute will "not run afoul of New York's due process clause if it merely 'was a reasonable measure to address an injustice.'" *Id.* (citing *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 89 N.E.3d 1227, 1243 (N.Y. 2017)); *see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 70 (2d Cir. 2017) (certifying question about standard governing "the merits of a due process challenge under the New York State Constitution to a claim-revival statute"). In doing so, the Court of Appeals explicitly rejected

the higher standard for constitutionality used by the court in a case that Prince Andrew cites as authoritative, *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466, 476 (S.D.N.Y. 2014), and instead adopted the "reasonableness" standard.  *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 89 N.E.3d at 1243.   Prince Andrew's argument that claim-revival provisions are constitutional *only* when the plaintiff could not have otherwise brought a timely claim is therefore not the law in New York.  Mem. at 25; *see also PC-41 Doe v. Poly Prep Country Day Sch.*, No. 20CV03628 (DG) (SJB), 2021 WL 4310891, at *6 (E.D.N.Y. Sept. 22, 2021) ("Defendants' urging that there be a rigid requirement of a 'total and practical inability to bring a timely claim' by plaintiffs for a claim-revival statute to pass constitutional muster is inconsistent with the approach taken by the Court of Appeals in claim-revival cases."); *Dershowitz*, 2020 WL 2123214, at *2 (rejecting argument that New York courts have only upheld claim-revival provisions where plaintiff could not have brought a timely action).

The CVA's revival window was a reasonable measure to address an ongoing injustice.  In passing the CVA, the New York Legislature highlighted that "New York is one of the worst states in the nation for survivors of child sexual abuse," and that "thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety" because of New York's "restrictive" statute of limitations.  N.Y. Comm. Rep., 2019 S.B. 2440.  Having identified the grave injustices faced by victims of child abuse, New York revived previously expired claims.  As to reasonableness, the legislature stressed that the age at which most survivors report or come to terms with their abuse "has been estimated to be as high as 52 years old on average," and that child abusers pose a "persistent threat to public safety."  *Id.*  Thus, given the time it takes child victims to come to terms with their abuse, the CVA was a reasonable measure to address an injustice and is constitutional.

Accordingly, each of the New York State and U.S. courts that have addressed the constitutionality of the CVA have held that it was a reasonable response to remedy an injustice and does not violate the Due Process provision of the New York State Constitution. *Farrell*, 2021 WL 4820251, at *8; *PC-41 Doe*, 2021 WL 4310891, at *7; *PB-36 Doe v. Niagara Falls City Sch. Dist.*, 152 N.Y.S.3d 242, 248 (N.Y. Sup. Ct. 2021); *Torrey v. Portville Cent. Sch.*, No. 88476, 2020 WL 856432, at *4 (N.Y. Sup. Ct. Feb. 21, 2020); *ARK3 Doe v. Diocese of Rockville Ctr.*, No. 900010/2019, 2020 N.Y. Misc. LEXIS 1964, at *15 (N.Y. Sup. Ct. May 11, 2020) (attached hereto as Exhibit C); *see also Dershowitz*, 2020 WL 2123214, at *2 (holding that CVA does not violate Due Process Clause of the Fifth Amendment of the United States Constitution). Prince Andrew provides no reason why this Court should not find these cases to be persuasive authority or why it should reach a different conclusion than *all* of the courts that have thus far addressed the issue.

Prince Andrew's citation to *Zumpano v. Quinn*, 849 N.E.2d 926 (N.Y. 2006), only supports the conclusion that the CVA governs here. Mem. at 26. In *Zumpano*, the plaintiffs sought to invoke the common law doctrine of equitable estoppel to revive their time-barred sexual abuse claims. *Zumpano*, 849 N.E.2d at 927. *Zumpano* thus did not address the constitutionality of any claims revival statute. *Id.* The Court of Appeals pointed to the fact that the plaintiffs were able to bring timely claims but, under New York law, equitable estoppel requires "plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Id.* at 929. As explained above, the constitutionality of a claims revival statute does *not* depend on whether the plaintiff could have brought a timely claim. Thus, "the *Zumpano* court's conclusion that sexual abuse victims could have timely brought claims does not render the CVA unconstitutional." *PC-41 Doe*, 2021 WL 4310891, at *7. And, notably, the Court of Appeals in *Zumpano* specifically stated that "[a]ny exception to be made to allow these types of claims to

proceed outside of the applicable statutes of limitations *would be for the Legislature*," citing claim-revival statutes enacted for childhood abuse actions in California and Connecticut.  *Id.* at 931–32 & n.4 (emphasis added).  The New York Legislature subsequently enacted precisely such an exception: the CVA.

Finally, Prince Andrew argues that the extension of the CVA's claim-revival window to two years in light of court closures caused by COVID-19, *see* 2020 N.Y. Sess. Laws ch. 130, § 1, is itself unconstitutional.  But Prince Andrew cites no authority for his proposition that adding one year to the window due to a pandemic was not a reasonable response to remedy an injustice, and the only court to consider this specific issue has expressly rejected Prince Andrew's argument. *PC-41 Doe*, 2021 WL 4310891, at *9 ("The additional time does not run afoul of the New York Due Process Clause.").  And his contention that courts have found only one-year revival windows constitutional is simply incorrect.  *See Sweener v. Saint-Gobain Performance Plastics Corp*., No. 17-CV-00532 (LEK/DJS), 2018 WL 748742, at *8 (N.D.N.Y. Feb. 7, 2018) (three-year revival statute reasonable under New York Constitution).[13]  Prince Andrew's constitutional challenge to the CVA's claim-revival window must fail.

