# Exhibit C

 Positive

As of: November 19, 2021 4:29 PM Z

# Doe v. Diocese of Rockville Ctr.

Supreme Court of New York, Nassau County

May 11, 2020, Decided

900010/2019

**Reporter**

2020 N.Y. Misc. LEXIS 1964 *

ARK3 DOE, Plaintiff, -against- DIOCESE OF ROCKVILLE CENTRE a/k/a THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK; ST. HUGH OF LINCOLN a/k/a ST. HUGH OF LINCOLN ROMAN CATHOLIC CHURCH a/k/a ST. HUGH'S and DOES 1-5 whose identities are unknown to Plaintiff, Defendants. Index No.: 900010/2019

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS

## Core Terms

revival, DIOCESE, cause of action, sexual abuse of child, supervision, injustice, statute of limitations, claim-revival, retention, motion to dismiss, gross negligence, sexual abuse, allegations, misconduct, survivors, cases, Employees, negligent training, negligent act, time-barred, minors, respondeat superior, revival statute, child victim, civil action, omissions, offenses, tortious, abusers, sex

**Judges:** [*1] Hon. Steven M. Jaeger, A.J.S.C.

**Opinion by:** Steven M. Jaeger

## Opinion

Decision & Order

Defendant DIOCESE OF ROCKVILLE CENTRE (hereinafter the "DIOCESE") moved to dismiss 44 complaints, including the Plaintiff's complaint herein, pursuant to CPLR 3211(a)(5) and (a)(7) in the actions identified in Exhibit A to the Affirmation of Todd R. Geremia filed in support of the motion.

The Court approved and authorized the form in which the DIOCESE filed these 44 motions and authorized ST. HUGH to join in the requested relief by affirmation of counsel only, although other certain co-Defendants did cross-move to dismiss in other related actions.

Co-defendant ST. HUGH OF LINCOLN a/k/a ST. HUGH OF LINCOLN ROMAN CATHOLIC CHURCH a/k/a ST. HUGH'S (hereinafter "ST. HUGH") joined in the application.

Plaintiff opposed the motion.

Plaintiff's compliant contains the following causes of action stemming from allegations that Plaintiff was sexually assaulted by a Father Alfred Soave ("Fr. Soave") from 1979 through 1983:

    1. Negligence (as and against all defendants)

    2. Negligent Training and Supervision of Employees (as and against all defendants)

    3. Negligent Retention of Employees (as and against all defendants)

Fema Birch

**DISCUSSION AND DECISION**:

On February 14, 2019, New [*2] York State enacted the Child Victims Act (L. 2019 c.11) ("CVA") which, *inter alia*, (1) extended the statute of limitations on criminal cases involving certain sex offenses against children under 18 (see *CPL 30.10[2][f]*); (2) extended the time in which civil actions based upon such criminal conduct may be brought until the child victim reaches 55 years old (see *CPLR 208 [b]*); and (3) opened a one-year window reviving civil actions for which the statute of limitations has already run (even in cases that were litigated and dismissed on limitations grounds), commencing August 14, 2019 (see *CPLR 214-g*).

The legislation was primarily intended to revive civil claims by survivors of childhood sexual abuse that were time-barred under the existing statue of limitations, and to provide a more generous statute of limitations for such claims in the future. See, McKinney's *CPLR 214-g*, Practice Commentaries, by Vincent Alexander.

The DIOCESE's application is brought pursuant to two (2) provisions of *CPLR 3211*:

*(a)(5)*: "the cause of action may not be maintained because of . . . statute of limitations. . . ."; and

*(a)(7)*: 'the pleadings fail to state a cause of action."

The DIOCESE did not seek relief under any other section of *3211*.

On a motion to dismiss pursuant [*3] to *CPLR 3211(a)(5)*, a defendant must show that, as a matter of law, the defense on which it is relying bars the plaintiff's action.

