# EXHIBIT A

Marci A. Hamilton, Esq. (*pro hac vice* pending)
*Founder & CEO*, CHILD USA
3508 Market Street, Suite 202
Philadelphia, PA 19104
Tel:  (215) 539-1906
hamilton.marci@gmail.com

*Counsel for CHILD USA*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIRGINIA L. GIUFFRE, | ECF CASE |
| Plaintiff, | |
| vs. | Civ. Action No.:  1:21-cv-06702-LAK |
| PRINCE ANDREW, DUKE OF YORK, a/k/a ANDREW ALBERT CHRISTIAN EDWARD, in his personal capacity, | **BRIEF OF *AMICUS CURIAE* CHILD USA IN SUPPORT OF THE CONSTITUTIONALITY OF THE CHILD VICTIMS ACT** |
| Defendant. | |

## TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST OF AMICUS CURIAE ................................................................. 1

PRELIMINARY STATEMENT ............................................................................................... 2

ARGUMENT ............................................................................................................................ 3

I.      THE CVA IS CONSTITUTIONAL UNDER THE NEW YORK
        CONSTITUTION'S DUE PROCESS CLAUSE .................................................3

        A.      New York's Due Process Clause Requires Only that the CVA's
                Revival Provision Is a Reasonable Measure to Address an
                Injustice .................................................................................................3

        B.      The Original One-Year CVA Window Was a Reasonable
                Remedy to the Injustice of Barring Child Sexual Abuse
                Survivors' Claims with Unreasonably Short Statutes of
                Limitations ............................................................................................6

        C.      The One-Year CVA Window Extension Was a Reasonable
                Remedy to Address the Added Injustice Survivors Faced Due
                to the Global Pandemic ......................................................................15

        D.      The National Constitutional Landscape of Revival Windows
                Shows a Two-Year Window is a Reasonable Response to
                Remedy the Injustice of Short SOLs .................................................18

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## CASES

*B.A. v. Golabek*,
No. 18CV17523KSHCLW, 2021 WL 5195665 (D.N.J. Nov. 8, 2021) ............................14

*Bell-Kerr v. Baltimore-Washington Conference of the United Methodist Church*,
No. 2021 CA 0013531B (D.C. Super. Ct. 1990) .................................................................14

*Coats v. New Haven Unified Sch. Dist.*,
46 Cal. App. 5th 415 (2020) ...............................................................................................13

*Cosgriffe v. Cosgriffe*,
864 P.2d 776 (Mont. 1993) .................................................................................................13

*Coyle v. Salesians of Don Bosco*,
No. L-2606-21, 2021 WL 3484547 (N.J. Super .L. July 27, 2021).....................................14

*Cryan v. YMCA*,
No. COA 20-696, 2021 WL 197287 (N.C. App. Nov. 16, 2021).........................................14

*Deutsch v. Masonic Homes of Cal., Inc.*,
164 Cal.App.4th 748 (2008) ...............................................................................................13

*Doe v. Doe*,
No. 2020-10745 (La. Civ. Dist. Ct.) ...................................................................................14

*Doe v. Hartford Roman Catholic Diocesan Corp.*,
119 A.3d 462 (Conn. 2015) .................................................................................................13

*Doe v. Niagara Falls City Sch. Dist.*,
72 Misc. 3d 1052 (N.Y. Super. Ct. 2021) ...........................................................................14

*Doe v. Poly Prep Country Day Sch.*,
No. 20CV03628DGSJB, 2021 WL 4310891 (E.D.N.Y. Sept. 22, 2021)...........................14

*Farrell v. U.S. Olympic & Paralympic Comm.*,
No. 120CV1178FJSCFH, 2021 WL 4820251 (N.D.N.Y. Oct. 15, 2021) ..........................14

*Gallewski v. Hentz & Co.*,
93 N.E.2d 620 (N.Y. 1950)....................................................................................................3

*Giuffre v. Dershowitz*,
No. 19 Civ. 3377 (LAP), 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020)..............2, 3, 5, 6, 14

*Harvey v. Merchan*,
No. S21A0143, 2021 WL 2518868 (Ga. June 21, 2021)....................................................13

*Hymowitz v. Eli Lilly and Co.*,
73 N.Y.2d 487 (N.Y. 1989) ...................................................................................................6

*In re World Trade Ctr.*,
    30 N.Y.3d 377 (2017) .................................................................................3, 4, 5, 6, 14

*In re World Trade Ctr.*,
    66 F. Supp. 3d 466 (S.D.N.Y. 2014), *vacated on other grounds*, 892 F.3d
    108 (2d Cir. 2018).......................................................................................................4

*In re World Trade Ctr.*,
    892 F.3d 108 (2d Cir. 2018)........................................................................................5

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    846 F.3d 58 (2d Cir. 2017)..........................................................................................4

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    No. 21 MC 102 (AKH), 2019 WL 4168993 (S.D.N.Y. Aug. 30, 2019),
    *aff'd*, 828 F. App'x 734 (2d Cir. 2020)......................................................................5

*K.E. v. Hoffman*,
    452 N.W.2d 509 (Minn. Ct. App. 1990)...................................................................13

*Kelly v. Marcantonio*,
    678 A.2d 873 (1996)..................................................................................................14

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)..............................................................................................3, 14

*Mitchell v. Roberts*,
    No. 20170447, 2020 WL 3118607 (Utah 2020) .......................................................14

*New York v. Ferber*,
    458 U.S. 747 (1982)..................................................................................................10

*R.L. v. Voytac*,
    971 A.2d 1074 (N.J. 2009)..........................................................................................7

*Robinson v. Robins Dry Dock & Repair Co.*,
    144 N.E. 579 (N.Y. 1924)...........................................................................................3

*Roe v. Ram*,
    No. CIV. 14-00027 LEK-RL, 2014 WL 4276647 (D. Haw. Aug. 29, 2014)...................13

*S.T. v. Diocese of Rockville Centre*,
    Index No. 099997/2019 (N.Y. Sup. Ct., Nassau Cnty. May 18, 2020) ..........................14

*S.Y. v. Roman Catholic Diocese of Patterson*,
    No. CV202605ESCLW, 2021 WL 4473153 (D.N.J. Sept. 30, 2021) ...............................13

*Sheehan v. Oblates of St. Francis de Sales*,
    15 A.3d 1247 (Del. 2011) .........................................................................................13

*Sliney v. Previte*,
    41 N.E.3d 732 (Mass. 2015) .....................................................................................13

*Stogner v. Cal.*,
 539 U.S. 607 (2003)..................................................................................9

*T.M. v. Order of St. Benedict of New Jersey, Inc.*,
 MRS-L-399-17 (N.J. Sup. Ct., Law Div., Morris County).................................14

*Torrey v. Portville Cent. Sch.*,
 66 Misc. 3d 1225(A) (N.Y. Sup. Ct., Cattaraugus Cnty. 2020)........................14

*W.F. v. Roman Catholic Diocese of Paterson*,
 No. 20-7020, 2021 WL 2500616 (D.N.J. Jun. 7, 2021)....................................14

*Whitwell v. Archmere Acad., Inc.*,
 No. CIV.A.07C08006RBY, 2008 WL 1735370
 (Del. Super. Ct. Apr. 16, 2008)..................................................................13

*Wiley v. Roof*,
 641 So. 2d 66 (Fla. 1994)........................................................................14

## STATUTES

2019 NJ Sess. Law Serv. Ch. 120 (SENATE 477) .........................................12

2007 Delaware Laws Ch. 102 (S.B. 29) ......................................................12

2010 Delaware Laws Ch. 384 (H.B. 326) ....................................................12

2012 Hawaii Laws Act 68 (S.B. 2588) ........................................................12

2014 Hawaii Laws Act 112 (S.B. 2687) ......................................................12

2018 Hawaii Laws Act 98 (S.B. 2719) ........................................................12

2019 Montana Laws Ch. 367 (H.B. 640) ......................................................12

2019 North Carolina Laws S.L. 2019-245 (S.B. 199) .....................................12

2019 Sess. Law News of N.Y. Ch. 11 (S. 2440)............................................12

2019 Sess. Law News of N.Y. Ch. 11 (S. 2440)............................................12

2021 Kentucky Laws Ch. 89 (HB 472) ........................................................12

2021 N.M.I. Pub. L. No. 22-12 (HB 22-2, SDI) ............................................12

2021 Nevada Laws Ch. 288 (S.B. 203) ........................................................12

7 G.C.A. § 11306(2) (2011) ......................................................................12

ARK. CODE ANN. § 16-118-118 ................................................................12

AZ Rev. Stat. § 12-514 ............................................................................12

Cal. Civ. Proc. Code § 340.1 (2002, 2020)..............................................12, 19

2002 Cal. Legis. Serv. Ch. 149 (S.B. 1779) ...........................................................12, 19

2019 Cal. Legis. Serv. Ch. 861 (A.B. 218) ............................................................12, 19

Del. Code tit. 10, § 6586 ..............................................................................................19

Del. Code tit. 10, § 8145 .......................................................................................12, 19

Del. Code tit. 18, § 6856 ..............................................................................................12

FL. Stat. Ann. § 95.11 ..................................................................................................12

Ga. Code § 9-3-33.1 .....................................................................................................12

