# EXHIBIT 1

# United States District Court
# Southern District of New York

VIRGINIA L. GIUFFRE,

       Plaintiff,               CASE NO:_____

v.

GHISLAINE MAXWELL,

       Defendant.

_____/

## **<u>COMPLAINT</u>**

                                       Boies Schiller & Flexner LLP
                                       575 Lexington Avenue
                                       New York, NY 10022
                                       (212) 446-2300

Plaintiff, VIRGINIA L. GIUFFRE, formerly known as Virginia Roberts ("Giuffre"), for her Complaint against Defendant, GHISLAINE MAXWELL ("Maxwell"), avers upon personal knowledge as to her own acts and status and otherwise upon information and belief:

## NATURE OF THE ACTION

1.      This suit arises out of Defendant Maxwell's defamatory statements against Plaintiff Giuffre.  As described below, Giuffre was a victim of sexual trafficking and abuse while she was a minor child. Defendant Maxwell not only facilitated that sexual abuse but, most recently, wrongfully subjected Giuffre to public ridicule, contempt and disgrace by, among other things, calling Giuffre a liar in published statements with the malicious intent of discrediting and further damaging Giuffre worldwide.

## JURISDICTION AND VENUE

2.      This is an action for damages in an amount in excess of the minimum jurisdictional limits of this Court.

3.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332 (diversity jurisdiction) as Giuffre and Maxwell are citizens of different states and the amount in controversy exceeds seventy-five thousand ($75,000), exclusive of interest and costs.

4.      This Court has personal jurisdiction over Maxwell.  Maxwell resides in New York City, and this action arose, and defamatory statements were made, within the Southern District of New York.

5.      Venue is proper in this Court as the cause of action arose within the jurisdiction of this Court.

## PARTIES

6.      Plaintiff Giuffre is an individual who is a citizen of the State of Colorado.

7.      Defendant Maxwell, who is domiciled in the Southern District of New York, is not a citizen of the state of Colorado.

## FACTUAL ALLEGATIONS

8.      Virginia Giuffre became a victim of sex trafficking and repeated sexual abuse after being recruited by Ghislaine Maxwell and Jeffrey Epstein when Giuffre was under the age of eighteen.

9.      Between 1999 and 2002, with the assistance and participation of Maxwell, Epstein sexually abused Giuffre at numerous locations including his mansions in West Palm Beach, Florida, and in this District.  Between 2001 and 2007, with the assistance of numerous co-conspirators, Epstein abused more than thirty (30) minor underage girls, a fact confirmed by state and federal law enforcement.

10.      As part of their sex trafficking efforts, Epstein and Maxwell intimidated Giuffre into remaining silent about what had happened to her.

11.      In September 2007, Epstein entered into a Non-Prosecution Agreement ("NPA") that barred his prosecution for numerous federal sex crimes in the Southern District of Florida.

12.      In the NPA, the United States additionally agreed that it would not institute any federal criminal charges against any potential co-conspirators of Epstein.

13.      As a co-conspirator of Epstein, Maxwell was consequently granted immunity in the Southern District of Florida through the NPA.

14.      Epstein ultimately pled guilty to procuring a minor for prostitution, and is now a registered sex offender.

15.     Rather than confer with the victims about the NPA, the U.S. Attorney's Office and Epstein agreed to a "confidentiality" provision in the Agreement barring its disclosure to anyone—including Epstein's victims.  As a consequence, the victims were not told about the NPA.

16.     On July 7, 2008, a young woman identified as Jane Doe No. 1, one of Jeffrey Epstein's victims (other than Giuffre), filed a petition to enforce her rights under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. ¶ 3771, alleging that the Government failed to provide her the rights promised in the CVRA with regard to the plea arrangement with Epstein. The litigation remains ongoing.

17.     On or about May 4, 2009, Virginia Giuffre—identified then as Jane Doe No. 102—filed a complaint against Jeffrey Epstein in the United States District Court for the Southern District of Florida.  The complaint included allegations made by Giuffre that pertained to Maxwell.

18.     In pertinent part, the Jane Doe No. 102 complaint described in detail how Maxwell recruited Giuffre (who was then a minor girl) to become a victim of sex trafficking by introducing Giuffre to Jeffrey Epstein.  With the assistance of Maxwell, Epstein was able to sexually abuse Giuffre for years until Giuffre eventually escaped.

19.     The Jane Doe No. 102 complaint contained the first public allegations made on behalf of Giuffre regarding Maxwell.

20.     As civil litigation against Epstein moved forward on behalf of Giuffre and many other similarly-situated victims, Maxwell was served with a subpoena for deposition.  Her testimony was sought concerning her personal knowledge and role in Epstein's abuse of Giuffre and others.

Case 1:15-cv-07433-RWS  Document 4-1  Filed 04/24/15  Page 6 of 13

21.     To avoid her deposition, Maxwell claimed that her mother fell deathly ill and that consequently she was leaving the United States for London with no plans of ever returning.  In fact, however, within weeks of using that excuse to avoid testifying, Maxwell had returned to New York.

