ML4NGIUO

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   VIRGINIA L. GIUFFRE,

4                   Plaintiff,

5             v.                          21 Civ. 6702 (LAK)

6   PRINCE ANDREW,

7                   Defendant.
                                          Oral Argument
8   ------------------------------x
                                          New York, N.Y.
9                                         January 4, 2022
                                          10:00 a.m.
10
    Before:
11
                        HON. LEWIS A. KAPLAN,
12
                                          District Judge
13

14                  APPEARANCES (Via Microsoft Teams)

15  BOIES SCHILLER & FLEXNER LLP
         Attorneys for Plaintiff
16  BY:  DAVID BOIES
         SIGRID S. McCAWLEY
17       ANDREW VILLACASTIN
         MARY BOIES
18
    LAVELY & SINGER
19       Attorneys for Defendant
    BY:  ANDREW B. BRETTLER
20       MELISSA LERNER

21

22

23

24

25

ML4NGIUO

1          THE DEPUTY CLERK:  Good morning.  This is Judge

2     Kaplan's clerk.  Giuffre v. Prince Andrew.

3          Counsel for plaintiff, are you ready?

4          MR. BOIES:  Yes, we are.

5          THE DEPUTY CLERK:  Could you please put your

6     appearances on the record.

7          MR. BOIES:  This is David Boies of Boies Schiller &

8     Flexner.  With me in my office in Armonk is Andrew Villacastin

9     and Mary Boies of my firm.  Other members of the firm have

10    joined remotely and will identify themselves.

11         THE DEPUTY CLERK:  Thank you.

12         Counsel for defendant, are you ready?

13         MR. BRETTLER:  Yes.  Good morning, we're ready.  This

14    is Andrew Brettler of Lavely & Singer.  I'm joined by my

15    colleague Melissa Lerner of Lavely & Singer.

16         THE DEPUTY CLERK:  Thank you.

17         THE COURT:  All right.  Good morning, everybody.

18         MR. BOIES:  Good morning, your Honor.

19         MR. BRETTLER:  Good morning, your Honor.

20         THE COURT:  For the benefit of those on the audio

21    connections, let me say that any broadcasting or audio or video

22    recording of these proceedings is strictly prohibited.

23         Let me just get adjusted here and we'll start right

24    off.

25         Okay.  Mr. Brettler, it's your motion.  I will figure

ML4NGIUO

1  about 20 minutes a side, but we may run over.

2          MR. BRETTLER:  Thank you, your Honor.

3          Good morning and happy new year.

4          THE COURT:  Same to you.

5          MR. BRETTLER:  Thank you very much.

6          I think we should jump right into the issue of the

7  release, your Honor.  All of the arguments obviously are fully

8  briefed in our opening motion and in our reply, but I think

9  that the release is the place to start.

10          Prince Andrew contends that the 2009 settlement and

11  release agreement that she entered into with Jeffrey Epstein

12  unequivocally bars any claims that she could assert against

13  Prince Andrew.

14          The language of the release is agreement is extremely

15  broad, as your Honor, I'm sure, has noticed.  The agreement

16  itself releases other potential defendants whom Giuffre could

17  have sued.  The "other potential defendants" is not specified

18  who those individuals are by name, but Ms. Giuffre's complaint

19  in that 2009 action suggests who they may be.

20          Ms. Giuffre has alleged that Jeffrey Epstein

21  trafficked her to a number of individuals, forced her into sex

22  slavery, and she claims that she was forced to have sex or be

23  sexually abused by many people, including members of academia,

24  including businessmen and the category of royalty.

25          There would be no doubt that by the time that

ML4NGIUO

1    Ms. Giuffre entered into the 2009 --

2              THE COURT:  Excuse me, Mr. Brettler.

3              MR. BRETTLER:  Yes, your Honor.

4              THE COURT:  Isn't it true as a literal matter that

5    anyone in the world could have been sued in that action?  All

6    you have to do is include the name of the person in the

7    caption?

8              MR. BRETTLER:  No, not at all, your Honor.  I mean, of

9    course in this country anyone can pay a filing fee and sue

10   anybody, but it needs to be a viable claim.  And the category

11   or the universe of --

12             THE COURT:  So that if the somebody you wanted to add

13   was not subject to the jurisdiction of the Court, that's not a

14   viable claim, right?

15             MR. BRETTLER:  Well, we would argue, your Honor,

16   Prince Andrew certainly was subject to the jurisdiction of the

17   Southern District of Florida court by virtue of the nature of

18   the allegations.

19             In that lawsuit Ms. Giuffre accused Mr. Epstein of

20   running a sex trafficking enterprise of which all of these

21   other individuals and entities, including Prince Andrew,

22   Professor Dershowitz, many others, were coconspirators of

23   Mr. Epstein.  And just by that allegation alone --

24             THE COURT:  A complaint could have been filed that

25   named the head football coach at the University of Kansas,

ML4NGIUO

1  right?  Not to pick on Kansas.

2          MR. BRETTLER:  Well, certainly, your Honor, again, in

3  this country anyone can file a lawsuit against anyone if you

4  pay the filing fee.  But there was never a contemplation in the

5  actual complaint that Ms. Giuffre filed in 2009 that the head

6  football coach of Kansas participated in any wrongdoing.  There

7  was an allegation in her complaint that she was sex trafficked

8  to members of royalty and to businessmen and to members of

9  academia.  The broad release language of "other potential

10  defendants" had to mean something.  You know, it goes beyond

11  Mr. Epstein, his lawyers, and his associates, because those

12  parties were defined as second parties in the agreement.

13          THE COURT:  Why couldn't it reasonably be understood

14  as meaning others who could have been brought within the power

15  of the Florida court and as to whom a judgment could have been

16  entered on the merits in the event the plaintiff prevailed?

17          Why not?

18          MR. BRETTLER:  It certainly could mean that, your

19  Honor.  In which case --

20          THE COURT:  Isn't that the end of this point then?  If

21  it could mean that, and it could mean what you say, isn't it as

22  a matter of law ambiguous and a question for a jury?