E.    Prince Andrew is Not Entitled to a More Definite Statement.

Prince Andrew is not entitled to a more definite statement pursuant to Rule 12(e).  A motion pursuant to Rule 12(e) should not be granted "unless the complaint is so excessively vague and

---

[13] In a footnote, Prince Andrew contends that the extension of the CVA's revival window is "particularly problematic" in this case because Plaintiff filed her complaint five days before the expiration of the revival window, but accused Prince Andrew of sexual abuse years earlier.  Mem. at 28 n.13.  But an "'as-applied challenge' requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right."  *PB-36 Doe*, 152 N.Y.S.3d at 248 (cleaned up).  Prince Andrew does not explain how the timing of Plaintiff's claims deprived him of any protected right.  In fact, he ignores the reason that Plaintiff filed her claims when she did—her counsel reached out to Prince Andrew to resolve this dispute, but Prince Andrew ignored her, forcing her to file her claims prior to the expiration of the revival window.  Compl. ¶ 62.

ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777, 781–82 (S.D.N.Y. 2001). "Motions for a more definite statement are generally disfavored because of their dilatory effect. The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 233 F.R.D. 133, 134–35 (S.D.N.Y. 2005) (cleaned up).

Here, there is *nothing* unintelligible about the Complaint, which clearly alleges that Prince Andrew sexually abused Plaintiff on three occasions in three locations, that his abuse amounted to battery, and that he inflicted emotional distress on Plaintiff. As explained above, Prince Andrew cites not a single authority for his made-up, heightened pleading standard. The additional detail that Prince Andrew seeks will surely be the subject of discovery, and as Prince Andrew's own authority makes clear, "Rule 12(e) is designed to remedy unintelligible pleadings, not merely to correct for lack of detail." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) (citations omitted); *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.15, 93 S. Ct. 2405, 2417 (1973) (rejecting defendants' claim that they could not answer "allegations which were wholly barren of specifics" where they did not move for a more definite statement and "*certainly normal civil discovery devices were available*" to them (emphasis added)); *see also Casella v. Hugh O'Kane Elec. Co.*, No. 00 Civ. 2481 (LAK), 2000 WL 1530021, at *1 n.2 (S.D.N.Y. Oct. 17, 2000) (Kaplan, J.) (denying motion for more definite statement as to dates because "Plaintiffs can pursue the question of timing in discovery").

Contrary to Prince Andrew's suggestion, Plaintiff has identified "to which party certain conduct is attributable." Mem. at 29. She alleged that Prince Andrew sexually abused her. Compl. ¶ 43. There can be no confusion about to "which party" the conduct is attributable because Plaintiff

only named *one defendant*.  Mem. at 29.  The cases Prince Andrew cites, where a plaintiff failed to identify which claims were being brought against which of multiple defendants, are thus inapposite.  *Caraveo v. Nielsen Media Rsch., Inc.*, No. 01 Civ. 9609 (LBS), 2002 WL 530993, at *2 (S.D.N.Y. Apr. 8, 2002); *Bower v. Weisman*, 639 F. Supp. 532, 538 (S.D.N.Y. 1986).[14]

Nor does Prince Andrew explain why he needs more information than alleged to answer the Complaint.  His own words and conduct belie his argument that Plaintiff's Complaint is so vague that he cannot respond.  Prince Andrew has *already* responded to Plaintiff's allegations against him on an internationally-broadcasted television program by stating that *he has never met her*.  Compl. ¶ 59.[15]  If true, then Prince Andrew does not need a single additional fact in order to deny Plaintiff's allegations.  And he has essentially already done so, stating on the first page of his brief that "Prince Andrew never sexually abused or assaulted Giuffre. He unequivocally denies Giuffre's false allegations against him."  Mem. at 1.  Prince Andrew's request for a more definite statement is frivolous, and a clear attempt to delay trial on the merits.

## V.    CONCLUSION

For all of the foregoing reasons, the Court should deny Prince Andrew's motion to dismiss, request for judicial notice, and motion for a more definite statement.

---

[14] The other cases Prince Andrew cites are inapposite, as they are patent or copyright cases in which the plaintiffs failed to allege which products infringed their patents or to allege plaintiffs' registration or ownership of the copyrights at issue.  *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04 CIV. 3090 (RWS), 2004 WL 2346152, at *6 (S.D.N.Y. Oct. 19, 2004); *Kelly*, 145 F.R.D. at 36.
[15]    Prince Andrew also *specifically* responded to Plaintiff's allegations in a BBC interview. His feigned inability to respond to the Complaint should not be credited.  *Prince Andrew & the Epstein Scandal: The Newsnight Interview* at 20:11–20:47, 21:34–22:15, 24:49–24:56, 29:04–29:18, BBC News (Nov. 17, 2019), *available at* https://www.youtube.com/watch?v=QtBS8COhhhM.

Dated:  November 29, 2021

BOIES SCHILLER FLEXNER LLP

/s/ David Boies
David Boies
Alexander Boies
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

Sigrid McCawley (*pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com

Andrew Villacastin
Sabina Mariella
55 Hudson Yards
New York, NY 10001
(212) 446-2300
avillacastin@bsfllp.com
smariella@bsfllp.com

Erika Nyborg-Burch *(pro hac vice*
forthcoming)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(215) 873-7264
enyborg-burch@bsfllp.com

*Counsel for Plaintiff Virginia Giuffre*