> Where the defendant moves to dismiss on the ground that the action is time-barred, the defendant must make a *prima facie* showing that the period within which to commence a timely lawsuit has expired. If the defendant makes that showing, the burden shifts to the plaintiff to raise a question of fact as to whether the action was actually commenced within the applicable statute of limitations, the statue of limitations has been tolled, or an exception to the limitations period is applicable. *Quinn v. McCabe, Collins, McGeough & Fowler, LLP, 138 A.D.3d 1085, 30 N.Y.S.3d 288 (2d Dep't 2016)*; see *Hoosac Valley Farmers Exchange v. AG Assets, Inc., 168 A.D.2d 822, 563 N.Y.S.2d 954 (3d Dep't 1990)*.

See, *CPLR 3211* Practice Commentaries C3211:18 (McKinney).

On a motion to dismiss for failure to state a cause of action, pursuant to *CPLR 3211(a)(7)*, the court must determine whether, from the four corners of the pleading, "factual allegations are discerned, which taken together, manifest any cause of action cognizable at law." *Salvatore v Kumar, 45 AD3d 560, 845 N.Y.S.2d 384 (2d Dept 2007)*, *lv to app den. 10 N.Y.3d 703, 883 N.E.2d 1011, 854 N.Y.S.2d 104 (2008)*, quoting *Morad v Morad, 27 AD3d 626, 627, 812 N.Y.S.2d 126 (2d Dept 2006)*. Further, the pleading is to be afforded the benefit of every possible favorable inference. *Leon v Martinez, 84 N.Y.2d 83, 87-88, 638 N.E.2d 511, 614 N.Y.S.2d 972 (1994)*. Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss. *EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005)*.

On a motion to dismiss for failure [*4] to state a cause of action under *CPLR 3211 (a)(7)*, we accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory. At the same time, **however, allegations consisting of bare**

Case 1:21-cv-06702-LAK   Document 42-3   Filed 11/29/21   Page 4 of 12

Page 3 of 11
2020 N.Y. Misc. LEXIS 1964, *4

legal conclusions . . . are not entitled to any such consideration. Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery.

Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 141-142, 53 N.Y.S.3d 598, 75 N.E.3d 1159 (2017) (citations omitted) (emphasis added).

## I. Due Process Clause challenge to the constitutionality of the claim revival statute

Defendant DIOCESE contends that the New York Legislature's attempt through CPLR 214-g to revive, for a one-year period, formerly time-barred claims predicated on certain types of alleged sexual abuse is unconstitutional under the New York State Constitution's Due Process Clause. Defendant acknowledges that the Court of Appeals has held that "a claim-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice." In the Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig., 30 N.Y.3d 377, 400, 67 N.Y.S.3d 547, 89 N.E.3d 1227 (2017). However, Defendant argues [*5] that the claimants in these CVA actions were not prevented from asserting timely claims and that the injustice resulting in such an extraordinary remedy should be limited to when

> the injustice subject to this extraordinary remedy is limited to when a "plaintiff could not have brought an action in a timely manner." Doe v. Hartford Roman Catholic Diocese Corp., 317 Conn. 357, 433 n.58, 119 A.3d 462 (Conn. 2015); see also Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 539 N.E.2d 1069, 541 N.Y.S.2d 941 (1989); Matter of McCann v. Walsh Constr. Co., 282 App. Div. 444, 123 N.Y.S.2d 509 (3d Dep't 1953), aff'd without op., 306 N.Y. 904, 119 N.E.2d 596 (1954); Gallewski v. Hentz & Co., 301 N.Y 164, 93 N.E.2d 620 (1950); Robinson v. Robins Dry Dock & Repair Co., 238 N.Y. 271, 144 N.E. 579 (1924). The precedent synthesized by the Court of Appeals in the World Trade Center case makes this clear.

Defendant's Amended Memorandum of Law at pp 7-8.

Defendant compares the claims revived pursuant to CPLR 214-g to those of the claims of workers who sought to recover damages for injuries that they incurred when cleaning up toxic dust from the collapse of the World Trade Center on September 11, 2001. Defendant argues that the Legislature did not have the authority to revive the latter claims in disregard to the Court of Appeals holding in Matter of World Trade Ctr., supra. Defendant claims that the cases preceding Matter of World Trade Ctr. establish that a claim revival provision meets the New York due process standard only where a plaintiff could not have brought an action in a timely manner in response to exceptional circumstances or a serious injustice. Defendant claims that