2015 Georgia Laws Act 97 (H.B. 17) ..........................................................................12

GU ST T. 7, § 11301.1 .................................................................................................19

Haw. Rev. Stat. § 657-1.8 ......................................................................................12, 19

Ky. Rev. Stat. 413.249 .................................................................................................12

2021 La. Sess. Law Serv. Act 322 (H.B. 492) .............................................................12

La. Stat. Ann. § 9:2800.9 .............................................................................................12

2021 Me. Legis. Serv. Ch. 301 (H.P. 432) (L.D. 589) .................................................12

Me. Stat. Ann. tit. 14 § 752-C ......................................................................................12

Mich. Comp. Laws § 600.5851b ............................................................................12, 18

2018 Mich. Legis. Serv. P.A. 183 (S.B. 872) ..............................................................12

2013 Minn. Sess. Law Serv. Ch. 89 (H.F. 681) ...........................................................12

Minn. Stat. Ann. § 541.073 ..........................................................................................12

Mont. Code § 27-2-216 ..........................................................................................12, 18

N.J. Stat. ANN. § 2A:14-2A .........................................................................................12

N.J. Stat. ANN. § 2A:14-2B .........................................................................................12

NC Gen. Stat. § 1-17 ....................................................................................................12

NV ST § 11.215 .............................................................................................................12

NV ST § 41.1396 ...........................................................................................................12

P.L. 33–187:2 (Sept. 23, 2016) ....................................................................................12

Tit. 7 G.C.A § 11306 ....................................................................................................12

Tit. 7 G.C. § 11301.1(b) .................................................................................................12

Utah Code Ann. § 78B-2-308 .........................................................................................12

2016 Utah Laws Ch. 379 (H.B. 279) ..............................................................................12

## RULES

CPLR § 214-G .........................................................................................................2, 3, 21

N.Y. C.P.L.R. 214-g .......................................................................................................12

## MISCELLANEOUS

Dalton, *In Its Two Years, Child Victim's Act Brings 170 Lawsuits Alleging Abuse*,
  THE NEWS J. (July 9, 2009), https://bartdaltonlaw.com/news/in-its-two-
  years-child-victims-act-brings-170-lawsuits-alleging-abuse .........................................20

1992 Fla. Sess. L. Serv. Ch. 92-102 (CSSB 1018) .........................................................12

*Administrative Order of the Chief Administrative Judge of the Courts*, AO/78/20
  (Mar. 22, 2020), https://nycourts.gov/whatsnew/pdf/AO-78-2020.pdf ..........................16

Albert Cooper, *Pandemic Stalls CV Cases in NYC.* (May 2, 2020),
  https://www.bkreader.com/2020/05/02/pandemic-stalls-cva-cases-in-nyc/ ....................20

Angelakis, I., Gillespie, E.L., Panagioti, M., *Childhood maltreatment and adult
  suicidality: a comprehensive systematic review with meta-analysis*,
  PSYCHOLOGICAL MEDICINE 1-22 (2019) ......................................................................11

Arkansas Act 1036; S.B. 676, 93rd General Assembly, Reg. Sess. (Arkansas
  2021) ...........................................................................................................................12

Bessel A. van der Kolk M.D., et al., *Traumatic Stress: The Effects of
  Overwhelming Experience on Mind, Body, and Society* (2006) .......................................7

CHILD USA, *Discovery Rule Report: Discovery Tolling of Statutes of Limitation
  for Child Sexual Abuse Claim* (Feb. 26, 2021), https://childusa.org/2020-
  discovery-rule-report/ .....................................................................................................9

CHILD USA, *Discovery Rule Report: Discovery Tolling of Statutes of Limitation
  for Child Sexual Abuse Claims* (Feb. 26, 2021), https://childusa.org/2020-
  discovery-rule-report/ ....................................................................................................12

CHILD USA, *Revival Laws for Child Sex Abuse Since 2002* (Nov. 1, 2021),
  https://childusa.org/windowsrevival-laws-for-csa-since-2002/ .......................................12

CHILD USA, *Statute of Limitations Reform Services the Public Interest: A
  Preliminary Report on the New York Child Victims Act* (Aug. 23, 2021),
  https://childusa.org/wp-content/uploads/2021/08/A-Preliminary-Report-
  on-the-New-York-Child-Victims-Act.pdf ........................................................................21

*Coronavirus and the New York State Courts* (last updated Sept. 14, 2021),
  https://www.nycourts.gov/latest-AO.shtml ....................................................................16

D. Finkelhor, et. al., *Prevalence of child exposure to violence, crime, and abuse: Results from the Nat'l Survey of Children's Exposure to Violence*, 169(8) JAMA Pediatrics 746 (Aug. 2015), http://unh.edu/ccrc/pdf/CV331.pdf............................6

Dan Clark, *One in three people in New York is on Medicaid* (Jul. 21, 2017), https://www.politifact.com/new-york/statements/2017/jul/21/john-faso/one-three-people-new-york-are-medicaid/................................................11

David Finkelhor et al., *Sexually Assaulted Children: National Estimates and Characteristics*, US Dept. of Justice, Office of Justice Programs (2008), https://www.ojp.gov/pdffiles1/ojjdp/214383.pdf.............................................8

Elizabeth J. Letourneau et al., *The Economic Burden of Child Sexual Abuse in the United States* Child Abuse Negl. 413 (2018)....................................................11

Executive Order No. 202.29 (2020)...........................................................................12

G. Moody, et. al., Establishing the international prevalence of self-reported child maltreatment: a systematic review by maltreatment type and gender, 18(1164) BMC PUBLIC HEALTH (2018)...........................................................6

Gail Hornot, *Childhood Trauma Exposure & Toxic Stress: What the PNP Needs to Know*, J. PEDIATRIC HEALTHCARE (2015)...................................................11

*Governor Cuomo Signs Legislation Extending Look Back Window for Child Victims Act*, Office of Children and Family Services (Aug. 3, 2020), https://ocfs.ny.gov/main/news/article.php?idx=2137 ........................................17

H.B. 2466, 54th Leg., 1st Reg. Sess. (Ariz. 2019)...................................................12

Jay Tokasz, *Buffalo man's testimony 18 years ago paved way for nearly 11,000 Child Victims Act lawsuits*, THE BUFFALO NEWS (Aug. 17, 2021), https://buffalonews.com/news/local/buffalo-mans-testimony-18-years-ago-paved-way-for-nearly-11-000-child-victims-act/article_5425bb80-ffa8-11eb-a0c1-c7506597943e.html..............................................................21

Jean Hopfensperger, *More than 800 sex abuse claims filed under Minnesota law*, STARTRIBUNE.COM (May 23, 2016), available at https://www.startribune.com/more-than-800-sex-abuse-claims-filed-under-minnesota-law/380524441/....................................................................20

M. Merricka, et. al., *Unpacking the impact of adverse childhood experiences on adult mental health*, CHILD ABUSE NEGLECT (2017)........................................11

M. Merricka., et al., *Unpacking the impact of adverse childhood experiences on adult mental health*, 69 CHILD ABUSE & NEGLECT 10 (July 2017) ...................7

M. Stoltenborgh, et. al., A Global Perspective on Child Sexual Abuse: Meta-Analysis of Prevalence Around the World, 16(2) CHILD MALTREATMENT 79 (2011)..........................................................................................................6

*Making the Case: Why Prevention Matters* (last visited Nov. 29, 2021), https://preventchildabuse.org/resource/why-prevention-matters/......................11

Memorandum of Law in Support of Def's Motion to Dismiss, ECF No. 34 ...............................4

Michelle Elliott et al., *Child Sexual Abuse Prevention: What Offenders Tell Us*
Child Abuse Negl. 579 (1995) ........................................................................................10

N. Pereda, et. al., The prevalence of child sexual abuse in community and student
samples: A meta-analysis, 29 CLINICAL PSYCH. REV. 328 (2009) ....................................6

*New York State Assembly and Senate Pass Legislation Extending Child Victims
Act by One Year as Part of COVID-19 Emergency Relief Package* (May
27, 2020), https://assembly.state.ny.us/mem/Linda-B-
Rosenthal/story/92635 ....................................................................................................17

*New York State Assembly and Senate Pass Legislation Extending Child Victims
Act By One Year as Part of COVID-19 Emergency Relief Package* (May
27, 2020), https://nyassembly.gov/mem/Linda-B-Rosenthal/story/92635 ......................19

Patrick J. O'Leary & James Barber, *Gender Differences in Silencing following
Childhood Sexual Abuse* J. Child Sex. Abuse 133 (2008) .................................................7

Paul Drewes, *Hawaii Courts filling with sex abuse cases* (Apr. 27, 2020),
https://www.kitv.com/story/42061207/hawaii-courts-filling-with-sex-
abuse-cases ...................................................................................................................20

Perryman Group, *Suffer the Little Children: An Assessment of the Economic Cost
of Child Maltreatment* (2014) ........................................................................................11

Phoebe Tollefson, *Montana sees flurry of child sex abuse lawsuits as deadline
approaches,* BILLINGSGAZETTE.COM (Apr. 29, 2020), available at
https://billingsgazette.com/news/state-and-regional/montana-sees-flurry-
of-child-sex-abuse-lawsuits-as-deadline-approaches/article_7b70f900-
c3a6-5386-bb3d-bd236407ec94.html ...............................................................................20