22.     In 2011, two FBI agents located Giuffre in Australia—where she had been hiding from Epstein and Maxwell for several years—and arranged to meet with her at the U.S. Consulate in Sidney.  Giuffre provided truthful and accurate information to the FBI about Epstein and Maxwell's sexual abuse.

23.     Ultimately, as a mother and one of Epstein's many victims, Giuffre believed that she should speak out about her sexual abuse experiences in hopes of helping others who had also suffered from sexual trafficking and abuse.

24.     On December 23, 2014, Giuffre incorporated an organization called Victims Refuse Silence, Inc., a Florida not-for-profit corporation.

25.     Giuffre intended Victims Refuse Silence to change and improve the fight against sexual abuse and human trafficking.  The goal of her organization was, and continues to be, to help survivors surmount the shame, silence, and intimidation typically experienced by victims of sexual abuse.  Giuffre has now dedicated her professional life to helping victims of sex trafficking.

26.      On December 30, 2014, Giuffre moved to join the on-going litigation previously filed by Jane Doe 1 in the Southern District of Florida challenging Epstein's non-prosecution agreement by filing her own joinder motion.

27.     Giuffre's motion described Maxwell's role as one of the main women who Epstein used to procure under-aged girls for sexual activities and a primary co-conspirator and participant in his sexual abuse and sex trafficking scheme.

28.     In January, 2015, Maxwell undertook a concerted and malicious campaign to discredit Giuffre and to so damage her reputation that Giuffre's factual reporting of what had happened to her would not be credited.

29.     As part of Maxwell's campaign she directed her agent, Ross Gow, to attack Giuffre's honesty and truthfulness and to accuse Giuffre of lying.

30.     On or about January 3, 2015, speaking through her authorized agent, Maxwell issued an additional false statement to the media and public designed to maliciously discredit Giuffre.  That statement contained the following deliberate falsehoods:

(a)     That Giuffre's sworn allegations "**against Ghislaine Maxwell are untrue.**"

(b)     That the allegations have been "shown to be untrue."

(c)     That Giuffre's "**claims are <u>obvious lies</u>.**"

31.     Maxwell's January 3, 2015, statement incorporated by reference "Ghislaine Maxwell's original response to the lies and defamatory claims remains the same," an earlier statement that had falsely described Giuffre's factual assertions as "entirely false" and "entirely untrue."

32.     Maxwell made the same false and defamatory statements as set forth above, in the Southern District of New York and elsewhere in a deliberate effort to maliciously discredit Giuffre and silence her efforts to expose sex crimes committed around the world by Maxwell, Epstein, and other powerful persons.  Maxwell did so with the purpose and effect of having

others repeat such false and defamatory statements and thereby further damaged Giuffre's reputation.

33.     Maxwell made her statements to discredit Giuffre in close consultation with Epstein.  Maxwell made her statements knowing full well they were false.

34.     Maxwell made her statements maliciously as part of an effort to conceal sex trafficking crimes committed around the world by Maxwell, Epstein and other powerful persons.

35.     Maxwell intended her false and defamatory statements set out above to be broadcast around the world and to intimidate and silence Giuffre from making further efforts to expose sex crimes committed by Maxwell, Epstein, and other powerful persons.

36.     Maxwell intended her false statements to be specific statements of fact, including a statement that she had not recruited an underage Giuffre for Epstein's abuse.  Maxwell's false statements were broadcast around the world and were reasonably understood by those who heard them to be specific factual claims by Maxwell that she had not helped Epstein recruit or sexually abuse Giuffre and that Giuffre was a liar.

37.     On or about January 4, 2015, Maxwell continued her campaign to falsely and maliciously discredit Giuffre.  When a reporter on a Manhattan street asked Maxwell about Giuffre's allegations against Maxwell, she responded by saying: "I am referring to the statement that we made."  *The New York Daily News* published a video of this response by Maxwell indicating that she made her false statements on East 65th Street in Manhattan, New York, within the Southern District of New York.

## COUNT I
## DEFAMATION

1.     Plaintiff Giuffre re-alleges paragraphs 1 - 37 as if the same were fully set forth herein.  Maxwell made her false and defamatory statements deliberately and maliciously with the intent to intimidate, discredit and defame Giuffre.

2.     In January 2015, and thereafter, Maxwell intentionally and maliciously released to the press her false statements about Giuffre in an attempt to destroy Giuffre's reputation and cause her to lose all credibility in her efforts to help victims of sex trafficking.

3.     Maxwell additionally released to the press her false statements with knowledge that her words would dilute, discredit and neutralize Giuffre's public and private messages to sexual abuse victims and ultimately prevent Giuffre from effectively providing assistance and advocacy on behalf of other victims of sex trafficking, or to expose her abusers.