23          MR. BRETTLER:  No.  It's certainly not ambiguous, your

24  Honor.  The intent is plainly written in the agreement itself,

25  where it defines Jeffrey Epstein and his attorneys and his

ML4NGIUO

```
1    associates as second parties, and then it includes a second

2    category of releasees called "other potential defendants."

3            Based on the plain reading of the agreement, there is

4    no ambiguity that there were intended third-party

5    beneficiaries.

6            Sorry.  I heard somebody speak.

7            There would be no question, there's no ambiguity that

8    "other potential defendants" had some meaning ascribed to it,

9    and Ms. Giuffre intended to release many other individuals

10   beyond the second parties, Mr. Epstein, his attorneys, his

11   associates, and employees.

12           THE COURT:  Why couldn't she have intended to release

13   other people who were subject to the personal jurisdiction of

14   the Florida court?

15           MR. BRETTLER:  I think it does mean that, your Honor.

16   The meaning of "other potential defendants" certainly would

17   include anyone who is subject to the potential jurisdiction of

18   the court, and also people --

19           THE COURT:  It doesn't say "potential jurisdiction."

20   It says "potential defendants."

21           MR. BRETTLER:  I misspoke, your Honor.

22           "Other potential defendants" could mean anyone subject

23   to the jurisdiction of the court, and the court here in the

24   Southern District of Florida would have had personal

25   jurisdiction over Prince Andrew had she alleged a claim against
```

ML4NGIUO

1    him in 2009.

2              THE COURT:  On what basis?

3              MR. BRETTLER:  On the basis that she has accused

4    Prince Andrew of being part of this criminal enterprise, the

5    sex trafficking conspiracy.  She also --

6              THE COURT:  She accused him of being a beneficiary of

7    the enterprise, not a participant as I read it.

8              MR. BRETTLER:  I think our readings are different than

9    your Honor.  She claims that she was trafficked to a bunch of

10   different categories of individuals, including royalty,

11   academia, businessmen.  Those individuals would be part of the

12   same enterprise, especially because she contends that Prince

13   Andrew was aware that she was being trafficked.  It wasn't as

14   if she is alleging that this was some secret trafficking

15   arrangement.

16             She claims -- obviously we contest and deny -- that

17   Prince Andrew knew that she was being sexually trafficked and

18   took advantage of her and sexually abused her.  That clearly

19   brings Prince Andrew into the ambit of "other potential

20   defendants."

21             In addition, she listed the category of royalty in her

22   complaint as the people who have allegedly abused her.

23             LAW CLERK:  Excuse me, Judge.  Sorry to interrupt.

24   This is James, Judge Kaplan's law clerk.  I just have been

25   informed that the broadcast is not transmitting to the number

ML4NGIUO

1    that the public is connecting to.  Do you want to hold off and

2    try to troubleshoot that or continue, Judge?

3              THE COURT:  No.  We are going to continue, but please

4    contact Andy Mohan and get him to get it fixed.

5              LAW CLERK:  We're working on it.

6              MR. BRETTLER:  Sorry, your Honor.

7              If I may continue, Ms. Giuffre's allegations in this

8    complaint are that Prince Andrew was aware of the sex

9    trafficking scheme, and he acted in furtherance of that scheme.

10   As a coconspirator, undoubtedly he would be subject --

11             THE COURT:  How did he further it?

12             How did he allegedly further it?

13             MR. BRETTLER:  Ms. Giuffre alleges that because he was

14   aware of the sex trafficking and agreed, according to

15   Ms. Giuffre, to have sex with her or to sexually abuse her,

16   that he was furthering that scheme and allowing her to be

17   trafficked to him to other individuals.

18             Obviously, Prince Andrew denies and disputes those

19   allegations, but those are her allegations in this lawsuit, not

20   only in this lawsuit but in the 2009 lawsuit that she filed in

21   the Southern District of Florida and settled in 2009, receiving

22   payment from Mr. Epstein and releasing him, his associates, and

23   all other potential defendants.

24             That phrase has to be given meaning, and Ms. Giuffre

25   and her legal team have not ascribed any other potentially

ML4NGIUO

1 reasonable meaning to "other potential defendants."  It must go

2 beyond Mr. Epstein or this broad category, you know, that the

3 head football coach of the university of Kansas could fit into.

4    THE COURT:  What is a potential defendant as

5 distinguished from a defendant?

6    MR. BRETTLER:  A defendant in that case would be

7 someone actually named in the lawsuit, for instance, Jeffrey

8 Epstein.  He was obviously named as a defendant.  A potential

9 defendant is someone who Ms. Giuffre knew that she had claims

10 against at the time that she filed the lawsuit, did not

11 necessarily name that individual --

12    THE COURT:  Mr. Brettler, the relevant language is

13 "all other persons who could have been named in the lawsuit,"

14 and it's then converted into a defined term, "other potential

15 defendants."

16    Now, by definition, that excludes anybody who already

17 had been named as a defendant.  What's a potential defendant as

18 opposed to someone who could have been named as a defendant but

19 had not been?

20    MR. BRETTLER:  I don't think there would be a

21 distinction, your Honor.  In that case it's just a distinction

22 without a difference, if it's a distinction at all.

23    THE COURT:  Yes.

24    And that comes to another point, doesn't it?  Because

25 the word "potential" must have meant something, and if there's

ML4NGIUO

1   no difference, it means nothing.

2           MR. BRETTLER:  No, we agree that it meant something.

3   I thought your Honor's question was what is the difference

4   between a potential defendant and a defendant who wasn't named.

5   I think those are the same thing.

6           THE COURT:  I agree with you.

7           MR. BRETTLER:  Right.  And Prince Andrew was not

8   named.

9           THE COURT:  At least on the face of it I agree with

10   you.  But this is an instance where the use of the word

11   "potential" is the use of a word to which neither you nor I can

12   find any meaning at all.

13           MR. BRETTLER:  I respectfully disagree, your Honor.  A

14   potential defendant is someone who could have been named as a

15   defendant in that lawsuit but was not, unlike this head coach

16   at the University of Kansas.

17           THE COURT:  That's a difference, is it?  That it is

18   someone who could have been named and was not?

19           MR. BRETTLER:  Pardon me, your Honor?

20           THE COURT:  Excuse me.  You were saying I think that

21   that's different from saying someone who was not named as a

22   defendant.  I want to understand how.

23           MR. BRETTLER:  Right.  Someone who was not named as a

24   defendant but could have been by virtue of the allegations that

25   Ms. Giuffre was aware of at the time and had articulated, at

ML4NGIUO

1    least in broad strokes in her complaint, to include Prince

2    Andrew.

3                I Think it's unquestionable that Prince Andrew could

4    have been sued in the 2009 Florida action.  He was not.  And,

5    therefore, he was a potential defendant and a releasee under

6    the 2009 settlement agreement by its unambiguous terms.