> The [*6] Diocese appreciates the seriousness of these issues—and it has committed to wide-ranging, ongoing, and concrete actions to reconcile with, heal, and compensate victims of these heinous offenses. The claims-revival provision of the CVA does not, however, meet the strict standard imposed by the State Constitution and the Court of Appeals. This standard governs here and must be applied, and these lawsuits should therefore be dismissed. (footnote omitted)

Defendant's Amended Memorandum of Law at pp 3-4.[1]

---

[1] The Court notes that the omitted footnote concerns the Diocese's Independent Reconciliation and Compensation Program administered by Kenneth Feinberg that continues to

In 2006, the New York Court of Appeals issued a decision on a consolidated appeal concerning claims arising from sexual abuse of multiple individuals, most of whom were minors when allegedly abused, by priests in two dioceses. *Zumpano v. Quinn, 2006, 6 NY3d 666, 849 N.E.2d 926, 816 N.Y.S.2d 703 (2006)*. In *Zumpano* Judge Carmen Ciparick, writing for the Court, noted how reprehensible the alleged conduct was, but still held that "absent relief from the Legislature [the claims] will remain unredressed." *6 NY3d at 671*. "Any exception to be made to allow these types of claims to proceed outside of the applicable statutes of limitations would be for the Legislature, as other states have done." *6 NY3d at 677*.

Several years later, in 2017 the Court of Appeals directly addressed the Due Process issue **[*7]** in responding to 1 of 2 certified questions from the U.S. Court of Appeal for the Second Circuit. *Matter of World Trade Ctr., 30 NY3d at 381*:

> 'Does the 'serious injustice' standard articulated in [*Gallewski v. H. Hentz & Co., 301 N.Y. 164, 174, 93 N.E.2d 620 (1950)*], or the less stringent 'reasonableness' standard articulated in [*Robinson v. Robins Dry Dock & Repair Co., 238 N.Y. 271, 144 N.E. 579 (1924)*], govern the merits of a due process challenge under the New York State Constitution to a claim-revival statute."

Judge Feinman, writing for a unanimous Court, did not read these two cases to be in substantial disagreement and used the decision in *Matter of World Trade Ctr.* to "articulate a uniform standard of review." Accordingly,

accept and process claims for compensation. The Diocese also claims it has implemented protocols to protect children, reaches out to and supports victims of sexual abuse, and works closely with appropriate law enforcement personnel to report abuse allegations.

he restated the question to be answered as: "Under *Robinson* and *Gallewski*, what standard of review governs the merits of a New York State *Due Process Clause* challenge to a claim revival statute?" *30 NY3d at 394*.

The Court of Appeals proceeded to hold that a claim-revival statute satisfies the *Due Process Clause* of the New York State Constitution (*NY Const, Art I, § 6*) "**if it was enacted as a reasonable response in order to remedy an injustice**." *Id. at 400* (emphasis added). As Judge Feinman noted, a more heightened standard would be too strict and "there is no principled way for a court to test whether a particular injustice is 'serious' or whether a particular class of plaintiffs is blameless; such moral determinations **[*8]** are left to the elected branches of government." *Id.* Thus, the Diocese's preferred statement of the applicable standard goes far beyond the "uniform standard of review" established in *Matter of World Trade Ctr.*

Thus, the Court of Appeals in *Matter of World Trade Ctr., supra* established a uniform and less rigid standard to review the merits of a due process challenge under the New York Constitution to a claim revival statute. Simply put, in order to find that the *Due Process clause* is satisfied, a court need only determine that the revival statute was a reasonable measure to address an injustice. *See also, Sweener v. Saint-Gobain Performance Plastics Corp., 2018 U.S. Dist. LEXIS 19893, 2018 WL 748742 (N.D.N.Y. Feb. 7, 2018)*.

In addressing this issue, the Court of Appeals noted that "claim-revival statutes generally pose no issue under the *Fourteenth Amendment to the United States Constitution*." *30 NY3d at 394*. But the Court noted that the analysis under the New York Constitution takes a "more functionalist approach":

> Unlike the federal rule, our state standard has not

turned on this formal distinction between claim-revival statutes that intrude upon a 'vested' property interest and those that do not. Rather, as we illustrate below, **our cases have taken a more functionalist approach, weighing the defendant's interests in the availability of a statute of limitations defense with the need to correct an injustice**. Each time [*9] we have spoken on this topic, we described circumstances that would be sufficient for a claim-revival statute to satisfy the State Due Process Clause, with specific reference to the facts then before us.