Press Release, *Senator Brad Hoylman Calls For Child, supra* p. 16 .........................................19

*Preventing Adverse Childhood Experiences*, CDC.GOV (last visited Nov. 29),
https://www.cdc.gov/violenceprevention/childabuseandneglect/aces/fastfa
ct.html ...........................................................................................................................11

*Preventing Child Sexual Abuse* (last visited Nov. 29, 2021), *available at*
https://www.cdc.gov/violenceprevention/pdf/can/factsheetCSA508.pdf; ........................6

Public Laws No. 31-06 (2011), available at
https://www.guamlegislature.com/Public_Laws_31st/P.L.%2031-
07%20Bill%20No.%2034-31.pdf ...................................................................................12

R. Anda, et al., *The Enduring Effects of Abuse and Related Adverse Experiences
in Childhood*, 256 EUR. ARACH PSYCHIATRY CLIN. NEUROSCIENCE 174
(Nov. 2005) .....................................................................................................................7

Ramona Alaggia et al., *Facilitators and Barriers to Child Sexual Abuse (CSA)
Disclosures: A Research Update (2000-2016)*, 20 TRAUMA VIOLENCE
ABUSE 260 (2019) ............................................................................................................8

Rebecca Campbell, Ph.D., *The Neurobiology of Sexual Assault: Explaining Effects on the Brain*, NAT'L INST. OF JUSTICE (2012), https://upc.utah.gov/materials/2014Materials/2014sexualAssault/TonicIm mobility Webinar.pdf ................................................................................................7

Rubén Rosario, *800 claims and counting as child sex-abuse laws nears expiration*, TWINCITIES.COM (May 18, 2016), https://www.twincities.com/2016/05/18/ruben-rosario-800-claims-and-counting-as-child-sex-abuse-law-nears-expiration/ ........................................20

S.B. 7082, 2020 Leg., Reg. Sess. (N.Y. 2020) ............................................12

S.B. 7082, 2020 Leg., Reg. Sess. (N.Y. 2020) ............................................12

S.R. Dube et al., *Childhood Abuse, Household Dysfunction, and the Risk of Attempted Suicide Throughout the Life Span: Findings from the Adverse Childhood Experiences Study*, 286 JAMA 24, 3089 (Dec. 2001) ..........................7

Sachs-Ericsson, et al., *A Review of Childhood Abuse, Health, and Pain-Related Problems: The Role of Psychiatric Disorders and Current Life Stress*, 10(2) J. TRAUMA & DISSOCIATION 170 (2009) ........................................7

SB21-088, 73rd General Assembly, 1st Reg. Sess. (Colo. 2021) (Effective, January 1, 2022)...................................................................................12

*Senator Brad Hoylman Calls For Child Victims Act* ........................................16

*Sponsor's Memorandum*, Assembly Bill No. 2683, 2019-20 Leg. Sess. (N.Y. 2019) ........................................................................................8

*Sponsor's Memorandum*, Senate Bill No. S2440, 2019-20 Leg. Sess. (N.Y. 2019) .................8, 9

*Sponsors Memorandum*, Assembly Bill No. A09036, 2019-20 Reg. Sess. (N.Y. 2020) ....................................................................................19

*Sponsors Memorandum*, Assembly Bill No. A09036, 2019-20 Reg. Sess. (N.Y. 2020) ....................................................................................20

*Survivors, Lawmakers + Safe Horizon: "Leg Must Stay in Remote Session to Pass Child Victims Act Extension,"* READMEDIA (Apr. 7, 2020), http://readme.readmedia.com/Survivors-Lawmakers-Safe-Horizon-Leg-Must-Stay-in-Remote-Session-to-Pass-Child-Victims-Act-Extension/17000016/print...................................................................19

T.L. Simpson, et al., *Concomitance between childhood sexual and physical abuse and substance use problems: A review*, 22 CLINICAL PSYCHOL. REV. 27 (2002)................................................................................................7

*The Adverse Childhood Experiences (ACE) Study*, Centers for Disease Control & Prevention, http://www.cdc.gov/violenceprevention/acestudy/#1 ..........................7

Thompson CN, Baumgartner J, Pichardo C, et al., *COVID-19 Outbreak — New York City, February 29–June 1, 2020*, Center for Disease Control &

Prevention (Nov. 20, 2020),
https://www.cdc.gov/mmwr/volumes/69/wr/mm6946a2.htm ...........................................16

*To Be Extended After COVID-19 Effectively Ends CVA's Look-Back Window*
(Mar. 23, 2020), https://www.nysenate.gov/newsroom/press-releases/brad-
hoylman/senator-brad-hoylman-calls-child-victims-act-be-extended-after ......................16

Vincent J. Felitti et al., *Relationship of Childhood Abuse and Household
Dysfunction to Many of the Leading Causes of Death in Adults: The
Adverse Childhood Experiences (ACE) Study*, 14(4) AM. J. PREV. MED.
245 (1998) ....................................................................................................................................7

Yoohyun Jung, *Kamehameha Schools Faces A Spate Of Sex Abuse Claims*,
CIVILBEAT.ORG (Apr. 4, 2020),
https://www.civilbeat.org/2020/04/kamehameha-schools-faces-a-spate-of-
sex-abuse-claims ..........................................................................................................................20

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

*Amicus curiae* CHILD USA is a national non-profit think tank working to end child abuse and neglect in the United States.  CHILD USA pairs the best social science research with the most sophisticated legal analysis to determine the most effective public policies to end child abuse and neglect.  CHILD USA produces evidence-based solutions and information needed by policymakers, organizations, media, and society as a whole to increase child protection and the common good.

CHILD USA is the leading organization in the United States devoted to reforming statutes of limitations ("SOLs") to reflect the science of delayed disclosure of childhood sexual abuse.  Its founder, Professor Marci A. Hamilton, is the foremost constitutional law scholar on revival laws, and has advised Congress and state governors, legislatures, and courts on the constitutionality of revival window laws for child sex abuse throughout the United States, including in New York, where she was a law professor at Benjamin N. Cardozo School of Law for 26 years.  In 2018, CHILD USA founded the Sean P. McIlmail Statutes of Limitations Research Institute dedicated to studying and analyzing SOLs to fight for access to justice for all child sex abuse survivors.

CHILD USA is uniquely positioned to provide this Court with:  (i) research and analysis of the science of delayed disclosure by survivors of their abuse; (ii) the national landscape on constitutional challenges to state child sex abuse claims revival laws, including in New York; (iii) the compelling public interest in revival of expired civil SOLs; and (iv) the effects of revival laws on public safety.

## PRELIMINARY STATEMENT

CHILD USA respectfully submits this brief as *amicus curiae.* Defendant challenges the

constitutionality of the Child Victims Act, CPLR § 214-G ("CVA"), which revived expired civil

claims for child sex abuse in New York. CHILD USA submits that the CVA easily meets New

York's permissive "reasonable measure to address an injustice" standard for determining

whether a statute of limitations revival period comports with due process under New York law.

Every court to consider the constitutionality of the CVA's revival period has held that it

is such a reasonable measure to address an injustice. This includes multiple New York State trial

courts and several recent federal district courts within the Second Circuit, including a thorough

and well-reasoned opinion issued by the Honorable Loretta A. Preska. *See Giuffre v.*

*Dershowitz*, No. 19 Civ. 3377 (LAP), 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020). These

courts unanimously held that the CVA's revival window is constitutional as a reasonable remedy

to the injustice of New York's prior, unreasonably short SOLs, which obstructed child sex abuse

survivors' access to the courts and kept the public in the dark about predators that continued to

sexually abuse children. Likewise, New York's extension of the revival window for an

additional year was a reasonable remedy to the pandemic-related judicial and logistic barriers

that stood in the way of survivors filing claims during the original window period. Adult

survivors of child sex abuse in New York utilized the revival window—the last avenue for

justice for these individuals—to file 10,857 otherwise expired civil claims against their abusers

and other responsible parties. This Court's decision therefore will have a significant impact on

these survivors of child sexual abuse. It also will significantly impact the public at large, who

the New York State Legislature (the "Legislature") temporarily empowered to uncover instances

of child sex abuse that would have otherwise remained hidden, and hold child sexual predators

accountable. CHILD USA respectfully requests that this Court join every other court that has

considered the issue and uphold the constitutionality of the CVA, and specifically the revival window and its subsequent extension of an additional year under CPLR § 214-g.

## ARGUMENT

## I.   THE CVA IS CONSTITUTIONAL UNDER THE NEW YORK CONSTITUTION'S DUE PROCESS CLAUSE

The CVA's revival window, CPLR § 214-g, comports with the New York Constitution's Due Process Clause because it is a reasonable measure to address the injustice of New York's unreasonable and short SOLs, which blocked most child sex abuse survivors' access to the courts and kept the public in the dark about predators that continued to sexually abuse children.[1] Likewise, the Legislature's extension of the revival window was a reasonable measure to address the injustice of short SOLs and the pandemic related judicial and logistic barriers that stood in the way of survivors filing claims during the original one-year window.