4.     Using her role as a powerful figure with powerful friends, Maxwell's statements were published internationally for the malicious purpose of further damaging a sexual abuse and sexual trafficking victim; to destroy Giuffre's reputation and credibility; to cause the world to disbelieve Giuffre; and to destroy Giuffre's efforts to use her experience to help others suffering as sex trafficking victims.

5.     Maxwell, personally and through her authorized agent, Ross Gow, intentionally and maliciously made false and damaging statements of fact concerning Giuffre, as detailed above, in the Southern District of New York and elsewhere.

6.     The false statements made by Gow were all made by him as Maxwell's authorized agent and were made with direct and actual authority from Maxwell as the principal.

7.     The false statements that Maxwell made personally, and through her authorized agent Gow, not only called Giuffre's truthfulness and integrity into question, but also exposed Giuffre to public hatred, contempt, ridicule, and disgrace.

8.     Maxwell made her false statements knowing full well that they were completely false.  Accordingly, she made her statements with actual and deliberate malice, the highest degree of awareness of falsity.

9.     Maxwell's false statements constitute libel, as she knew that they were going to be transmitted in writing, widely disseminated on the internet and in print.  Maxwell intended her false statements to be published by newspaper and other media outlets internationally, and they were, in fact, published globally, including within the Southern District of New York.

10.     Maxwell's false statements constitute libel per se inasmuch as they exposed Giuffre to public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of her in the minds of right-thinking persons.

11.     Maxwell's false statements also constitute libel per se inasmuch as they tended to injure Giuffre in her professional capacity as the president of a non-profit corporation designed to help victims of sex trafficking, and inasmuch as they destroyed her credibility and reputation among members of the community that seeks her help and that she seeks to serve.

12.     Maxwell's false statements directly stated and also implied that in speaking out against sex trafficking Giuffre acted with fraud, dishonesty, and unfitness for the task. Maxwell's false statements directly and indirectly indicate that Giuffre lied about being recruited by Maxwell and sexually abused by Epstein and Maxwell. Maxwell's false statements were reasonably understood by many persons who read her statements as conveying that specific intention and meaning.

13.     Maxwell's false statements were reasonably understood by many persons who read those statements as making specific factual claims that Giuffre was lying about specific facts.

14.     Maxwell specifically directed her false statements at Giuffre's true public description of factual events, and many persons who read Maxwell's statements reasonably understood that those statements referred directly to Giuffre's account of her life as a young teenager with Maxwell and Epstein.

15.     Maxwell intended her false statements to be widely published and disseminated on television, through newspapers, by word of mouth and on the internet.  As intended by Maxwell, her statements were published and disseminated around the world.

16.      Maxwell coordinated her false statements with other media efforts made by Epstein and other powerful persons acting as Epstein's representatives and surrogates.  Maxwell made and coordinated her statements in the Southern District of New York and elsewhere with the specific intent to amplify the defamatory effect those statements would have on Giuffre's reputation and credibility.

17.     Maxwell made her false statements both directly and through agents who, with her general and specific authorization, adopted, distributed, and published the false statements on Maxwell's behalf.  In addition, Maxwell and her authorized agents made false statements in reckless disregard of their truth or falsity and with malicious intent to destroy Giuffre's reputation and credibility; to prevent her from further disseminating her life story; and to cause persons hearing or reading Giuffre's descriptions of truthful facts to disbelieve her entirely. Maxwell made her false statements wantonly and with the specific intent to maliciously damage Giuffre's good name and reputation in a way that would destroy her efforts to administer her

non-profit foundation, or share her life story, and thereby help others who have suffered from sexual abuse.

18.     As a result of Maxwell's campaign to spread false, discrediting and defamatory statements about Giuffre, Giuffre suffered substantial damages in an amount to be proven at trial.

19.     Maxwell's false statements have caused, and continue to cause, Giuffre economic damage, psychological pain and suffering, mental anguish and emotional distress, and other direct and consequential damages and losses.

20.     Maxwell's campaign to spread her false statements internationally was unusual and particularly egregious conduct.  Maxwell sexually abused Giuffre and helped Epstein to sexually abuse Giuffre, and then, in order to avoid having these crimes discovered, Maxwell wantonly and maliciously set out to falsely accuse, defame, and discredit Giuffre.  In so doing, Maxwell's efforts constituted a public wrong by deterring, damaging, and setting back Giuffre's efforts to help victims of sex trafficking. Accordingly, this is a case in which exemplary and punitive damages are appropriate.

21.     Punitive and exemplary damages are necessary in this case to deter Maxwell and others from wantonly and maliciously using a campaign of lies to discredit Giuffre and other victims of sex trafficking.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Giuffre respectfully requests judgment against Defendant Maxwell, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial, but in excess of the $75,000 jurisdictional requirement; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all causes of action asserted within this

pleading.

Dated September 21, 2015.


/s/ David Boies
David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

/s/ Sigrid McCawley
Sigrid McCawley
(Pro Hac Vice Pending)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

/s/ Ellen Brockman
Ellen Brockman
Boies Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300