7                I don't even understand how there could be any

8    question as to whether "other potential defendants" had a

9    meaning ascribed to it.  Clearly it did.  Clearly Ms. Giuffre

10   intended to release a broad category of individuals, including

11   royalty, including businessmen.  And the fact that she --

12               THE COURT:  So this would include, you know, the

13   Sultan of Brunei, too, right?

14               MR. BRETTLER:  If there were allegation against the

15   Sultan of Brunei, then absolutely it would.  It certainly is

16   evidenced by the fact that she did in fact intend to dismiss

17   Professor -- or release Professor Dershowitz from any liability

18   as when this release was raised to her as a potential defense,

19   and under threat of Rule 11 sanctions Ms. Giuffre dismissed her

20   claims against Professor Dershowitz.

21               THE COURT:  None of that is in the record.

22               And, secondly, to the extent I've seen documents

23   outside the record, they're not consistent with that.

24               And, thirdly, Mr. Dershowitz was an attorney for

25   Epstein, and attorneys were released specifically in the other

ML4NGIUO

1  part of the clause you rely on.

2          MR. BRETTLER:  It is true that he was an attorney for

3  Epstein.  He was not an attorney for Epstein in that case to my

4  knowledge.  And I don't believe it's accurate --

5          THE COURT:  So what?  So what?

6          MR. BRETTLER:  Well, in settlement agreements, your

7  Honor, not all attorneys are released from liability when

8  language says that, you know, "the party and his attorneys."

9  That means his attorneys in that case, not every attorney in

10  the world.

11          THE COURT:  Well, I mean, I understand that you are

12  asserting that, but that doesn't mean it's true.  "True" is the

13  wrong word to use.  It doesn't mean it's correct.  There could

14  be a different view.

15          MR. BRETTLER:  There could be a different view.  I

16  don't think the Court needs to get to a different view, given

17  the plain language of the statute, which all of the case law

18  instructs us is what we are supposed to look at to examine what

19  the party's intent in reaching that agreement was.

20          Your Honor had mentioned that the dismissal of

21  Mr. Dershowitz or Professor Dershowitz is not in the record,

22  but my understanding is that the Court said that it would take

23  judicial notice of the pleadings that were filed in other

24  actions with this Court.  That is one of the pleadings that was

25  filed.

ML4NGIUO

```
1              THE COURT:  If I think it is appropriate.

2              MR. BRETTLER:  Pardon?

3              THE COURT:  If I think it is appropriate.

4              MR. BRETTLER:  Absolutely, your Honor.  Of course.  If

5    the Court thinks it is appropriate to take judicial notice of

6    it, that document and that dismissal would be in the record.

7              But it is clear that the release agreement itself was

8    intended to include other peoples, or other persons besides

9    Mr. Epstein and his legal team and his closest associates.  The

10   term "other potential defendants" was intended to have a

11   meaning.  It did have a meaning.  And the fact that Ms. Giuffre

12   made allegations against royalty and academia and businessmen

13   to whom she was allegedly trafficked would certainly indicate

14   to any reasonable person reading that agreement that she

15   intended to release those claims.

16             And that would make sense from, you know, any outsider

17   looking at the reasons why these parties would enter into such

18   an agreement, Mr. Epstein would never want to have to be

19   dragged back into a lawsuit were she to sue Prince Andrew later

20   and Mr. Epstein would then have to be subpoenaed and to give

21   testimony.  He's trying to resolve all claims, fully --

22             THE COURT:  I understand that that's a possible and

23   let's assume for the sake of argument a reasonable view.  But

24   we don't have Mr. Epstein here to say that's in fact what his

25   view was.
```

ML4NGIUO

1       And there is another view.  The other view might be

2   this:  Mr. Epstein was offering X dollars to get the broadest

3   release, let's assume, that the other party was willing to give

4   him.

5       From the other party's point of view, the objective

6   might well have been to give the narrowest release that she

7   could give, thus preserving her options against other people in

8   the future for the maximum price.

9       Wouldn't you agree?

10      MR. BRETTLER:  Your Honor, I don't -- I certainly

11  agree with the concept that she would want to give the most

12  limited release possible, but that completely is at odds with

13  the language in the agreement that includes a very, very broad

14  release of other potential defendants.  That is not consistent

15  with the notion that she wanted to limit her release to

16  Mr. Epstein or his attorneys or his associates.

17      THE COURT:  But the limitation may well inhere in the

18  use of the phrase "other potential defendants" as it's more

19  specifically defined elsewhere in Section 2.  "Who could have

20  been included as a potential defendant," that's the operative

21  language.

22      MR. BRETTLER:  That's correct.

23      THE COURT:  So the real question is what did she have

24  in mind and what did he have in mind, if anything, in referring

25  to persons who could have been included?

ML4NGIUO

1          MR. BRETTLER:  We are instructed, your Honor, under

2     the case law to look at the plain language of the contract.

3     And the fact that there could be a different view is not the

4     rule for admission of parol evidence.

5          THE COURT:  We are not talking about the parol

6     evidence rule now.  We are talking about the question of

7     whether there are two or more reasonable interpretations of the

8     language "who could have been included as a defendant."

9          I understand your point of view.  I understand also

10    the other point of view; that is, that it was narrower than you

11    suggested.  And certainly if what the intention of the parties

12    had been would have been to release any other person or entity

13    who was in any way involved in any of the sexual activities

14    with Mr. Epstein or others, it would have been easy to say it.

15    Those are two, it seems to me at least on the face of it,

16    possibly reasonable all tentative views.

17         MR. BRETTLER:  I don't disagree that it would have

18    been easier to say it, your Honor.  It also would have been

19    easy to leave out this phrase "other potential defendants."

20    There's no reason, if she was looking for a limited release, to

21    include such a broad encompassing group of people.

22         THE COURT:  Maybe Epstein wouldn't give her the half a

23    million dollars for clearer language, clearer language

24    protective of her.

25         MR. BRETTLER:  I don't know why she would agree to

ML4NGIUO

1    include such broad release language if she were looking to

2    limit her release to Jeffrey Epstein only.  She could have

3    stopped it at, "we are releasing the second parties."

4            THE COURT:  She could have, but that's not the only

5    alternative.

6            MR. BRETTLER:  I don't know what another reasonable

7    alternative would be, because clearly the phrase "other

8    potential defendants" has to have some meaning beyond that of

9    the second parties.

10           THE COURT:  But your adversary doesn't argue that it

11   is limited to the second parties.  That's not the point they

12   make.