Id. at 394-395 (emphasis added).

The first of those cases was Robinson v. Robins Dry Dock & Repair Co., 238 NY 271, 144 N.E. 579 (1924), where injured workers faced a limitations bar after they had pursued workers' compensation benefits under a system later invalidated by the U.S. Supreme Court. The Court of Appeals upheld a statute reviving the workers' legal claims for one year. Id. at 274-76. The Court observed that applying the original limitations period would "deprive a plaintiff without fault of a cause of action," and concluded that extending the limitations period was "no arbitrary deprivation" of rights but rather was a "reasonable" response to a situation that "reasonably call[ed] for remedy."

In *Matter of World Trade Ctr* the Court clarified this holding and remarked that, while in some cases a claim-revival statute might be unconstitutional, "'both instinct and reason revolt at the proposition that redress for a wrong must be denied' where the enforcement of a statute of limitations would be 'contrary to all prevailing ideas of justice' ...." Matter of World Trade Ctr., 30 NY3d at 395.

*Robinson* was the standard followed by the Court [*10] of Appeals before its decision in *Matter of World Trade Ctr*. See Gallewski v. H. Hentz & Co., 301 N.Y. 164, 93 N.E.2d 620 (1950); McCann v. Walsh Constr. Co., 282 A.D. 444, 123 N.Y.S.2d 509 (1953), aff'd without op., 306 NY 904, 119 N.E.2d 596 (1954); and Hymowitz v. Eli Lilly & Co., 73 NY2d 487, 539 N.E.2d 1069, 541 N.Y.S.2d 941 (1990). In each case, the Court of Appeals upheld the challenged claim-revival statute as constitutional. The Court in *Matter of World Trade Ctr.* noted that the federal trial court had misinterpreted the standard applicable to a due process challenge of a claim-revival statute: the federal trial court had "found [Jimmy Nolan's] law unconstitutional on the grounds that it was not passed in response to 'exceptional' circumstances or a 'serious injustice'" Matter of World Trade Ctr., 30 NY3d at 383. This erroneous standard together with the requirement that a potential plaintiff could not have brought a timely claim appear to be what the Diocese is asking this Court to now impose as the standard of review in weighing the constitutionality of the CVA and its revival of time-barred child sexual abuse claims.

The analysis employed in Matter of World Trade Ctr., which was cited with approval by U. S. District Court Judge Kahn in Sweener v. Saint-Gobain Performance Plastics Corp., 2018 U.S. Dist. LEXIS 19893, 2018 WL 748742, at *7 (N.D.N.Y. Feb. 7, 2018) states the appropriate constitutionally required analysis herein. As Judge Kahn stated:

> The New York Court of Appeals recently clarified the standard under which New York courts must analyze a due process challenge to a [*11] claim revival statute. In response to two certified questions from the Second Circuit, the Court of Appeals explained that "[a]ny purported dichotomy between *Robinson's* and *Gallewski's* holdings is illusory." In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 30 N.Y.3d 377, 67 N.Y.S.3d

547, 89 N.E.3d 1227, 2017 WL 5574387, at *14-15 (N.Y. 2017). Reviewing its claim revival jurisprudence, the court explained that "[t]he salient facts in each [case] ... fall into the same pattern. First, there existed an identifiable injustice that moved the legislature to act.... Second, in each case, the legislature's revival of the plaintiff's claims for a limited period of time was reasonable in light of that injustice." 30 N.Y.3d 377, 67 N.Y.S.3d 547, 89 N.E.3d 1227, [WL] at *15 (citing Hymowitz, 539 N.E.2d at 1079-80; Gallewski, 93 N.E.2d at 625; Robinson, 144 N.E. at 583; McCann v. Walsh Constr. Co., 282 A.D. 444, 123 N.Y.S.2d 509, 510-11 (App. Div. 1953), aff'd, 306 N.Y. 904, 119 N.E.2d 596 (N.Y. 1954)). (emphasis added)