### A.   New York's Due Process Clause Requires Only that the CVA's Revival Provision Is a Reasonable Measure to Address an Injustice

The New York Court of Appeals recently articulated the "uniform standard of review" that governs the merits of a New York State Due Process Clause challenge to a claim revival statute. *See In re World Trade Ctr.*, 30 N.Y.3d 377, 400 (2017).  The Court of Appeals held that, under its prior precedential cases *Robinson v. Robins Dry Dock & Repair Co.*, 144 N.E. 579 (N.Y. 1924) and *Gallewski v. Hentz & Co.*, 93 N.E.2d 620, 624-25 (N.Y. 1950), "a claims-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice." *In re World Trade Ctr.*, 30 N.Y.3d at 400; *see Giuffre*, 2020 WL 2123214, at *2 ("[T]he New York Court of Appeals has recently

---

[1]   Defendant has not asserted a federal constitutional challenge to CPLR § 214-G, so this argument is waived. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).

enunciated the permissive stance that a given revival statute will not run afoul of New York's due process clause if it merely 'was a reasonable measure to address an injustice.'") (quoting *In re World Trade Ctr.*, 30 N.Y.3d at 400).  Accordingly, where the legislature articulates a reasonable interest to remedy injustice, the claim revival legislation is upheld against a constitutional attack.  *In re World Trade Ctr.*, 30 N.Y.3d at 400 ("[E]very time this Court has considered the issue in the past it has upheld the legislature's claim-revival statute as a proper response to the problem the legislature sought to address.") (citation omitted).

Defendant incorrectly alleges that the "injustice" prong of this due process analysis requires a showing of claimants' "practical and total inability to commence [an] action" within the original statutory period.  Memorandum of Law in Support of Def's Motion to Dismiss, ECF No. 34 ("Mot. to Dismiss") at 28.   In doing so, Defendant relies on the District Court's ruling in *In re World Trade Ctr.*, 66 F. Supp. 3d 466 (S.D.N.Y. 2014), *vacated on other grounds*, 892 F.3d 108 (2d Cir. 2018), for support.  But the District Court there merely acknowledged that "practical and total inability to commence [an] action" has "supported the constitutionality" of past revival laws.  *Id*. at 476 (citation omitted).

Significantly, the Second Circuit has already dealt with the exact issue of which standard to apply, while on appeal from the District Court in the above case*.  In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58 (2d Cir. 2017).  There, the Second Circuit specifically certified the question of which standard to apply for a due process analysis of revival laws to the New York Court of Appeals.  *Id.* at 69–70 ("[N]either party has cited to us, nor have we found, any case in which any New York state court has struck down any statute reviving expired claims.").  The New York Court of Appeals, after reviewing prior precedent in New York, articulated the standard as an inquiry of whether the revival statute "was enacted as a

reasonable response in order to remedy an injustice." *In re World Trade Ctr.*, 30 N.Y.3d at 400. As a prerequisite, the Court of Appeals only required that there be an "identifiable injustice that moved the legislature to act." *Id.* at 399.  The Second Circuit, upon review of the standard articulated by the Court of Appeals, vacated the District Court decision on other grounds and remanded.  *In re World Trade Ctr.*, 892 F.3d 108 (2d Cir. 2018); *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, No. 21 MC 102 (AKH), 2019 WL 4168993 (S.D.N.Y. Aug. 30, 2019), *aff'd*, 828 F. App'x 734 (2d Cir. 2020)  (District Court disposing of the case without reaching the constitutionality of the revival law issue).

Indeed, the New York Court of Appeals cautioned against the exact inquiry Defendant seeks this Court undertake—whether Plaintiff is "blameless" for her delay in filing.  *In re World Trade Ctr.*, 30 N.Y.3d at 400.  The Court of Appeals explained that "[a] more heightened standard would be too strict[,]" observing that "[i]n the context of a claim-revival statute, there is no principled way for a court to test whether a particular injustice is 'serious' or whether a particular class of plaintiffs is blameless; such moral determinations are left to the elected branches of government."  *Id.*

In fact, Judge Preska of this Court recently rejected the very argument Defendant proffers here—that New York courts have only upheld claim-revival provisions where plaintiffs could not have brought a timely action. *Giuffre*, 2020 WL 2123214, at *2.  The *Dershowitz* court aptly observed that "the CVA's claim-revival provision obviously reflects the [ ] Legislature's desire to correct a perceived injustice, i.e., that the statute of limitations for certain claims expired before child victims of sexual abuse recovered from past traumas to a degree sufficient to assert their rights."  *Id.*  Accordingly, the court was "unable to see how the CVA's claim-revival provision fails to meet the manageable bar set forth in the [Court of Appeals' *World Trade*

*Center* opinion]." *Id.* (referring to *In re World Trade Ctr.*, 30 N.Y.3d at 400).  *See also*

*Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d 487, 514–15 (N.Y. 1989) (holding that the legislature's

revival of claims related to the drug diethylstilbestrol (DES) did not violate New York

Constitution's Due Process Clause, even though some plaintiffs may have known of their DES-

related injuries before the original limitations period ran).

In enacting the CVA's revival period the New York Legislature determined that keeping

the majority of child sex abuse victims from coming to court because of unfairly short statute of

limitations is an identifiable injustice that required the enactment of the CVA's revival window.

Defendant's proffered "inability" requisite is unsupported by New York law, and this specific

finding as it relates to Plaintiff is irrelevant to New York's "permissive" Due Process standard,

which simply requires that the CVA revival window is a reasonable remedy to an injustice.

*Giuffre*, 2020 WL 2123214, at *2.

> **B.     The Original One-Year CVA Window Was a Reasonable Remedy to the
> Injustice of Barring Child Sexual Abuse Survivors' Claims with
> Unreasonably Short Statutes of Limitations**

Child sexual abuse is a public policy and public health crisis, with approximately 3.7

million children sexually abused in the United States every year.[2]  It affects one in five girls and

one in thirteen boys in this nation.[3]

---

[2]     *See Preventing Child Sexual Abuse*, CDC.gov (last visited Nov. 29, 2021), *available at*
https://www.cdc.gov/violenceprevention/pdf/can/factsheetCSA508.pdf; *see also* D. Finkelhor, et. al.,
*Prevalence of child exposure to violence, crime, and abuse: Results from the Nat'l Survey of Children's
Exposure to Violence*, 169(8) JAMA Pediatrics 746 (Aug. 2015), http://unh.edu/ccrc/pdf/CV331.pdf.

[3]     G. Moody, et. al., Establishing the international prevalence of self-reported child maltreatment: a systematic
review by maltreatment type and gender, 18(1164) BMC PUBLIC HEALTH (2018) (finding a 20.4% prevalence
rate of child sexual abuse among North American girls); M. Stoltenborgh, et. al., A Global Perspective on Child
Sexual Abuse: Meta-Analysis of Prevalence Around the World, 16(2) CHILD MALTREATMENT 79 (2011)
(finding a 20.1% prevalence rate of child sexual abuse among North American girls); N. Pereda, et. al., The
prevalence of child sexual abuse in community and student samples: A meta-analysis, 29 CLINICAL PSYCH.
REV. 328, 334 (2009) (finding a 7.5% and 25.3% prevalence rate of child sexual abuse among North American
boys and girls respectively).

An extensive body of scientific evidence establishes that childhood sexual abuse survivors are traumatized in a way that is distinguishable from victims of other crimes.  As explained by the Center for Disease Control, "Adverse Childhood Experiences" ("ACEs"), like child sexual abuse, "have a tremendous impact on future violence victimization and perpetration, and lifelong health and opportunity."[4]  Indeed, in 1998, one of the largest investigations to date of the effects of childhood abuse, including sexual abuse, established a strong relationship between ACEs and negative effects across the lifespan, including:  disrupted neurodevelopment; impaired social, emotional, and cognitive development; psychiatric and physical disease; and disability.[5]

Survivors of childhood sexual abuse, therefore, often need decades to process and cope with the abuse they suffered, much less to report it.[6]  In one study, 44.9% of male victims and 25.4% of female victims of child sex abuse delayed disclosure by more than 20 years.  Patrick J.

---

[4]     *The Adverse Childhood Experiences (ACE) Study*, Centers for Disease Control & Prevention, http://www.cdc.gov/violenceprevention/acestudy/#1; *see also* Vincent J. Felitti et al., *Relationship of Childhood Abuse and Household Dysfunction to Many of the Leading Causes of Death in Adults: The Adverse Childhood Experiences (ACE) Study*, 14(4) A.M. J. PREV. MED. 245 (1998); S.R. Dube et al., *Childhood Abuse, Household Dysfunction, and the Risk of Attempted Suicide Throughout the Life Span: Findings from the Adverse Childhood Experiences Study*, 286 JAMA 24, 3089 (Dec. 2001) (explaining that childhood trauma can lead to negative health outcomes).