13           MR. BRETTLER:  Who would it be limited to?  I think

14   that is the point.  Unless I'm misunderstanding my adversary's

15   argument, I don't know who would be included in "other

16   potential defendants" if it weren't all of these other people

17   who Ms. Giuffre alleged abused her.  She could have sued them

18   and she did not.  And therefore she waived her rights to sue

19   them when she entered into the 2009 release agreement and

20   accepted the money from Mr. Epstein.  She didn't return that

21   money.  She didn't return that money when she decided to file

22   this lawsuit.

23           THE COURT:  Okay.  I think we've covered this point as

24   well as it's going to be covered.  If you want to take a few

25   minutes on the next point, now would be the time.

ML4NGIUO

1          MR. BRETTLER:  Thank you, your Honor.

2          The next point is the sufficiency of -- the next point

3     I would like to raise, your Honor, is the sufficiency of the

4     allegations themselves in the complaint.

5          Ms. Giuffre needs to lock herself into a story now,

6     not some time in the future after she conducts discovery and

7     figures out where the chips may fall.  She needs to allege

8     today, she needs to allege in her complaint against Prince

9     Andrew when he supposedly abused her.

10          I would like even a date, a month.  We would settle

11     for a year.  Right now all we have is that she was supposedly

12     17 years old.  It could have spanned over, I guess, two

13     calendar years.

14          We don't even have a date, a time, a location other

15     than an apartment.  We don't know when this was.  And

16     Ms. Giuffre doesn't articulate what supposedly happened to her

17     at the hands of Prince Andrew.

18          She alleges in a group pleading fashion that Epstein,

19     Ghislaine Maxwell, and Prince Andrew abused her in conclusory

20     fashion.  She doesn't explain what this alleged abuse was.  She

21     was over the age of consent in New York, so she has to allege

22     that she was forcibly compelled to engage in unwanted sexual

23     contact.  She does not allege that.

24          We do not know the details of this allegation, and

25     it's time that we do.  Before Prince Andrew should be required

ML4NGIUO

1    to answer these very serious allegations, he should be told

2    what the allegations are.  Specifically, not --

3          THE COURT:  With all due respect, Mr. Brettler, that's

4    not a dog that's going to hunt here.  I am sure you are as

5    familiar with the rules of pleading as I am, and she has no

6    obligation to do that in the complaint.  I'll tell you that

7    straight up right now.  It is not going to happen.  You have

8    every right to that information when the parties engage in

9    discovery.

10          MR. BRETTLER:  Your Honor, we would argue that her

11    claims should be tested in discovery.  We shouldn't learn for

12    the first time in discovery when this alleged abuse occurred or

13    what the alleged abuse was.  We should be told in the

14    complaint.  If she's going to file a lawsuit alleging very

15    serious allegations that are 20 years old, we should be told

16    what those allegations were at the outset of this case, not

17    sometime in the future after she's able to test her theory.

18          THE COURT:  Mr. Brettler, I understand your point.  It

19    just isn't the law.

20          MR. BRETTLER:  Okay.

21          Your Honor, I respectfully disagree that it is not the

22    law, especially in a case that she's bringing under the CVA,

23    where the only way that she can allege a complaint against

24    Prince Andrew 20 years after alleged abuse is for her to meet

25    the requirements of a 130 violation under the New York Penal

ML4NGIUO

1    Code.  She doesn't plead that in the complaint.

2            Ms. Giuffre does not complain how she was forcibly

3    compelled, if she was forcibly compelled, what the alleged

4    misconduct was.  All she says is, in conclusory fashion, that

5    she was sexually abused or forced to engage in sexual contact

6    against her will.  That is not enough to even articulate a

7    claim under Article 130 of the New York Penal Law.

8            We allege, your Honor, also that based on these

9    same --

10           THE COURT:  Counsel, you know for a certainty that I'm

11   obliged to accept as true on this motion the well-pleaded

12   factual allegations of the complaint.

13           Paragraph 37, "On one occasion Prince Andrew sexually

14   abused Plaintiff in London at Maxwell's home.  During this

15   encounter, Epstein, Maxwell, and Prince Andrew forced

16   plaintiff, a child, to have sexual intercourse with Prince

17   Andrew against her will."

18           I must assume the truth of that allegation.

19           MR. BRETTLER:  Your Honor, that is a quintessential

20   example of group pleading.  She alleges that Prince Andrew,

21   Ghislaine Maxwell, and Jeffrey Epstein supposedly forced her to

22   do something against her will.  We don't know who forced her.

23   We don't know how she was allegedly forced.  We don't even know

24   what the alleged sexual misconduct was or when it occurred

25   based on that allegation.

ML4NGIUO

1          THE COURT:  It was sexual intercourse, involuntary

2     sexual intercourse.

3          There isn't any doubt about what that means, at least

4     not since someone else was in the White House.

5          MR. BRETTLER:  Well, your Honor, under Article 130 she

6     needs to allege more than involuntary sexual intercourse given

7     that she was of the age of consent in New York.  She needs to

8     allege that she was forcibly compelled.  And that means an

9     imminent threat of death, an imminent threat of harm, and there

10    is no such allegation in her complaint.

11         THE COURT:  Okay.  I think we better move to the next

12    point.

13         MR. BRETTLER:  The next point, your Honor, would be

14    the duplicative claims of battery and intentional infliction of

15    emotional distress.

16         It appears on the face of Ms. Giuffre's complaint that

17    she's alleging one set of circumstances that caused her harm,

18    alleged harm.  She accuses Prince Andrew of sexual assault, and

19    she's trying to recover twice on that same theory, once for

20    battery, once for intentional infliction of emotional distress.

21    They're based on the same allegations in the complaint.  One

22    incorporates the other by reference.

23         THE COURT:  If they turn out to be the same

24    allegations, doesn't the single-satisfaction rule prevent any

25    multiple recovery?

ML4NGIUO

1        MR. BRETTLER:  Yes, it does, your Honor.  Absolutely.

2        THE COURT:  Okay.

3        Next point.

4        MR. BRETTLER:  And the last point, your Honor, is the

5   constitutionality.  I mean, it could be the first point, too,

6   but it should be the last point that the Court needs to

7   consider.

8        I think the distinction between this case and other

9   cases challenging the constitutionality of the New York CVA is

10   the fact that this case was filed after the second temporary

11   extension of CVA in light of COVID.