Defendant has not cited nor is this Court aware of any New York court striking down a claim-revival statute under the Due Process Clause. As Judge Rivera noted in her concurring opinion in *Matter of World Trade Ctr.*:

> Indeed, every time this Court has considered the issue in the past it has upheld the legislature's claim-revival statute as a proper response to the problem the legislature sought to address **1247 (see Robinson, 238 N.Y. at 280, 144 N.E. 579, Gallewski, 301 N.Y. at 174-175, 93 N.E.2d 620; Matter of McCann v. Walsh Constr. Co., 282 App.Div. 444, 450, 123 N.Y.S.2d 509 [3d Dept.1953], affd. without op. 306 N.Y. 904, 119 N.E.2d 596 [1954]; Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 514, 541 N.Y.S.2d 941, 539 N.E.2d 1069 [1989]; see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 846 F.3d at 69 [noting that "neither party has cited to us, nor have we found, any case in which any New York state court has struck [*12] down any statute reviving expired claims"]).

30 NY3d at 405 (emphasis added). See also, Sweener, supra, 2018 U.S. Dist. LEXIS 19893, [WL] at *8.

The Legislative Memoranda for the Bill which was later passed into law as the Child Victims Act justify passage for the Act to remedy the injustice to abuse survivors. The Senate Committee Report notes that:

> New York is one of the worst states in the nation for survivors of child sexual abuse.
>
> ***
>
> Because of these restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety. This legislation would open the doors of justice to the thousands of survivors of child sexual abuse in New York State by prospectively extending the statute of limitations to...age 55 for bringing civil actions for physical, psychological or other injury suffered as a result of child sexual abuse against any party whose intentional or negligent acts or omissions are alleged to have resulted in the abuse.
>
> **This legislation would also establish a one-year window in which adult survivors of child sexual abuse would be permitted to file civil actions, even if the statute of limitations had already expired or, [*13] in the case of civil actions against public institutions, a notice of claim requirement had gone unmet.**
>
> **Passage of the Child Victims Act will finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties**.

2019 New York Senate Bill No. 2440; 2019 Legis. Bill Hist. NY S.B. 2440.

Case 1:21-cv-06702-LAK   Document 42-3   Filed 11/29/21   Page 8 of 12

Page 7 of 11
2020 N.Y. Misc. LEXIS 1964, *13

The Assembly Committee Report (Sponsor Memorandum) states as follows:

> The societal plague of sexual abuse against minors is now well-documented. Also well-established is how certain abusers - sometimes aided by institutional enablers and facilitators - have been successful in covering up their heinous acts against children, either by guile, threats, intimidation, and/or attacks on child victims.
>
> Compounding the effects of these crimes against children has been the consistent locking of the courthouse door to child sex abuse victims who wish to have their day in court against their abusers, typically as a result of the passage of time in bringing these claims. Indeed, Judge Carmen Ciparick, writing for the Court of Appeals, stated [*14] that if victims of child sex abuse are to be able to obtain judicial relief, the Legislature must first amend our existing statute of limitations laws accordingly (*ZUMPANO V QUINN, 6 NY3d 666, 677, 849 N.E.2d 926, 816 N.Y.S.2d 703 (2006)* ("Any exception to be made to allow these types of claims to proceed outside of the applicable statutes of limitations would be for the Legislature, as other states have done.")).
>
> This bill represents just such a legislative exception. **The bill is a legislative acknowledgment of the unique character of sex crimes against children, which can have a multitude of effects upon victims, including being justifiably delayed in otherwise timely taking action against their abusers and/or those who facilitated their abuse. The bill sets up a specific framework for the revival of actions in which the courthouse door has been closed to victims, whether or not a victim previously attempted to litigate in the face of the aforementioned clearly stated legal authority against them.**
>
> Further, the bill provides for particularized training for judges concerning issues unique to the adjudication of sex crimes committed against minors.
>
> **In sum, it was an extraordinary confluence of events which resulted in the systematic sexual abuse of minors coming to light, [*15] and this has resulted in this bill, which seeks to allow victims to have their day in court and prove their claims.**