[5]     *See* Felitti, at 245–58; *see also* R. Anda, et al., *The Enduring Effects of Abuse and Related Adverse Experiences in Childhood*, 256 EUR. ARACH PSYCHIATRY CLIN. NEUROSCIENCE 174, 175 (Nov. 2005) ("Numerous studies have established that childhood stressors such as abuse or witnessing domestic violence can lead to a variety of negative health outcomes and behaviors, such as substance abuse, suicide attempts, and depressive disorders"); M. Merricka., et al., *Unpacking the impact of adverse childhood experiences on adult mental health*, 69 CHILD ABUSE & NEGLECT 10 (July 2017); *see also* Sachs-Ericsson, et al., *A Review of Childhood Abuse, Health, and Pain-Related Problems: The Role of Psychiatric Disorders and Current Life Stress*, 10(2) J. TRAUMA & DISSOCIATION 170, 171 (2009) (adult survivors are thirty percent more likely to develop serious medical conditions such as cancer, diabetes, high blood pressure, stroke, and heart disease); T.L. Simpson, et al., *Concomitance between childhood sexual and physical abuse and substance use problems: A review*, 22 CLINICAL PSYCHOL. REV. 27 (2002) (adult survivors of child sexual abuse are nearly three times as likely to report substance abuse problems than their non-survivor peers).

[6]     Rebecca Campbell, Ph.D., *The Neurobiology of Sexual Assault: Explaining Effects on the Brain*, NAT'L INST. OF JUSTICE (2012), https://upc.utah.gov/materials/2014Materials/2014sexualAssault/TonicImmobility Webinar.pdf (hereinafter "Campbell"); *R.L. v. Voytac*, 971 A.2d 1074 (N.J. 2009); Bessel A. van der Kolk M.D., et al., *Traumatic Stress: The Effects of Overwhelming Experience on Mind, Body, and Society* (2006).

O'Leary & James Barber, *Gender Differences in Silencing following Childhood Sexual Abuse,* 17

J. Child Sex. Abuse 133 (2008).  Child sex abuse victims may struggle to disclose their

experiences due to the effects of trauma and psychological barriers such as shame, self-blame, or

fear, as well as social factors such as gender-based stereotypes or stigma regarding victimization.

Ramona Alaggia et al., *Facilitators and Barriers to Child Sexual Abuse (CSA) Disclosures: A*

*Research Update (2000-2016)*, 20 TRAUMA VIOLENCE ABUSE 260, 279 (2019).  An estimated

70% of child sexual assault victims never contact police to report their abuse.[7]

      The CVA's legislative history establishes that the Legislature considered the science of

trauma and the reality of delayed disclosure while creating the claims revival window at issue.

The Assembly Committee Report Sponsor Memorandum provides:

> The bill is a legislative acknowledgment of the unique character of sex crimes
> against children, which can have a multitude of effects upon victims, including
> being justifiably delayed in otherwise timely taking action against their abusers
> and/or those who facilitated their abuse.

*Sponsor's Memorandum (AO5885 Memo)*, Assembly Bill No. 2683, 2019-20 Leg. Sess. (N.Y.

2019). Likewise, the New York State Senate Sponsor Memorandum observed that:

> New York currently requires most survivors to file civil actions or criminal
> charges against their abusers by the age of 23 at most, long before most survivors
> report or come to terms with their abuse, which has been estimated to be as high
> as 52 years old on average.

*Sponsor's Memorandum*, Senate Bill No. S2440, 2019-20 Leg. Sess. (N.Y. 2019).

      The injustice that the Legislature sought to remedy through the claims revival provision

of the CVA is clear and well documented.  New York's prior SOL cutoff of age 23 for bringing

---

[7]    David Finkelhor et al., *Sexually Assaulted Children: National Estimates and Characteristics*, US Dept. of
Justice, Office of Justice Programs (2008), https://www.ojp.gov/pdffiles1/ojjdp/214383.pdf (Based on an
analysis of an estimated 285,400 child sexual assault victims, researchers found that only 30% of cases involved
police contact.).

child sex abuse claims was an oppressive barrier to justice, making it virtually impossible for most survivors to bring their claims.  *Id.*  And, unlike most other states, New York did not even have a discovery rule to expand the SOL for filing claims once survivors recognized their abuse or their injuries.[8]  The Legislature understood that because of New York's short SOL and lack of discovery rule, "thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety."  *Id.*

By passing the CVA, the Legislature took a reasonable step to address this injustice, providing long-denied access to justice to tens of thousands of child sex abuse survivors. Because reviving a previously time-barred *criminal* prosecution is unconstitutional,[9] the ability to file a *civil* claim using a revival provision is the sole redress for many survivors.  As Defendant acknowledges in his Motion, trial courts in New York have found and continue to find under binding Court of Appeals precedent that the CVA's claims revival provision is a reasonable remedy to the injustice of child sex abuse survivors being unable to assert claims under the prior short SOLs.[10]  *See* Mot. to Dismiss at 27 n.12 (citing several New York Supreme Court opinions, one Southern District of New York opinion rendered in 2020, and one Eastern District of New York opinion from 2021).  In stark contrast, Defendant fails to cite to a single instance in which a New York state or federal court found the CVA provision violative of the New York Constitution's Due Process Clause.

Significantly, the Legislature's enactment of the CVA not only remedies the long-standing injustice to child sex abuse victims, the revival window also remedies the unfair

---

[8]  CHILD USA, *Discovery Rule Report: Discovery Tolling of Statutes of Limitation for Child Sexual Abuse Claim*, at 9 (Feb. 26, 2021), https://childusa.org/2020-discovery-rule-report/.

[9]  *See Stogner v. Cal.*, 539 U.S. 607, 610, 632-33 (2003).

[10]  *See* cases cited *infra* n.17.

negative ripple effects the public suffered because survivors' stories were hidden from us. Reviving expired claims serves New York's compelling interests in:  (1) identifying hidden child predators and the institutions that endanger children to the public, therefore shielding other children from future abuse; (2) shifting the cost of abuse from victims and taxpayers to those who caused the abuse; and (3) educating the public about the prevalence of child sex abuse and patterns institutions follow that put children at risk.

New York State's "compelling interest" in protecting its youth from sex abuse is well established in legislative enactments and judicial rulings.  *See*, *e.g.*, *New York v. Ferber*, 458 U.S. 747, 756-57 (1982).  With the opening of the revival window, the public was empowered to uncover instances of child sex abuse that would have otherwise remained hidden.  Children are at heightened risk when the public and parents are left uninformed that adults and certain institutions to which they entrust their children have sexually assaulted children before and covered up that abuse.  The decades before public disclosure give perpetrators and institutions wide latitude to suppress the truth to the detriment of children, parents, and the public.  Some predators abuse a high number of victims and continue abusing children well into their elderly years.  For example, one study found that 7% of offenders sampled committed offenses against 41 to 450 children, and the highest time between offense to conviction was 36 years. Michelle Elliott et al., *Child Sexual Abuse Prevention: What Offenders Tell Us*, 19 Child Abuse Negl. 579 (1995).  By allowing older claims to proceed through the justice system, the State empowered victims to identify New York's hidden child predators and institutions that endanger children to the public so they can be held accountable, and so the public and legal system can develop

policies to prevent further abuse.  Broader prevention of abuse has outstanding long-term impact

for the children and families of New York.[11]

The lifetime cost of child abuse for survivors is enormous,[12] and New York often bears

the burden of this expense.[13]  The estimated lifetime cost to society of child sexual abuse cases

occurring in the United States in 2015 was $9.3 billion, and the average cost of non-fatal abuse

per female victim was estimated at $282,734.  Elizabeth J. Letourneau et al., *The Economic*

*Burden of Child Sexual Abuse in the United States*, 79 Child Abuse Negl. 413 (2018).  The

negative effects over a survivor's lifetime generate extensive costs that impact the nation's health

care, education, criminal justice, and welfare systems. *Id.*[14]  Claims brought after the enactment

of revival laws that result in awards and settlements will not only equitably shift the cost of

abuse away from survivors; they will also save the state money by reducing expenditures on

these public services.

---

[11]  *See generally Making the Case:  Why Prevention Matters,* PREVENTCHILDABUSE.ORG (last visited Nov. 29, 2021), https://preventchildabuse.org/resource/why-prevention-matters/; *Preventing Adverse Childhood Experiences*, CDC.GOV (last visited Nov. 29), https://www.cdc.gov/violenceprevention/childabuseandneglect/aces/fastfact.html.

[12]  The toxic stress and trauma experienced by survivors of childhood sexual abuse are even higher than other forms of child maltreatment.  *See* M. Merricka, et. al., *Unpacking the impact of adverse childhood experiences on adult mental health*, CHILD ABUSE NEGLECT (2017); Angelakis, I., Gillespie, E.L., Panagioti, M., *Childhood maltreatment and adult suicidality: a comprehensive systematic review with meta-analysis*, PSYCHOLOGICAL MEDICINE 1-22 (2019); Gail Hornot, *Childhood Trauma Exposure & Toxic Stress: What the PNP Needs to Know*, J. PEDIATRIC HEALTHCARE (2015); Perryman Group, *Suffer the Little Children: An Assessment of the Economic Cost of Child Maltreatment*, (2014) (hereinafter Perryman Group).

[13]  While one in three New Yorkers receive Medicaid, sex abuse survivors likely disproportionately receive support due to the crippling effect of trauma.  Dan Clark, *One in three people in New York is on Medicaid*, POLITIFACT.COM (Jul. 21, 2017), https://www.politifact.com/new-york/statements/2017/jul/21/john-faso/one-three-people-new-york-are-medicaid/.

[14]  The average cost estimates per victim include, in part, $14,357 in child medical costs, $9,882 in adult medical costs, $223,581 in lost productivity, $8,333 in child welfare costs, $2,434 in costs associated with crime, and $3,760 in special education costs.  Costs associated with suicide deaths are estimated at $20,387 for female victims.