12        No Court has ruled on whether that extension was

13   permissible.  And whether Ms. Giuffre's complaint would be

14   timely is dependent on the constitutionality of the CVA.  I

15   understand that the Court may be loath to address

16   constitutional issues of state law.  However, this is an issue

17   of first impression for this Court.  There has been no ruling

18   on whether former Governor Cuomo's extension of the CVA was

19   constitutional.  He did so twice by executive order, extended

20   the statute of limitations.

21        And Ms. Giuffre could have filed this lawsuit anytime

22   since the window opened in 2019.  She didn't until five days

23   before the window finally closed in August of 2021.  We will

24   argue that that is an untimely complaint, that the former

25   governor's decision to extend the statute to give alleged

ML4NGIUO

1  victims of childhood sexual abuse additional time to file their

2  complaint is unconstitutional.  It is vague.

3          And Prince Andrew should not be dragged into this

4  court 20 years after alleged abuse based on a statute that

5  arbitrarily decided to revive statutes of limitations.

6  Memories fade, your Honor; witnesses die, as very evident in

7  this case; witnesses may be incarcerated; documents disappear;

8  documents are destroyed in the ordinary course; you know,

9  people change their testimonies, people forget things.

10          This does not satisfy due process requirements under

11  the New York State Constitution.  It puts a huge burden on the

12  defense here to have to try to, you know, find documents,

13  materials, witnesses from more than 20 years ago, when one of

14  the --

15          THE COURT:  Mr. Brettler, what exactly is your

16  argument, your constitutional argument?  Is it that an

17  extension was in and of itself unconstitutional, given the

18  passage of time, which would apply independent of further

19  extension that you attribute to Governor Cuomo.  Or is it that

20  there's a problem with the further extension alone?  And, if

21  so, what is the problem?

22          MR. BRETTLER:  There certainly is a problem with the

23  further extension.  I wouldn't limit it to it being the only

24  problem.

25          As we have argued in our pleadings, we believe the

ML4NGIUO

1    statute was unconstitutional from the get-go.  We recognize

2    that other trial courts in both New York state and in this

3    district have disagreed and found the statute constitutional,

4    but none has ruled on this issue of the subsequent extensions

5    due to COVID.  There were two.

6           THE COURT:  So now let's focus on that.  What's the

7    constitutional argument about the further extensions?

8           And before you answer that one, what was the sum total

9    in days, months, or years of the further extensions?

10          MR. BRETTLER:  One year and seven or eight months, I

11   believe, your Honor.

12          THE COURT:  Okay.  Thank you for that.

13          Now what is a the constitutional argument that's

14   uniquely applicable to the one year and seven plus or minus

15   months?

16          MR. BRETTLER:  It's completely arbitrary.  That

17   extension was done by executive order, not by the legislature

18   convening and passing a new law.  The extension just said

19   because of COVID.  This is not a case where we have a plaintiff

20   who's unsophisticated or unrepresented.

21          THE COURT:  All right.  Can you tell me this:  Have

22   you briefed the question of the governor's power to issue these

23   extensions as a matter of state law?

24          MR. BRETTLER:  We have not briefed them, your Honor.

25   We absolutely can brief that if the Court wishes for further

ML4NGIUO

1   briefing on this issue.

2            And, you know, I believe that, you know, the governor

3   may have the authority to enter executive orders.  It doesn't

4   mean that there's unilateral authority to decide to extend a

5   statute and extend the time for a sophisticated party like

6   Ms. Giuffre, who was well represented by counsel, to file a

7   lawsuit.  And even then she waited until five days before

8   prior --

9            THE COURT:  So is the constitutional argument

10  regarding the governor's authority dependent on the facts

11  concerning this plaintiff, or is your argument a general

12  argument --

13           MR. BRETTLER:  Well, it is a --

14           THE COURT:  -- having to do with anybody who sued

15  during the extended period, that is, one year and seven months.

16           MR. BRETTLER:  It is a general argument, your Honor.

17  And I think it's particularly illustrated in this case.

18  Because we're not dealing with a party that was unable to get

19  to the courthouse due to COVID.  In fact, Ms. Giuffre was in

20  Australia, healthy as far as we know, not prevented from

21  contacting her attorneys or authorizing them to file this

22  lawsuit at any time prior to the five days before the

23  expiration.

24           THE COURT:  I take it, to use the language of another

25  area, your challenge is a facial attack on the one year and

ML4NGIUO

seven months, not an as-applied attack?

           MR. BRETTLER:  I think it's both.  But I think it is a

fair to say that there is a facial attack.  But there also is

an as-applied attack given the status of Ms. Giuffre, given the

fact that she's represented by very sophisticated attorneys and

that --

           THE COURT:  So then I take it your position is that

another plaintiff who sued at the end of the

one-year-and-seven-month extension who was not similarly

represented and who had been sick for the intervening period,

that claim would be timely?

           MR. BRETTLER:  Not necessarily, your Honor, because I

am not certain that the statute itself is constitutional and

whether the New York State legislature actually operated within

the bounds of the New York State Constitution and the due

process clause by extending the statute or by reviving the

statute of limitations on a 20-plus-year-old claim.  I am not

certain and I don't agree that that is constitutional.  I

certainly don't think that the additional --

           THE COURT:  Suppose it is.  Suppose it is.

           MR. BRETTLER:  Suppose it is.  I don't think that the

additional extension due to COVID, that would apply to healthy

individuals who had every means of accessing the courthouse

during the pandemic; that that as applied is unconstitutional.

           And facially I would take the position that -- I do

ML4NGIUO

1    take the position that it is unconstitutional for the governor

2    to have extended it.  And it's even worse in a case like this,

3    where the party took advantage of that extension and waited

4    until five days prior to the final expiration of this statute

5    when she's been healthy all along and has been represented by

6    counsel and has given plenty of interviews all over the world

7    over the past decade about this alleged abuse.  For her to

8    claim that she had to wait until five days before the statute

9    was expiring were she filed this lawsuit is inherently unfair

10   and unjust.

11           And the case should be thrown out.  The case should

12   absolutely be dismissed for lack of jurisdiction and certainly

13   because of the release that we discussed, because of the

14   duplicative claims in the battery and IIED, and the fact that

15   this is a time-barred action because the CVA claims revival

16   provision is unconstitutional.

17           THE COURT:  Okay.  Thank you.

18           MR. BRETTLER:  Thank you, Judge.

19           THE COURT:  Whom do I have the pleasure of hearing on

20   behalf of the plaintiff.

21           MR. BOIES:  Your Honor, this is David Boies.  I will

22   be responding with the Court's permission.