2019 New York Assembly Bill No. 2683; 2019 Legis. Bill Hist. NY A.B. 2683 (emphasis added).

As Justice Deborah A. Chimes noted in upholding the CVA revival statue against a similar due process attack by a Defendant school: "This legislation would open the doors of justice to the thousands of survivors of child sexual abuse in in New York State by prospectively extending the statute of limitations" *Torrey v Portville Central School, et. al, 66 Misc. 3d 1225(A), 2020 NY Slip Op 50244(U), 2020 WL 856432 (Sup. Ct. Cattagarus Co. February 21, 2020).*

Based on this legislative history, the Court finds the Child Victims Act is a reasonable response to remedy the injustice of past child sexual abuse. Accordingly, it does not violate Defendant DIOCESE's right to due process under the New York State Constitution and that branch of the Motion to Dismiss is DENIED.

II. **Claims subject to revival pursuant to *CPLR 214-g*.**

*CPLR 214-g* revives "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of" specific child sexual abuse offenses.

Defendant Diocese argues that claims against the Diocese for alleged misconduct [*16] other than its own intentional or negligent misconduct should remain time-

barred. These include:

(1) any respondeat superior claim, based on (a) acts of individual perpetrators; (b) the breach of a non-delegable duty; and (c) the breach of *N.Y. Soc. Serv. Law § 413* and

(2) any claim premised on conduct that is not intentional or negligent, such as recklessness or gross negligence.

Upon a review of the statutory language, the Court denies this portion of Defendant's motion. The argument that the CVA did not revive claims based upon the acts and omissions of an employee or agent acting within the scope of his or her authority or any other claim against a party alleging intentional or negligent acts as a result of child sexual abuse ignores the revival statute's use of different words to describe (1) against whom a cause of action is brought or liability is sought (that is, a "party"), and (2) by whom the tortious act was committed (that is, a "person").

The Legislature expressly revived "every" claim or cause of action brought against a "party" so long as the claim alleges intentional or negligent conduct by a "person" causing injury as a result of specific child sexual abuse offenses. The statute clearly differentiates [*17] between two different nouns ("party" and "person") and two different prepositions respectively ("against" and "by"). Thus, it is clear that the Legislature's intention was that in some instances the "party" held liable, such as the Diocese, and the "person" committing the negligent or intentional tort, such as an employee or agent, would be different.

And that is precisely what respondeat superior and breach of non-delegable duty liability claims are based upon: that the employer (the "party") against whom the action is brought is liable for the tortious conduct by its employee (the "person") if those torts are committed within the scope of his or her employment. See *Riviello v Waldron, 47 NY2d 297, 391 N.E.2d 1278, 418 N.Y.S.2d 300 ([1979)*: "[W]e first note what is hornbook law: the doctrine of respondeat superior renders a master vicariously liable for at tort committed by his servant while acting within the scope of his employment." *Id. at 302*. Accordingly, the Court finds that *CPLR 214-g* plainly revives respondeat superior claims.

The Court further finds that *CPLR 214-g* also revives claims alleging negligence/gross negligence and breach of non-delegable duty claims for the same reason. *CPLR 214-g* expressly revived **every** "claim or cause of action brought against any party" that alleges "intentional [*18] or negligent acts or omissions" stemming from child sexual abuse offenses. A claim for breach of non-delegable duty is essentially a claim for negligence; the Diocese argues that very point later in its brief. See Defendant's Amended Memorandum. at 57 ("Negligence Claims and Claims For...Respondeat Superior Are Impermissibly Duplicative"). The Diocese's argument is without merit that claims based on gross negligence are "substantively distinct" from claims based on intentional or negligent acts. See Defendant's Memorandum. at 28-31.

The Court has not been made aware of any New York statute or caselaw holding that a gross negligence claim is distinct from claims based on negligent acts. In fact, caselaw defines gross negligence as the equivalent of intentional misconduct. *See e.g., Bennett v. State Farm Fire and Casualty Co., 161 AD3d 926, 78 N.Y.S.3d 169 (2d Dept. 2018)*. "To constitute gross negligence, a party's conduct must 'smack[ ] of intentional wrongdoing' or 'evince[ ] a reckless indifference to the rights of others'." *Id. at 929*.