The reasonableness of New York's revival window as a remedy to the injustice of restrictive SOLs is supported by the fact that nearly half of all states have enacted similar windows for child sex abuse claims.  When New York opened its revival window, it joined a list that has now grown in the United States to 23 states and territories that have revived previously expired child sex abuse claims with a revival window.[15]  Even more jurisdictions have revived time-barred child sexual abuse claims with different types of claim revival provision—typically an older age limit or a delayed discovery rule.[16]  Every state appellate court that has applied a

---

[15]   The 23 U.S. jurisdictions with revival windows for child sex abuse are:  **AZ:** AZ Rev. Stat. § 12-514; "Arizona Child Protection Act," H.B. 2466, 54th Leg., 1st Reg. Sess. (Ariz. 2019); **AR:** Justice for Vulnerable Victims of Sexual Abuse Act", Arkansas Act 1036; S.B. 676, 93rd General Assembly, Reg. Sess. (Arkansas 2021); ARK. CODE ANN. § 16-118-118; **CA:** Cal. Civ. Proc. Code § 340.1 (2002, 2020); 2002 Cal. Legis. Serv. Ch. 149 (S.B. 1779); "Child Victims Act", 2019 Cal. Legis. Serv. Ch. 861 (A.B. 218); **CO:** "Child Sexual Abuse Accountability Act", SB21-088, 73rd General Assembly, 1st Reg. Sess. (Colo. 2021) (Effective, January 1, 2022) (this law is not a revival law—it is a new cause of action—but it is included because it opens a window to justice for many survivors whose common law claims have expired); **DE:** Del. Code tit. 18, § 6856; 2010 Delaware Laws Ch. 384 (H.B. 326); Del. Code tit. 10, § 8145; "Child Victim's Act", 2007 Delaware Laws Ch. 102 (S.B. 29); **FL:** FL. Stat. Ann. § 95.11; 1992 Fla. Sess. L. Serv. Ch. 92-102 (CSSB 1018); **GA:** Ga. Code § 9-3-33.1; "Hidden Predator", 2015 Georgia Laws Act 97 (H.B. 17); **GUAM:** Tit. 7 G.C.A §§ 11306; 11301.1(b); Added by P.L. 33–187:2 (Sept. 23, 2016); 7 G.C.A. § 11306(2) (2011); Public Laws No. 31-06 (2011), available at https://www.guamlegislature.com/Public_Laws_31st/P.L.%2031-07%20Bill%20No.%2034-31.pdf; **HI:** Haw. Rev. Stat. § 657-1.8; 2012 Hawaii Laws Act 68 (S.B. 2588); 2014 Hawaii Laws Act 112 (S.B. 2687); 2018 Hawaii Laws Act 98 (S.B. 2719); **KY:** "AN ACT relating to child abuse and declaring an emergency", 2021 Kentucky Laws Ch. 89 (HB 472); Ky. Rev. Stat. 413.249 "Action relating to childhood sexual abuse or childhood sexual assault"; **LA:** 2021 La. Sess. Law Serv. Act 322 (H.B. 492); La. Stat. Ann. § 9:2800.9 "Action against a person for abuse of a minor"; **ME:** : Me. Stat. Ann. tit. § 752-C; "An Act To Provide Access to Justice for Victims of Child Sexual Abuse" 2021 Me. Legis. Serv. Ch. 301 (H.P. 432) (L.D. 589); **MI:** Mich. Comp. Laws § 600.5851b; 2018 Mich. Legis. Serv. P.A. 183 (S.B. 872); **MN:** Minn. Stat. Ann. § 541.073, 2013 Minn. Sess. Law Serv. Ch. 89 (HF 681); **MT:** Mont. Code § 27-2-216 "Tort actions--childhood sexual abuse"; 2019 Montana Laws Ch. 367 (H.B. 640); **NV:** 2021 Nevada Laws Ch. 288 (S.B. 203); NV ST §§ 11.215, 41.1396; **NJ:** N.J. Stat. ANN. §§ 2A:14-2A and 2A:14-2B; 2019 NJ Sess. Law Serv. Ch. 120 (SENATE 477); **NY:** N.Y. C.P.L.R. 214-g; "Child Victims Act" 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440); Executive Order No. 202.29 (2020); S.B. 7082, 2020 Leg., Reg. Sess. (N.Y. 2020); N.Y. C.P.L.R. 214-g; "Child Victims Act" 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440); Executive Order No. 202.29 (2020); S.B. 7082, 2020 Leg., Reg. Sess. (N.Y. 2020); **NC:** NC Gen. Stat. § 1-17; 2019 North Carolina Laws S.L. 2019-245 (S.B. 199); **NMI:** "To amend the Commonwealth Code to authorize civil claims for child sexual abuse to be commenced at any time; and for other purposes"; 2021 N.M.I. Pub. L. No. 22-12 (HB 22-2, SDI); **UT:** Utah Code Ann. § 78B-2-308; 2016 Utah Laws Ch. 379 (H.B. 279).

[16]   *See* CHILD USA, *Revival Laws for Child Sex Abuse Since 2002* (Nov. 1, 2021), https://childusa.org/windowsrevival-laws-for-csa-since-2002/ (listing AZ, CA, CT, MA, MT, NV, NJ, OR, RI, UT, and WV, as having new age limit law that revives expired claims) and CHILD USA, *Discovery Rule Report: Discovery Tolling of Statutes of Limitation for Child Sexual Abuse Claims*, at 9 (Feb. 26, 2021), https://childusa.org/2020-discovery-rule-report/ (listing CA, MA, MN, MT, NJ and OR as having discovery rule laws that revive expired claims).

rational basis approach in considering the rationality of its state legislatures' revival of child sex abuse claims pursuant to its state due process clause has determined the remedial statute was reasonable, according to CHILD USA's research. *Doe v. Hartford Roman Catholic Diocesan Corp.*, 119 A.3d 462, 496 (Conn. 2015) (rejecting due process challenge because revival law "is a rational response by the legislature to the exceptional circumstances and potential for injustice faced by adults who fell victim to sexual abuse as a child" and the "revival of child sexual abuse victims' previously time barred claims serves a legitimate public interest and accomplishes that purpose in a reasonable way"); *Sliney v. Previte*, 41 N.E.3d 732, 741 (Mass. 2015) (rejecting due process challenge because the revival statute was reasonable and "tied directly to the compelling legislative purpose" of giving access to justice for child sex abuse survivors who do not process their injuries well into adulthood); *Cosgriffe v. Cosgriffe*, 864 P.2d 776, 779–80 (Mont. 1993) (rejecting due process challenge because the discovery statute "has a reasonable relation to the legitimate purpose of the State"); *K.E. v. Hoffman*, 452 N.W.2d 509, 514 (Minn. Ct. App. 1990) (rejecting due process challenge because "the statute has a reasonable relation to the state's legitimate purpose of affording sexual abuse victims a remedy").

The overwhelming majority of jurisdictions that enacted revival windows for child sexual abuse have been successful in opening revival windows for survivors' claims and defending them against any state constitutionality challenges.  The revival windows were explicitly upheld as constitutional in seven jurisdictions—California, Delaware, Georgia, Hawaii, New Jersey, New York, and Washington D.C.[17]  In 12 jurisdictions the revival windows have not been

---

[17] *See* **CA:** *Deutsch v. Masonic Homes of Cal., Inc.*, 164 Cal.App.4th 748, 752, 759 (2008); *Coats v. New Haven Unified Sch. Dist.*, 46 Cal. App. 5th 415, 427 (2020); **DE:** *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1258-60 (Del. 2011); *Whitwell v. Archmere Acad., Inc.*, No. CIV.A.07C08006RBY, 2008 WL 1735370, at *2 (Del. Super. Ct. Apr. 16, 2008); **GA:** *Harvey v. Merchan*, No. S21A0143, 2021 WL 2518868 (Ga. June 21, 2021); **HI:** *Roe v. Ram*, No. CIV. 14-00027 LEK-RL, 2014 WL 4276647, at *9 (D. Haw. Aug. 29, 2014); **NJ:** *S.Y. v. Roman Catholic Diocese of Patterson*, No. CV202605ESCLW, 2021 WL 4473153, at *4 (D.N.J.

challenged—Arizona, Arkansas, Colorado, Guam, Kentucky, Maine, Michigan, Minnesota, Montana, Nevada, Northern Mariana Islands, and Vermont.[18]  Initial challenges to claim revival laws are now pending in Louisiana and North Carolina.[19]  Florida and Utah are the only states to invalidate their windows as unconstitutional,[20] based on a very strict and largely disfavored vested rights approach to due process that New York has explicitly rejected.  *In re World Trade Ctr.*, 30 N.Y.3d at 394.  The Florida and Utah courts invalidated the revival laws as *per se* violations of defendants' absolute due process right to a SOL defense.  These states' vested rights approach to SOLs is not compelling here because it directly conflicts with New York law, which does not grant defendants an absolute right to such a defense.  *Id.*  No other state, that permits revival of time-barred claims like New York, has refused to uphold such a law for child sex abuse survivors.[21]