23           THE COURT:  Go ahead.

24           MR. BOIES:  May it please the Court, let my begin by

25   addressing the constitutional issue, which is the last issue

ML4NGIUO

1    that was raised.  The argument that counsel makes today is not

2    the same as, indeed is inconsistent with the argument that they

3    made in their motion to dismiss.  In their motion to dismiss,

4    they did not attack Governor Cuomo's action.  In fact, on pages

5    27 and 28 of their motion to dismiss, they not only exclusively

6    attack the legislative revival, but they contrast what the

7    legislature did with what Governor Cuomo did.  So I don't think

8    that the argument that they are making now with respect to

9    Governor Cuomo is one that they have raised in their motion.

10   And indeed I think their motion makes clear that they are

11   attacking the legislative decision, and I think that a number

12   of courts have addressed that legislative decision in terms of

13   its constitutionality.

14          As several of those courts have noted, the New York

15   courts themselves have never held unconstitutional a

16   legislative act.  I think with that clarification I would rest

17   on our briefs, at least as to that issue, unless the Court has

18   a question.

19          With respect to the question as to whether or not the

20   complaint is clear, both with respect to the paragraph of the

21   complaint that the Court noted as well as paragraph 39 of the

22   complaint, I think the complaint makes clear with respect to

23   the sexual intercourse and the sexual touching what is alleged.

24          Counsel's argument today that we have to allege some

25   imminent threat of death is belied by what they said in their

ML4NGIUO

1    motion to dismiss.  For example, at page 8 of their reply, and

2    this is a quote from what they say at page 27, "Giuffre and

3    other similarly situated individuals may establish lack of

4    consent by an 'implied threat' or for certain offenses by 'any

5    circumstances in which the victim does not expressly or

6    impliedly acquiesce,'" citing the New York penal statutes.  So

7    as Prince Andrew's counsel recognized in preparing their

8    motion, the lack of implied consent or the lack of consent is

9    far broader than simply a threat of imminent death.

10          Let me turn just briefly to the question of the

11   release.

12          One of the issues that counsel raised was what is our

13   explanation for what "potential defendants" means.  We would

14   concede at the outset that the term "potential defendants" is a

15   term that has potentially more than one interpretation.

16          But what we think the most reasonable interpretation

17   of that is, is someone who meets two criteria:  One, they were

18   subject to the jurisdiction of the Florida court; and, two,

19   they were someone who engaged in the kind of activity that was

20   alleged in the claims that were asserted in that Florida

21   action.

22          Prince Andrew was not subject to the jurisdiction.

23   That's one independent reason why he's not a potential

24   defendant.

25          And, second, he was not the person who engaged in the

ML4NGIUO

1    kind of conduct that was at issue there, which was all conduct

2    that violated federal trafficking statutes, not the battery,

3    the intentional infliction of emotional distress, The state law

4    claims that are at issue here.

5         THE COURT:  There could be overlap, couldn't there,

6    between some of the federal statutes and the common law claims?

7         MR. BOIES:  Yes.  Absolutely, your Honor.  There could

8    be overlap.  But that overlap would have to be where both the

9    federal claim and the state claim overlapped.  And here the

10   state claim that we are asserting does not overlap the federal

11   claim that was involved in the 2009 federal action.

12        For example, the only claim that defendant asserts

13   that was made in the Florida 2009 action that would cover

14   Prince Andrew was the third count, and they identify this in

15   their motion to dismiss, which is to transport somebody for the

16   purpose of illegal sexual activity.

17        There is no allegation that Prince Andrew was the

18   person transporting.  There is no allegation that, you know,

19   Prince Andrew fell into the category of people who were doing

20   the trafficking.  He was somebody to whom the girls were

21   trafficked.  That is a different set of criteria.

22        So we think there are two independent reasons he's not

23   a potential defendant.

24        Second, and although counsel didn't really address

25   this except when he mentioned parol evidence in a different

ML4NGIUO

1   context, while parol evidence cannot be introduced to vary the

2   terms of a contract between the parties to the contract, the

3   rule is different with respect to someone who is not a party to

4   the contract.  And here you have somebody who is not a party to

5   the contract.  So even if, contrary to what we think, the

6   language was unambiguous, that he was a potential defendant,

7   parol evidence would be admissible.

8           THE COURT:  Admissible for what purpose?

9           MR. BOIES:  Admissible for showing the intent of the

10  parties, to show that the parties did not intend that Prince

11  Andrew or people like him would be a potential defendant.

12          THE COURT:  Are you saying is that even if it was

13  absolutely unambiguous, clear as a bell, a third party could

14  assert, "Well, yes, I see that's what's written there, and I

15  understand what's written because it's clear as a bell, but the

16  real intention was different"?

17          MR. BOIES:  It's sort of the opposite of that in a

18  sense, your Honor.  It is that a third party couldn't do that.

19  But one of the parties to that contract in response to a third

20  party's claim could do that.  In other words, if a stranger, a

21  third-party beneficiary to a contract.

22          THE COURT:  I see.  You are really on the other point.

23          MR. BOIES:  Yes.

24          THE COURT:  You are on the question of whether it was

25  the intention of the parties --

ML4NGIUO

```
 1            MR. BOIES:  Exactly.

 2            THE COURT:  -- independent of how clear the language

 3    is --

 4            MR. BOIES:  Exactly.

 5            THE COURT:  -- to infer an enforceable benefit on the

 6    defendant who was a stranger to the contract?

 7            MR. BOIES:  Exactly.  That was exactly the point, your

 8    Honor.

 9            THE COURT:  Okay.

10            MR. BOIES:  The third thing that I would say is that

11    it's clear that the parties to a contract have the ability to

12    abandon or modify that contract, and if they have given rights

13    to a third-party beneficiary they have the power to abandon or

14    modify those rights, at least so long as the third party has

15    not reasonably relied to their detriment on what they have

16    promised that third party.

17            Here, first, there is no reasonable reliance.  Prince

18    Andrew didn't even know about this release until recently.

19            And, second, we think the conduct of the parties

20    subsequent to that evidences either a modification or an

21    abandonment entirely of that --

22            THE COURT:  I understand your argument there.  But

23    that other document isn't before me I think.

24            MR. BOIES:  It is not, your Honor.  And the only

25    reason that I raise it is that what they're trying to do is to
```

ML4NGIUO

1   get the Court to focus at the motion to dismiss stage on an

2   affirmative defense.