> Stated differently, a party is grossly negligent when it fails 'to exercise even slight care' . . . or "slight diligence" (*Goldstein v Carnell Assoc., Inc., 74*

AD3d at 747, quoting Food Pageant v Consolidated Edison Co., 54 NY2d 167, 172, 429 N.E.2d 738, 445 N.Y.S.2d 60 [1981], and Dalton v Hamilton Hotel Operating Co., 242 NY 481, 488, 152 N.E. 268 [1926]).

Ryan v. IM Kapco, Inc., 88 AD3d 682, 683, 930 N.Y.S.2d 627 (2d Dept. 2011).

To the extent that gross negligence [*19] claims are based on either "negligent" or "intentional" acts, such claims clearly are encompassed by the statutory revival language.

The Diocese's argument that the Court should ignore the CVA legislation's sweeping statute of limitations reform for survivors of childhood sexual abuse is not persuasive and would lead to unreasonable results given the intention of the Legislature in enacting CPLR 214-g. See Williams v. Williams, 23 N.Y.2d 592, 599, 246 N.E.2d 333, 298 N.Y.S.2d 473 (1969) ("[w]e will not blindly apply the words of a statute to arrive at an unreasonable or absurd result"). The Court does not believe the Legislature intended to revive claims for negligence and claims for intentional misconduct but a claim for gross negligence, which lies between negligence and intentional misconduct in terms of the nature of the conduct. Rather, the Legislature intended to revive all and any claims for tortious conduct, including those that fall in the middle of the spectrum of misconduct between negligence and intentional torts. Such a reading of the statute is in accord with the plain language of CPLR's 214-g, which, again, says "**every civil claim or cause of action**" arising from "**negligent or intentional acts or omissions**" is revived. (emphasis added).

Accordingly, the portion [*20] of the Diocese's motion to dismiss arguing that claims against the Diocese for alleged misconduct other than its own intentional or negligent misconduct remain time-barred is DENIED in its entirety.

### III. Failure to State a Cause of Action Claims

A. Negligence Cause of Action

Defendants assert that Plaintiff has failed to state a claim for negligence in that Plaintiff "merely gesture[s] at the possibility that some duty exists without explaining what it is," and that "there is neither support in the case law nor in policy considerations for creating a broad and unbounded duty owed by the [Defendants] to prevent the despicable harm alleged in these cases." They contend that claims of generalized negligence where plaintiffs have also alleged negligent hiring, retention, supervision or training "should be dismissed for failing to identify any separate duty of care sufficient to support a general negligence claim."

Plaintiff claims that he has properly plead causes of action for negligence which are distinct from his claims of negligent training and supervision and negligent retention. Pursuant to the complaint, each of the Defendants owed a duty to Plaintiff. Specifically, Plaintiff asserts [*21] that the DIOCESE "had a duty to protect all children who participated in their programs from generally foreseeable danger," that the DIOCESE "had a duty to protect Plaintiff because of a special relationship with Plaintiff and their priests," and that the DIOCESE "owed Plaintiff a duty of care because the perpetrator was a dangerous condition on their premises. As asserted by Plaintiff, by offering educational programs through its parishes and schools to children, the DIOCESE owed a duty to Plaintiff to properly supervise and to prevent harm from generally foreseeable dangers.

In order to prevail on a negligence claim, "a plaintiff must demonstrate (1) a duty owed by the defendant to

the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (*Solomon v City of New York, 66 NY2d 1026, 1027, 489 N.E.2d 1294, 499 N.Y.S.2d 392 [1985]*). *Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 825, 37 N.Y.S.3d 750, 59 N.E.3d 485 (2016)*; see also, *Mitchell v Icolari, 108 AD3d 600, 969 N.Y.S.2d 503 (2d Dept 2013)*; *Turcotte v Fell, 68 NY2d 432, 437, 502 N.E.2d 964, 510 N.Y.S.2d 49 [1986]*; see also, *Maheshwari v City of New York, 2 NY3d 288, 294, 810 N.E.2d 894, 778 N.Y.S.2d 442 (2004)*. The Plaintiff adequately states in his Complaint that the Defendants had a duty to protect the safety of the Plaintiff and other children under its supervision and control. The Complaint also alleges breach and causation. Plaintiff's Complaint, paragraphs 20-38. Accordingly, Defendants' motion to dismiss the First Cause of Action [*22] is DENIED.