The Legislature's enactment of the CVA revival window provision was a reasonable remedy to an injustice, as New York trial courts and every District Court within the Second

---

Sept. 30, 2021); *T.M. v. Order of St. Benedict of New Jersey, Inc.*, MRS-L-399-17 (N.J. Sup. Ct., Law Div., Morris County); *B.A. v. Golabek*, No. 18CV17523KSHCLW, 2021 WL 5195665, at *6 (D.N.J. Nov. 8, 2021); *W.F. v. Roman Catholic Diocese of Paterson*, No. 20-7020, 2021 WL 2500616 (D.N.J. Jun. 7, 2021); *Coyle v. Salesians of Don Bosco*, No. L-2606-21, 2021 WL 3484547 (N.J. Super .L. July 27, 2021); **NY:** *S.T. v. Diocese of Rockville Centre*, Index No. 099997/2019 (N.Y. Sup. Ct., Nassau Cnty. May 18, 2020) (Jaeger); PB-36 *Doe v. Niagara Falls City Sch. Dist.*, 72 Misc. 3d 1052 (N.Y. Super. Ct. 2021); *Giuffre*, 2020 WL 2123214, at *2 (S.D.N.Y.); *Farrell v. U.S. Olympic & Paralympic Comm.*, No. 120CV1178FJSCFH, 2021 WL 4820251 (N.D.N.Y. Oct. 15, 2021); PC-41 *Doe v. Poly Prep Country Day Sch.*, No. 20CV03628DGSJB, 2021 WL 4310891, at *3 (E.D.N.Y. Sept. 22, 2021); *Torrey v. Portville Cent. Sch.*, 66 Misc. 3d 1225(A) (N.Y. Sup. Ct., Cattaraugus Cnty. 2020); **DC:** *Bell-Kerr v. Baltimore-Washington Conference of the United Methodist Church*, No. 2021 CA 0013531B (D.C. Super. Ct. 1990).

[18]  See *id.*

[19]  **LA:** *See Doe v. Doe*, No. 2020-10745 (La. Civ. Dist. Ct.); **NC:** *Cryan v. YMCA*, No. COA 20-696, 2021 WL 197287 (N.C. App. Nov. 16, 2021).

[20]  **FL:**  *Wiley v. Roof*, 641 So. 2d 66, 69 (Fla. 1994); **UT:** *Mitchell v. Roberts*, No. 20170447, 2020 WL 3118607, at *2 (Utah 2020).  *But see Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) (revival of civil statutes of limitations is constitutional under the United States Constitution).

[21]  In Rhode Island, cases that predate the 1986 adoption of a civil due process clause have upheld revival, but subsequent to that constitutional amendment the Court did not permit revival in *Kelly v. Marcantonio*, 678 A.2d 873 (1996).

Circuit to address the issue has found.  The prevalence of abuse and science of delayed

disclosure together mean that most New York child sex abuse survivors historically have been

blocked from seeking justice by restrictive criminal and civil SOLs.  The Legislature acted

within its authority to open a revival window and enact law that better reflects advanced

understandings of neuroscience and trauma.  The reasonableness of the Legislature's remedy is

supported by the fact that many states across the nation have similar revival laws for child sex

abuse claims.  For all of these reasons, New York's revival window was a reasonable remedy to

the long-standing injustice that New York's short SOLs wrought on the vast majority of child

sex abuse survivors and the public, which also served New York's compelling interest in keeping

its children safe and preventing future child sex abuse.

### C.     The One-Year CVA Window Extension Was a Reasonable Remedy to Address the Added Injustice Survivors Faced Due to the Global Pandemic

Defendant also is incorrect that, even if the CVA's original one-year revival window was

a reasonable response to remedy the injustice to child sexual abuse survivors, the Legislature's

extension of the CVA revival window to a total of two years was "arbitrary" and unconstitutional

under New York's Due Process Clause.  Mot. to Dismiss at 27–28. The one-year extension that

the Legislature passed in 2020, before the original revival window expired, was a reasonable

remedy to the added injustice survivors faced by having their window cut short by the global

pandemic, which closed courts and resulted in other barriers that prevented them from filing their

claims during the revival period.  The pandemic upended the lives of survivors and made it even

more challenging for them to do the legal and emotional work necessary to revisit their

childhood traumas and coordinate with attorneys to file their cases.

Extending the revival window was a reasonable response by the New York Legislature to

the COVID-19 global pandemic, which closed the courts and altered all judicial proceedings for

an unforeseen length of time.  New York was among the states hit hardest by the COVID-19

pandemic beginning during the spring of 2020.  Thompson CN, Baumgartner J, Pichardo C, et

al., *COVID-19 Outbreak — New York City, February 29–June 1, 2020*, Center for Disease

Control & Prevention (Nov. 20, 2020),

https://www.cdc.gov/mmwr/volumes/69/wr/mm6946a2.htm.  On March 22, 2020, with the initial

revival window set to close on August 13, 2020, the New York Office of Court Administration

("OCA") announced an indefinite pause of all non-essential court proceedings, including filings

brought by survivors of child sexual abuse during the one-year revival window.  *Administrative*

*Order of the Chief Administrative Judge of the Courts*, AO/78/20 (Mar. 22, 2020),

https://nycourts.gov/whatsnew/pdf/AO-78-2020.pdf.  Dating from March 2020 until just last

month, the Chief Judge and Chief Administrative Judge of the Courts of the State of New York

issued 59 statewide administrative orders that altered and limited court procedures, accessibility,

and filings.  *Coronavirus and the New York State Courts*, NYCOURTS.GOV (last updated Sept.

14, 2021), https://www.nycourts.gov/latest-AO.shtml.

> In response to these judicial barriers, Senator Brad Hoylman, Chair of the Senate

Judiciary Committee and sponsor of the initial CVA and the legislation extending the window,

stated:

> Pausing all non-essential court filings is a difficult but necessary step to protect
> the health and well-being of our judicial system. When we finally passed the
> Child Victims Act, we attempted to guarantee a full 12-month period for
> survivors to file suit.  **Yet because COVID-19 has indefinitely paused our**
> **judicial system, the CVA's revival window has effectively closed as of today**.

Press Release, *Senator Brad Hoylman Calls For Child Victims Act To Be Extended After*

*COVID-19 Effectively Ends CVA's Look-Back Window* (Mar. 23, 2020),

https://www.nysenate.gov/newsroom/press-releases/brad-hoylman/senator-brad-hoylman-calls-

child-victims-act-be-extended-after (emphasis added).  When Governor Cuomo signed the

legislation that extended the window on August 3, 2020, he stated, "As New York continues to reopen and recover from a public health crisis, extending the look back window is the right thing to do and will help ensure that abusers and those who enabled them are held accountable."

*Governor Cuomo Signs Legislation Extending Look Back Window for Child Victims Act*, Office of Children and Family Services (Aug. 3, 2020),

https://ocfs.ny.gov/main/news/article.php?idx=2137.

The Legislature also considered the hardships that COVID-19 had on the citizens of New York, especially survivors of child sex abuse who were required to manage the emotional toll of coming forward and filing a claim in addition to the typical economic and personal struggles of the pandemic.  Senator Hoylman stated,

> We're in the middle of the worst economic crisis in decades.  Millions of New Yorkers have lost their jobs, and our lives have been turned upside down. It's **unreasonable** to ask survivors to do the legal and emotional work necessary to file CVA claims while simultaneously fighting to keep a roof over their head and food on the table.

*New York State Assembly and Senate Pass Legislation Extending Child Victims Act by One Year as Part of COVID-19 Emergency Relief Package* (May 27, 2020),

https://assembly.state.ny.us/mem/Linda-B-Rosenthal/story/92635 (emphasis added).

Assemblymember Linda Rosenthal, a co-sponsor of the bill, provided a similar assertion, noting:

> Now that COVID-19 has upturned nearly every aspect of life, it has never been clearer that survivors need more time.  Before COVID-19, survivors were already struggling with the emotionally fraught decision of whether to come forward and the practical work of finding an experienced attorney to take their place. In the midst of COVID-19, everyone has had their lives turned upside down. **Under these circumstances, it would be inhumane not to extend the time within which survivors can file a claim**.

*Id.* (emphasis added).

For all of the reasons noted by these legislators, the extension of the initial revival window was a reasonable measure by the Legislature to address the additional injustice to survivors due to the various barriers created by an unprecedented global pandemic.

**D.      The National Constitutional Landscape of Revival Windows Shows a Two-Year Window is a Reasonable Response to Remedy the Injustice of Short SOLs**

New York's extension of the CVA revival window is also a reasonable response when viewed in the context of the national landscape for revival windows related to child sex abuse. New York's original one-year revival window was among the shortest enacted in the country, not just in 2019, but overall.[22]  Twenty jurisdictions have enacted revival windows for child sex abuse claims that are longer than one year.[23]  In fact, Maine, Vermont, Guam, and the Northern Mariana Islands have permanently revived all previously expired claims, opening a window that never closes.[24]  Had the revival window period been two years initially, it would have been a reasonable remedy to the injustice New York survivors faced by short SOLs.