3           The reason that that is not appropriate is that, when

4   they raise the affirmative defense, we will have all sorts of

5   things to say about it.  We will be able to respond to that

6   affirmative defense by putting things in front of the Court

7   that demonstrate, for example, abandonment.  We will go into

8   litigating something when it is actually put in front of the

9   Court.

10          The reason why affirmative defenses are not

11  appropriate for a motion to dismiss, it is not merely a

12  technical thing.  It is a question of, when an affirmative

13  defense is interposed at the motion to dismiss stage, it is

14  before the plaintiff has had an opportunity to make a response

15  and to get in front of the Court the kinds of evidence that the

16  Court will need or a jury ultimately might need to decide the

17  issue.

18          I raise the modification point not because I'm asking

19  the Court to decide that, but because the fact that those kind

20  of issues are out there means that this is not the appropriate

21  time to be dealing with an affirmative defense.

22          THE COURT:  Let me ask you another question.

23          What is the significance of the further part of

24  paragraph 2, which is the paragraph that contains the release

25  language upon which your adversary relies that reads, and I

ML4NGIUO

1    quote, "Additionally, as a material consideration in settling,

2    first parties," which refers to -- "and the second parties,"

3    which I -- is that the right way to say it?

4              MR. BOIES:  Yes, your Honor.

5              THE COURT:  -- "agree that the terms of this

6    settlement agreement are not intended to be used by any other

7    person, nor be admissible in any proceeding or case against or

8    involving Jeffrey Epstein, either civil or criminal."

9              What effect does that language have on the defendant's

10   assertion that this release construed his way is useable by him

11   in this case?

12             MR. BOIES:  I see the Court's point, your Honor.  It

13   does refer to second parties, and he would have to be included

14   in second parties in order to make his argument at all.

15             THE COURT:  Well, isn't second parties a defined term?

16             MR. BOIES:  Yes, it is, your Honor.

17             THE COURT:  And what is it defined to be?

18             MR. BOIES:  It is defined to be the other potential

19   defendants.

20             THE COURT:  Really?

21             MR. BOIES:  Hold on.  I'm sorry.  I apologize.  The

22   second parties are the employees, agents, attorneys,

23   predecessors, successors, heirs, administrators, and assigns.

24   Those are the second parties.

25             THE COURT:  Where do I find that?

ML4NGIUO

1          MR. BOIES:  That is in --

2          THE COURT:  I see.  It is the first of paragraph 2.

3          MR. BOIES:  Yes.  So Prince Andrew, as an arguing

4     potential defendant, would not be a --

5          THE COURT:  He is neither a first party nor a second

6     party.

7          MR. BOIES:  Or a second party.  That's right.  He's

8     neither a first party or second party.  That's right, your

9     Honor.

10          THE COURT:  If that's true, what's the effect of the

11     sentence I read to you?

12          MR. BOIES:  Then the first parties and second parties,

13     the first parties are Ms. Giuffre and Epstein, and so the

14     parties to the contract, and the second parties are agreeing --

15          THE COURT:  I'm sorry.  The first parties is Giuffre

16     and her agents, attorneys, predecessors, successors, heirs,

17     administrators and/or assigns.

18          MR. BOIES:  Yes, your Honor.

19          THE COURT:  It doesn't include Epstein.

20          MR. BOIES:  No.  No, Epstein is the second party.

21     Epstein and his employees is the second party.

22          THE COURT:  Epstein and his agents and employees and

23     attorneys are second parties.  It is right there in the first

24     part of the paragraph.

25          MR. BOIES:  Right.  I see the Court's point.  What you

ML4NGIUO

1   have is Epstein and Giuffre --

2               THE COURT:  Yes.

3               MR. BOIES:  -- agreeing --

4               THE COURT:  So the defense --

5               MR. BOIES:  -- the settlement agreement --

6               THE COURT:  -- in the --

7               MR. BOIES:  -- is not --

8               THE COURT:  -- is within the language of that sentence

9   I read you --

10              MR. BOIES:  Yes.

11              THE COURT:  -- is within the category of people who

12  are not entitled to use the terms of the settlement.

13              MR. BOIES:  Your Honor, I see and I apologize for the

14  slowness on this.  But I see exactly what the Court is saying.

15  What the Court is saying is that the parties actually

16  explicitly agreed that any third-party beneficiary rights would

17  have to be asserted by the parties to the contract and could

18  not be asserted by a potential defendant.  What they were

19  saying is that the very terms of the contract, the very terms

20  of the settlement preclude --

21              THE COURT:  Use by a third party.

22              MR. BOIES:  Exactly, which is Prince Andrew.  Prince

23  Andrew could not do that.  The only person who could assert

24  this release in this case.

25              THE COURT:  Would be Epstein.

ML4NGIUO

1          MR. BOIES:  Would be Epstein, yes.

2          I think that's right, your Honor.  I think that's

3    exactly right.

4          THE COURT:  I bring your attention also to the portion

5    of paragraph 4, the last two full sentences on page 3., and I

6    ask you what the significance of that is.

7          MR. BOIES:  I think that reinforces the point that was

8    made in the release paragraph, your Honor, where it says that

9    it can't be used in any court or other proceeding except to

10   enforce the provisions of the settlement agreement.  And that

11   takes you back to the fact that only Epstein and Giuffre can

12   enforce the terms of the settlement agreement.

13         THE COURT:  All right.

14         Anything else, Mr. Boies?

15         MR. BOIES:  No, your Honor.

16         THE COURT:  Okay.  Mr. Brettler, I'll give you five

17   minutes, but I think it might be useful to for it to be used at

18   least in part to deal with the two points I raised with Mr.

19   Boies.

20         MR. BRETTLER:  I agree, your Honor.

21         It sounded to me that Mr. Boies was conceding that

22   Prince Andrew was meant to be included in other parties.  He

23   disagrees with me on whether or not that means Prince Andrew

24   has the right to assert this agreement as an affirmative

25   defense.

ML4NGIUO

1          THE COURT:  Do you agree with that, Mr. Boies?  I must

2    have missed it.

3          MR. BOIES:  No, your Honor.  Under the clear language

4    of the agreement, only Epstein and Giuffre can enforce the

5    terms of the agreement.  That is, a third party can only

6    benefit from this contract to the extent that the party, the

7    actual parties to the contract wish to seek enforcement.

8          THE COURT:  Okay.

9          Back to you, Mr. Brettler.  I'm sorry to interrupt.

10          MR. BRETTLER:  No, that's okay, your Honor.

11          I don't think that that is even a reasonable

12    interpretation of that paragraph when I am reading that

13    paragraph.  I understand it to mean that the settlement

14    agreement could not be used to show evidence of Mr. Epstein's

15    guilt.  It could not be used in conjunction with any other

16    lawsuit that he's being sued in, but it wouldn't make sense for

17    them to include language releasing other potential defendants.