B. Negligent Training and Supervision of Employees and Negligent Retention of Employees Causes of Action

Defendants claim that Plaintiff's causes of action for negligent training and supervision and negligent retention of employees should be dismissed for failure to state a claim since there "are not sufficient allegations that Defendants knew of its employees' propensity to commit sexual abuse of minors," that Plaintiff merely claims that Defendants were "in a position such that [they] ought to have known" about the alleged abuse, and that plaintiffs' unsupported allegations are tantamount to seeking to hold Defendants strictly liable for their employees' alleged misconduct. Defendants also state that any claim of alleged abuse that did not take place on Defendants' property "is attenuated" and must be dismissed.

As opined by the Appellate Division, Second Department: "There is no statutory requirement that causes of action sounding in negligent hiring, negligent retention, or negligent supervision be pleaded with specificity." (*Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 654 N.Y.S.2d 791 [2d Dept 1997]*).

> The *First Amendment* does not grant religious organizations absolute immunity from tort liability. . . . Therefore, religious entities must be held accountable for [*23] their actions, 'even if that conduct is carried out as part of the church's religious practices.' Religious entities have some duty to prevent injuries inflicted by persons in their employ whom they have reason to believe will engage in injurious conduct.

(*Id.*).

"A necessary element of a cause of action alleging negligent retention or negligent supervision is that the 'employer knew or should have known of the employee's propensity for the conduct with caused the injury.'" (*Bumpus v New York City Transit Authority, 47 AD3d 653, 851 N.Y.S.2d 591 [2d Dept 2008]*).

> Although an employer cannot be held vicariously liable 'for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employer's business,' the employer may still be held liable under theories of negligent hiring, retention, and supervision of the employee. . . . The employer's negligence lies in having 'placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention' of the employee."

(*Johansmeyer v New York City Dept. of Ed., 165 AD3d 634, 85 N.Y.S.3d 562 [2d Dept 2018]*)(internal citations omitted).

Assertions that "New York law requires that a negligent

supervision claim involves tortious conduct [*24] committed with the defendant's chattels or on the defendant's property is unpersuasive." (Krystal G. v Roman Catholic Diocese of Brooklyn, 34 Misc 3d 531, 933 N.Y.S.2d 515 [Sup Ct, Kings County 2011]).

In addition, a generalized claim that defendants knew of the risk of sexual abuse of minors by priests and other staff working for the defendants is insufficient. (Shor v. Touch-N-Go Farms, Inc., 89 AD3d 830, 831, 933 N.Y.S.2d 686 [2d Dept. 2011]; Doe v Goldweber, 112 AD3d 446, 976 N.Y.S.2d 77 [1st Dept 2013]). Liability for negligent supervision is based not on the tortious conduct of the employee but on the negligence of the Defendant-employer for failing to supervise the employee in a situation which involves the risk of harm by the employee to others. (See, e.g. Ford v Gildin, 200 AD2d 224, 613 N.Y.S.2d 139 [1st Dept 1994]).

In the instant matter, Plaintiff alleged that Defendants had a duty to protect Plaintiff from Fr. Soave's alleged sexual abuse actions, that "[p]rior to the sexual abuse of Plaintiff, Defendants learned or should have learned that Fr. Soave was not fit to work with children," and that "Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Fr. Soave's propensity to commit sexual abuse and of the risk to Plaintiff's safety." Furthermore, Plaintiff asserts in the Complaint that "Defendants negligently retained Fr. Soave with knowledge of Fr. Soave's propensity for the type of behavior which resulted in Plaintiff's injuries [*25] in this action." Accordingly, upon review of the Complaint it is determined that Plaintiff has adequately plead causes of action as and against the Defendants for negligent training and supervision, and for negligent retention. Based upon the foregoing, those branches of Defendants' motion to dismiss the Second Cause of Action for negligent training and supervision and the Third Cause of Action for negligent retention of employees, are DENIED.

All applications not specifically addressed herein are hereby denied.

The foregoing constitutes the decision and order of the Court.

DATED: May 11, 2020

Mineola, New York

/s/ Steven M. Jaeger

Hon. Steven M. Jaeger,

A.J.S.C.

End of Document