The legislative history of New York's revival window extension of an additional year, which was introduced in January 2020, compares New York with other states and highlights that one year is limiting for victims, even prior to COVID-19.  The Sponsor's Memorandum notes, "[s]everal states that have enacted legislation similar to the Child Victims Act have opted to provide a revival window of longer than one year – most recently New Jersey, which provided a

---

[22]   Michigan is the only state that enacted a shorter window than New York's. *See* Mich. Comp. Laws § 600.5851b; Mont. Code § 27-2-216 (90-day window for Larry Nassar victims).

[23]   *See* sources cited *supra* note 15. The following U.S. jurisdictions enacted windows longer than 1 year: AZ (1.5 years); AR (2 years); CA (3 years); CO (3 years); DE (2 years + 2 years); FL (4 years); GA (2 years); GUAM (permanently open); HI (2 years + 2 years + 2 years); LA (3 years); ME (permanently open); MN (3 years); NV (permanently open); NJ (2 years); NY (2 years); NC (2 years); NMI (permanently open); UT (3 years); VT (permanently open); DC (2 years).

[24]   *Id.*

two-year window that opened in December 2019."  *Sponsors Memorandum*, Assembly Bill No.

A09036, 2019-20 Reg. Sess. (N.Y. 2020).  Senator Brad Hoylman, the bill sponsor, stated,

> It's always been prudent to extend the CVA's revival window by another year,
> matching similar policies in progressive states like California, New Jersey, and
> Hawaii. Now, the massive unexpected interruption to our judicial system makes
> the need for extending the CVA more urgent than ever.

Press Release, *Senator Brad Hoylman Calls For Child*, *supra* p. 16.  Similarly,

Assemblymember Rosenthal acknowledged, "[e]ven before COVID-19, one year was simply not

enough time.  Now that COVID-19 has upturned nearly every aspect of life, it has never been

clearer that survivors need more time."[25]  Press Release, *New York State Assembly and Senate

Pass Legislation Extending Child Victims Act By One Year as Part of COVID-19 Emergency

Relief Package* (May 27, 2020), https://nyassembly.gov/mem/Linda-B-Rosenthal/story/92635.

Additionally, New York is not the only state or territory that extended its revival window for an

additional period after passing an initial window provision, and none of the other extensions

have been found to violate a state's constitutional due process provision.[26]

---

[25]  *See also Survivors, Lawmakers + Safe Horizon: "Leg Must Stay in Remote Session to Pass Child Victims Act Extension,"* READMEDIA (Apr. 7, 2020), http://readme.readmedia.com/Survivors-Lawmakers-Safe-Horizon-Leg-Must-Stay-in-Remote-Session-to-Pass-Child-Victims-Act-Extension/17000016/print. (Assemblymember Rosenthal stated, "Before COVID-19, one year wasn't enough; now in the face of a global pandemic, survivors must be provided with more time.").

[26]  *See* Haw. Rev. Stat. § 657-1.8. (Hawaii enacted a 2-year window in 2012 allowing victims whose claims had been previously time-barred to bring civil actions against a perpetrator or entity that employed the person accused and had a duty of care of the child.  Two years later, the state added another two years to the window and broadened it to include claims against the government.  In 2018, Hawaii added another two-year extension, which left the window open until April 24, 2020); Cal. Civ. Proc. Code § 340.1 (2002, 2020); 2002 Cal. Legis. Serv. Ch. 149 (S.B. 1779); "Child Victims Act", 2019 Cal. Legis. Serv. Ch. 861 (A.B. 218) (In 2003-04, California enacted a 1-year window that revived SOL against private organizations only. Then, in 2020-22, a 3-year revival window was opened on January 1, 2020 for expired claims against perpetrators, private organizations and government.); Del. Code tit. 10, §§ 8145, 6586 (In 2007-09, Delaware enacted a 2-year window that revived SOL against perpetrators, private organizations and government. Then, in 2010-12, a 2-year window was added for healthcare providers because the original window did not apply to claims against them.); GU ST T. 7, § 11301.1 (In 2011, Guam passed a 2-year revival window that revived all claims of child sexual abuse.  In 2016, the Guam legislature opened a permanent revival window for all claims of child sexual abuse that were barred under the previous law.  The window opened on September 23, 2016 and never closes.).

The number of claims that were filed following the extension of New York's revival window also demonstrates that an additional year was a reasonable response by the Legislature in remedying the injustice of short SOLs and addressing the numerous barriers caused by COVID-19.  Historically, states with revival windows resembling the CVA's saw a flood of new claims as deadlines for filing approached.[27]  When New York's CVA opened on August 14, 2019, victims had one year to bring their claims.  As of December 2019, four months into the revival window, more than 1,300 civil suits had been filed against alleged abusers, on behalf of at least 1,700 survivors.  *Sponsors Memorandum*, Assembly Bill No. A09036, 2019-20 Reg. Sess. (N.Y. 2020).  In January 2020, the legislation extending the initial window was introduced, and attorneys estimated they had filed only one-third of their clients' claims under the CVA, with hundreds of cases left to file.  Albert Cooper, *Pandemic Stalls CV Cases in NYC*, BKREADER.COM. (May 2, 2020), https://www.bkreader.com/2020/05/02/pandemic-stalls-cva-cases-in-nyc/.  New York courts closed in March 2020.

---

[27]     *See e.g.*, Dalton, *In Its Two Years, Child Victim's Act Brings 170 Lawsuits Alleging Abuse*, THE NEWS J. (July 9, 2009), https://bartdaltonlaw.com/news/in-its-two-years-child-victims-act-brings-170-lawsuits-alleging-abuse (In Delaware, "scores" of cases were filed in the month before the 2009 deadline.); *see also* Paul Drewes, *Hawaii Courts filling with sex abuse cases*, KITV.COM (Apr. 27, 2020), https://www.kitv.com/story/42061207/hawaii-courts-filling-with-sex-abuse-cases; Yoohyun Jung, *Kamehameha Schools Faces A Spate Of Sex Abuse Claims*, CIVILBEAT.ORG (Apr. 4, 2020), https://www.civilbeat.org/2020/04/kamehameha-schools-faces-a-spate-of-sex-abuse-claims (In Hawaii, "attorneys flock[ed] to the courts" to file claims by the dozens in the weeks leading up to the April 24, 2020 deadline.); Rubén Rosario, *800 claims and counting as child sex-abuse laws nears expiration*, TWINCITIES.COM (May 18, 2016), https://www.twincities.com/2016/05/18/ruben-rosario-800-claims-and-counting-as-child-sex-abuse-law-nears-expiration/; Jean Hopfensperger, *More than 800 sex abuse claims filed under Minnesota law*, STARTRIBUNE.COM (May 23, 2016), https://www.startribune.com/more-than-800-sex-abuse-claims-filed-under-minnesota-law/380524441/. (In Minnesota, an expected surge of new claims as "people . . . just learned about the law."); Phoebe Tollefson, *Montana sees flurry of child sex abuse lawsuits as deadline approaches,* BILLINGSGAZETTE.COM (Apr.  29, 2020),  available  at  https://billingsgazette.com/news/state-and-regional/montana-sees-flurry-of-child-sex-abuse-lawsuits-as-deadline-approaches/article_7b70f900-c3a6-5386-bb3d-bd236407ec94.html. (In Montana, "flurry" of lawsuits as May 6, 2020 window deadline approached.).

By August of 2020, when the original one-year window was set to expire, only 4,241 claims had been filed. After the window was extended, the rate of case filings consistently increased and 6,616 more claims were filed during the second year of the window. In total, survivors filed 10,857 cases pursuant to the CVA window before it ultimately closed. *See* CHILD USA, *Statute of Limitations Reform Services the Public Interest: A Preliminary Report on the New York Child Victims Act* (Aug. 23, 2021) at 5, https://childusa.org/wp-content/uploads/2021/08/A-Preliminary-Report-on-the-New-York-Child-Victims-Act.pdf.[28] The sheer number of filings during the additional year and the fact that more than 60% of the total CVA claims were filed in the second year supports the Legislature's determination that more time was necessary for child sexual abuse survivors to bring their claims and seek justice in the face of barriers related to short SOLs and the global pandemic.

Based on the above legal analysis and legislative history, the CVA's revival window and extension of an additional year were reasonable legislative responses to remedy the injustice experienced by child sexual abuse survivors due to New York's inappropriately short SOLs for such claims and the numerous judicial and logistical barriers of an unprecedented global pandemic.

**CONCLUSION**

For the foregoing reasons, CHILD USA respectfully requests this Court find that the revival provisions of the Child Victims Act, CPLR § 214-G, are constitutional under New York law.

---

[28] *See also* Jay Tokasz, *Buffalo man's testimony 18 years ago paved way for nearly 11,000 Child Victims Act lawsuits*, THE BUFFALO NEWS (Aug. 17, 2021), https://buffalonews.com/news/local/buffalo-mans-testimony-18-years-ago-paved-way-for-nearly-11-000-child-victims-act/article_5425bb80-ffa8-11eb-a0c1-c7506597943e.html.

Dated: November 29, 2021                    Respectfully submitted,


                                            s/ *Marci A. Hamilton*
                                            Marci A. Hamilton, Esq. (*pro hac vice* pending)
                                            *Founder & CEO*, CHILD USA
                                            3508 Market Street, Suite 202
                                            Philadelphia, PA 19104
                                            Tel:  (215) 539-1906
                                            hamilton.marci@gmail.com

                                            *Counsel for CHILD USA*