18    Those other potential defendants didn't have a right to use

19    that contract, use that settlement agreement and release as an

20    affirmative defense.  It just flies in the face of common

21    sense.

22          THE COURT:  Don't you then run smack into the

23    provision in paragraph 4 which says this is all going to be

24    secret?  They are not going to give anybody a copy of this

25    agreement and the terms can't be disclosed except to enforce

ML4NGIUO

1      the agreement?

2                  MR. BRETTLER:  And they have been disclosed.

3                  THE COURT:  Well, yes, now.  But that's because of

4      various litigation.

5                  But the point of the matter I think may well be that

6      paragraph 2 left enforcement of any rights in other potential

7      defendants, whoever they may be, in the hands of the

8      contracting parties.

9                  And, to draw a line under that, paragraph 4 says the

10     contracting parties aren't going to tell anybody about this

11     agreement.  And thus the position at least arguably would be

12     that Epstein and Giuffre had an agreement between themselves

13     that there was a release to other potential defendants,

14     whatever that means, but they weren't to know about it, those

15     people.  And, in any case, the only people who could enforce it

16     were Epstein and Giuffre.

17                 So that if somebody got sued, for example, you know,

18     the Sultan of Brunei -- I cast no aspersions there, I'm just

19     using a convenient example -- if someone got sued and Epstein

20     said, look, this person was within the release and it was okay

21     with Giuffre, then it could be made available and Epstein could

22     enforce it, but not otherwise.

23                 MR. BRETTLER:  Your Honor, that is not the law on

24     third-party beneficiary.

25                 THE COURT:  No.  The law on third-party beneficiaries

ML4NGIUO

1    is that the agreement has to manifest a primary and substantial

2    purpose on the part of the contracting parties to confer a

3    right on the third party.  And the point is it's pretty hard to

4    square such an intention with these two provisions, one that

5    says no third parties can enforce it and another that says the

6    parties, the contracting parties aren't going to disclose this

7    to third parties.

8         MR. BRETTLER:  Your Honor, paragraph 7 of the release

9    agreement contemplates third parties enforcing it, as does the

10   law in Florida and New York, for whatever it's worth on

11   third-party beneficiary.

12        THE COURT:  Well, bring my attention to the language

13   you rely on.

14        MR. BRETTLER:  Sure.  Melissa, if you have that handy,

15   maybe you could read that to the judge, because I have to pull

16   that up on my computer.

17        MS. LERNER:  Your Honor, paragraph 7, the enforcement

18   paragraph of the release agreement, states in relevant part

19   that the party -- looking at the first paragraph, should the

20   federal court not retain jurisdiction, the parties and any

21   third party agree that the courts of the 15th Judicial Circuit

22   of Palm Beach County shall have exclusive jurisdiction over the

23   subject matter and shall have personal jurisdiction over the

24   parties and third parties.  In the event of an enforcement --

25   it goes on about notice and service, and in --

ML4NGIUO

1          THE COURT:  I --

2          MS. LERNER:  Sorry.

3          THE COURT:  Go ahead.  I didn't mean to interrupt.

4          MS. LERNER:  Not at all, your Honor.  That's the

5   relevant language.  There is a contemplation that third parties

6   also are agreeing to the jurisdiction of the court for

7   enforcement purposes.

8          THE COURT:  Isn't it perfectly clear that Epstein and

9   Giuffre had no ability to bind a third party to accept the

10   jurisdiction of a Florida court?

11          MR. BRETTLER:  Your Honor, if I may, it wouldn't be up

12   to Epstein and Giuffre to determine whether or not the Florida

13   court had jurisdiction over Prince Andrew or any other

14   potential defendant.  It is clear based on the nature of

15   allegations in Ms. Giuffre's complaint of a criminal conspiracy

16   that those parties would --

17          THE COURT:  Mr. Brettler, that is off the point, with

18   all due respect.

19          A and B cannot sign a contract between them that says

20   that C consents to the jurisdiction of any court unless they

21   have power of attorney from C, right?

22          MR. BRETTLER:  Of course.

23          THE COURT:  Of course.  So this provision that says

24   that they are contracting between Giuffre and Epstein that

25   third parties agree that the Palm Beach County court would have

ML4NGIUO

1   jurisdiction is completely void, isn't it?

2               MR. BRETTLER:  No, your Honor.  Because if Prince

3   Andrew were to use this document to file a lawsuit against some

4   defendant, Ms. Giuffre or someone else, and intended to rely on

5   this agreement as the basis for his claim, he would be subject

6   to the jurisdiction of the Palm Beach court.

7               THE COURT:  Of course he would.  But this language

8   that your colleague read to me deals with a situation in which

9   the third parties' consent to jurisdiction is necessary, and

10  the document purports to grant that consent in the benevolence

11  of Giuffre and Epstein, which they have no power to do.

12              Isn't that right?

13              MR. BRETTLER:  I understand your Honor's point, but my

14  reading of the agreement is different.  If Prince Andrew were

15  to use this agreement as the basis for a claim, he would have

16  to be subject to the court in Florida to do so.  The fact that

17  he's an alleged coconspirator of Jeffrey Epstein would have

18  subjected him to the Court's jurisdiction, thus encompassing

19  him within this very broad definition of "other potential

20  defendants."

21              And the last point that I would like to raise, your

22  Honor, is that the release does not limit the release claims to

23  those federal claims that were asserted in the Florida action

24  like Mr. Boies had suggested.  The release expressly releases

25  federal and state claims which would include these battery

ML4NGIUO

1    claims and claims for intentional infliction of emotional

2    distress, should the court determine that they are not

3    duplicative.

4              THE COURT:  Okay.  I thank you all.  I appreciate the

5    arguments and the passion.

6              You will have a decision pretty soon, but I am not

7    going to define that further.  It will have to be sufficiently

8    definite so that it is not enforceable.

9              That said, there is no stay of discovery in place.

10   The scheduling order is in effect, and I assume you will act

11   accordingly.

12             MR. BRETTLER:  Thank you, your Honor.  Of course we

13   will.

14             THE COURT:  Stay healthy.

15             MS. LERNER:  Thank you, your Honor.

16             THE COURT:  Thank you.

17             (Adjourned)

18

19

20

21

22

23

24

25